## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-00078 ( _ _ _ ) |
| Debtors. | Bankruptcy Case No. 20-10343(LSS) |
| | Jointly Administered |
| | Original Filing Date 3/3/2020 |
| | Redacted Filing Date 3/3/2020 |

## DECLARATION OF BRUCE A. GRIGGS IN SUPPORT OF THE DEBTORS' MOTION TO FIX VENUE FOR CLAIMS RELATED TO BANKRUPTCY UNDER 28 U.S.C. §§ 157(b)(5) AND 1334(b)

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

Bruce A. Griggs, being duly sworn, states the following under penalty of perjury:

1.      I am over twenty-one (21) years of age and I am fully competent to make this Declaration.  I am a shareholder at the law firm Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree"), 301 Congress Avenue, Suite 1150, Austin, Texas, 78701, which has served as National Coordinating Counsel to the Boy Scouts of America (the "BSA"), a non-profit corporation and a debtor and debtor in possession in the above-captioned chapter 11 cases, since August 1, 2016.  I am a licensed attorney and I have been admitted to practice in Texas for 30 years.  I respectfully submit this Declaration in Support of the Debtors' Motion to Fix Venue for Claims Related to Bankruptcy Under 28 U.S.C. §§ 157(b)(5) and 1334(b).

2.      The matters set forth below are of my own personal knowledge or upon information and belief based upon materials, books, and records made available to me.  If called upon to testify I could and would competently testify to those facts.

3.      Attached as Exhibit A hereto is a true and correct copy of the Complaint filed on March 19, 2018 against the BSA and other parties in the case captioned ██ *v. Boy Scouts of America*, Case No. 18CV10468, pending in the Circuit Court of the State of Oregon for Multnomah County.

4.      Attached as Exhibit B hereto is a true and correct copy of the Complaint filed on January 25, 2018 against the BSA and other parties in the case captioned *Julie Doe v. Boy Scouts of America*, Case No. 18CV03080, pending in the Circuit Court of the State of Oregon for Multnomah County.

5.      Attached as Exhibit C hereto is a true and correct copy of the Complaint filed on January 13, 2020 against the BSA and other parties in the case captioned ██████ *v. Boy*

*Scouts of America*, Case No. SSX-L-000027-20, pending in the Superior Court of New Jersey, Law Division for Sussex County.

     6.     Attached as Exhibit D hereto is a true and correct copy of the Complaint and Jury Demand filed on January 3, 2020 against the BSA and other parties in the case captioned ████ ████ v. *Boy Scouts of America*, Case No. ESX-L-000063-20, pending in the Superior Court of New Jersey, Essex County Law Division.

     7.     Attached as Exhibit E hereto is a true and correct copy of the Plaintiff's Verified Complaint filed on June 10, 2019 against the BSA and other parties in the case captioned *Doe, v. Boy Scouts of America*, Case No. SU19CV0378, pending in the Superior Court of Athens-Clarke County, Georgia.

     8.     Attached as Exhibit F hereto is a true and correct copy of the Verified Complaint filed on August 23, 2019 against the BSA and other parties in the case captioned ████ v. *Boy Scouts of America*, Index. No. 950112/2019, pending in the Supreme Court of the State of New York, County of New York.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ████ day of February, 2020 in Travis County, Texas.

*[signature]*

BRUCE A. GRIGGS

# EXHIBIT A

Verified Correct Copy of Original 3/19/2018.

FILED

'18 MAR 19 PM 2:09

CIRCUIT COURT
FOR MULTNOMAH COUNTY

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR MULTNOMAH COUNTY          18CV10468

| | |
|---|---|
| ▮▮ an individual proceeding under a fictitious name,<br><br>Plaintiff,<br><br>v.<br><br>THE BOY SCOUTS OF AMERICA, a congressionally chartered corporation authorized to do business in Oregon; and CASCADE PACIFIC COUNCIL, BOY SCOUTS OF AMERICA, an Oregon nonprofit corporation,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>(Negligence; Fraud; Sexual Abuse of a Child)<br><br>**JURY TRIAL DEMANDED**<br><br>Not Subject to Mandatory Arbitration<br><br>**Prayer**:<br>$9,000,000 compensatory damages against both Defendants |

Plaintiff alleges:

1.

Plaintiff is a male born in ▮▮ who, at all material times, was an unemancipated minor residing with his mother and siblings in Oregon City, Oregon.

2.

Defendant Boy Scouts of America ("Defendant BSA") is a congressionally-chartered corporation authorized to do business in Oregon.

/ / /

/ / /

/ / /

Page 1   **COMPLAINT**

**DUMAS LAW GROUP, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 952-6789

Verified Correct Copy of Original 3/19/2018.

3.

Defendant Cascade Pacific Council, Boy Scouts of America ("Defendant CPC") is an Oregon nonprofit corporation operating under the actual and apparent control of Defendant BSA, and was at all material times the actual or apparent agent of Defendant BSA.

4.

At all material times, Defendant BSA and Defendant CPC ("Defendants") operated and controlled a national and Oregon youth program for boys known as the "Boy Scouts" or "Scouting."

5.

Defendants invited boys, including Plaintiff, to participate in Scouting and enter into a commercial relationship, which included Scouts paying an annual membership fee and other fees, and making required purchases, in exchange for participating in Scouting. Defendants also created a relationship of trust and confidence with Plaintiff by inviting him to participate in Scouting, acting *in loco parentis* to Plaintiff during Scouting activities such as camping and hiking trips, and undertaking responsibility for the safety of Scouts and delegating that responsibility to Scout volunteers acting under Defendants' control.

6.

Defendants organized Scouting into "Troops" at the local level. Defendants operated Troop 220 in Oregon City, Oregon. Troop 220 was an officially sanctioned BSA troop that participated in activities such as group meetings, camping, hiking, and earning "Merit Badges." Plaintiff participated in activities with Troop 220 with three of his older brothers who were registered members of Troop 220.

/ / /

/ / /

/ / /

Page 2   **COMPLAINT**

**DUMAS LAW GROUP, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 952-6789

Verified Correct Copy of Original 3/19/2018.

7.

Defendants approved, trained, supervised, and maintained the right of control, actual control, and apparent control over adult Scout volunteers (including Troop leaders known as "Scoutmasters" and "Assistant Scoutmasters") and paid Scout employees ("Scouters").

8.

Defendants selected and approved Clyde Brock ("Brock") as a volunteer Assistant Scoutmaster and/or Scoutmaster ("Troop leader") for Troop 220 through at least 1968.  At all material times, Brock was an actual or apparent agent of Defendants.

9.

Defendants authorized and empowered Brock to perform all the duties of a Troop leader, including but not limited to providing instruction, counseling, and physical supervision of Scouts; educating Scouts in morality, patriotism, character-building, obedience, and various other life skills; mentoring and befriending Scouts; and enforcing rules governing Scouts' participation in Scouting.  Defendants knew that, as part of his duties and expectations as a Troop leader, Brock would be in a position of trust, confidence, respect, and authority over Scouts, including Plaintiff.

10.

Defendants retained the right to control, and had actual and apparent control of the means, methods, and physical details of Troop leaders' performance of the duties described in paragraph 9.  As part of his duties as a Troop leader, Brock used his position to gain the trust and confidence of Plaintiff and Plaintiff's family to spend large periods of time alone with Plaintiff, or with Plaintiff and other Scouts (including Plaintiff's brothers), with no other adults supervising.  Brock performed his duties as a Troop leader in connection with his agency relationship with Defendants; within the time and space limits of his agency; out of a desire, at

Page 3   **COMPLAINT**

Verified Correct Copy of Original 3/19/2018

1   least partially and initially, to fulfill his agency duties as a Troop leader; and his duties generally

2   were of a kind and nature that Brock was required to perform as a Troop leader.

3                                              11.

4          Brock's authorized duties and activities as a Troop leader led to and resulted in Brock

5   sexually abusing Plaintiff in or around between approximately 1966 and 1968. Brock led

6   Plaintiff, his brothers, and other Scouts in Scouting activities, including troop meetings,

7   swimming, hiking, and camping trips. He convinced the Scouts including Plaintiff and his

8   brothers, to swim nude, and while they were swimming and after they got out of the water, he

9   took nude photographs of them. On camping trips, Brock convinced Plaintiff's brothers to sleep

10  with him in his sleeping bag and sexually abused his brothers on those camping trips. Plaintiff

11  and other Scouts, including Plaintiff's brothers, also spent the night at Brock's house regularly

12  for the stated purpose of working on merit badges and other Scouting activities. During these

13  sleepovers, Brock made the Scouts remove their clothes, sleep nude with him, and showed them

14  photographs and videos of nude boys and adults. During these sleepovers, Brock abused

15  Plaintiff, including fondling Plaintiff's genitals and having Plaintiff fondle his genitals; touching

16  Plaintiff, or having Plaintiff touch him, in other inappropriate sexual ways; performing anal sex

17  on Plaintiff; and performing oral sex on Plaintiff, or having Plaintiff perform oral sex on him.

18  Brock also sexually abused Plaintiff's brothers while Plaintiff was in the same room and

19  witnessed the abuse. Brock's sexual abuse of Plaintiff constituted a harmful or offensive

20  touching of Plaintiff to which Plaintiff did not and could not consent, because Plaintiff was a

21  minor.

22                                              12.

23         Beginning as early as 1920, Defendant BSA regularly received reports and information

24  from its local Councils and agents of adult Scouting volunteers and professional Scouters

25  sexually abusing Scouts. Based on these reports, Defendant BSA created a file system then

26

Page 4    **COMPLAINT**

Verified Correct Copy of Original 3/19/2018

1    known as the "Red Flag" files — now the "Ineligible Volunteer" files ("IV files") — to attempt

2    to track a variety of transgressions by adult volunteers, including volunteers that sexually abused

3    Scouts. Defendant BSA categorizes IV files according to the type of transgression committed,

4    labeling IV files that contain allegations of child sexual abuse as "Perversion" files. By 1965,

5    Defendant BSA had created approximately 3,000 Perversion IV files. The number of IV

6    Perversion files that still exists significantly underrepresents the actual number of IV Perversion

7    files and of adult Scout leaders that molested Scouts for many reasons, including that Defendant

8    BSA destroyed most of the IV files created before Plaintiff was abused, and because most

9    children did not report their sexual abuse. The IV Files can generally consist of newspaper

10   articles; court filings; police reports; correspondence between BSA employees and volunteers;

11   statements from Scouts and their parents; BSA memoranda; and other documents, all which can

12   contain detailed factual information about the circumstances under which child sexual abuse

13   occurred in Scouting.

14                                                    13.

15       The IV Files also contain reports of adult Scout leaders engaging in similar type of

16   behavior that Brock engaged in that led to his abuse of Plaintiff, including reports of: adult Scout

17   leaders taking Scouts to their homes without other adults present; adult Scout leaders allowing

18   Scouts to stay overnight at the leaders' homes without other adults present; taking photographs

19   of nude Scouts; persuading Scouts to skinny dip in the adult Scout leaders' presence; showing

20   nude photographs or pornography to Scouts; taking Scouts on camping or hiking trips alone

21   without other adults present; engaging in similar Grooming behavior with Scouts that Brock

22   engaged in with the Scouts he abused, including Plaintiff, such as buying Scouts gifts, giving

23   some Scouts more attention than other Scouts involved in the troop, and spending more time

24   with some Scouts than other Scouts involved in the troop; engaging in physical contact that

25   exceeded the bounds of an appropriate adult Scout leader-Scout relationship, such as excessive

26

Page 5   **COMPLAINT**

Verified Correct Copy of Original 3/19/2018.

1    hugging, back massages, or bathing Scouts; and adult Scout leaders specifically Grooming

2    Scouts who lacked "father figures" or other strong parental figures and guidance.  Because

3    Defendant BSA created and maintained the IV Files, Defendant BSA knew of these reports of

4    adult Scout leaders engaging in similar type of behavior that BSA knew Brock engaged in that

5    led to Brock's abuse of Plaintiff.  Defendant BSA knew of these reports prior to Brock's abuse of

6    Plaintiff.

7                                                   14.

8            By the time Plaintiff began participating in Scouting, based on the reports in the IV Files,

9    as described in paragraph 13, Defendants knew that Scouting posed a danger to minor boys

10   because there had been a longstanding, consistent, and widespread problem with adult Scout

11   volunteers sexually abusing Scouts.  Defendants knew that child molesters like Brock were using

12   Scouting to gain access to and gain the trust of Scouts, including Plaintiff, in order to molest

13   them.

14                                                 15.

15           Before Brock sexually abused Plaintiff, Defendants knew that Brock was sexually

16   attracted to young boys.  They knew he regularly took nude photographs of Scouts, and they

17   knew that he invited Scouts over to his house, where he showed them photos of nude Scouts and

18   pornographic photos of men and women, and gave them baths, making him dangerous to Scouts

19   and ineligible to be an adult Scout volunteer.

20                                                 16.

21           As a result of Defendants' wrongful conduct, Plaintiff was sexually abused by Brock, and

22   suffered in the past and will suffer in the future physical and psychological injuries, consisting of

23   substance abuse, depression, anxiety, shame, guilt, distrust of authority, loss of trust, anger

24   management issues, interpersonal relationship problems (including estrangement from his

25   brothers also abused by Brock), and loss of self-esteem.  Additionally, Plaintiff's sexual abuse as

26

Page 6    **COMPLAINT**

Verified Correct Copy of Original 3/19/2018

1   a child has placed him at increased risk for reduced life expectancy, cancer, heart disease, and

2   diabetes. All of these injuries caused and will cause Plaintiff non-economic damages for his

3   pain, suffering and loss of enjoyment of life in the approximate amount of $9,000,000.

4                                                    17.

5     Plaintiff did not begin to discover the causal connection between his sexual abuse and the

6   injuries and damages he suffered as a result of that abuse until approximately 2015. Prior to that

7   time, Plaintiff did not discover, and reasonably could not discover, the connection between his

8   sexual abuse and his injuries and damages caused by that abuse because psychological

9   conditions arising from his sexual abuse prevented that discovery. Additionally, Defendants kept

10  their decades of knowledge of child sexual abuse in BSA hidden from Scouts, Scouts' parents

11  and guardians, Troop leaders, other adult Scout volunteers, troop committees, and sponsoring

12  organizations (together, the "Scouting community") and the general public.

13                                                   18.

14    Defendant BSA acted with malice or a reckless and outrageous indifference to a highly

15  unreasonable risk of harm and with a conscious indifference to the health, safety, and welfare of

16  Plaintiff. Plaintiff provides notice of his intent to move to add allegations of punitive damages

17  against Defendant BSA at any time after the filing of this Complaint.

18

19                          **FIRST CLAIM FOR RELIEF — Negligence**

20                                                   19.

21    Plaintiff realleges and incorporates by reference paragraphs 1 through 18.

22                                                   20.

23    Defendants were negligent in one or more of the following ways:

24    a)  By failing to:

25      1)  Permanently remove Brock from Scouting after receiving information that

26

Page 7   **COMPLAINT**

**DUMAS LAW GROUP, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 952-6789

Verified Correct Copy of Original 3/19/2018.

1   Brock was taking photographs of nude Scouts; taking Scouts to his home; and, at

2   his home, showing them nude photos of Scouts and pornographic photos of men

3   and women, and bathing them;

4   2)    Adequately supervise or monitor Brock after receiving information that

5   Brock was taking photographs of nude Scouts; taking Scouts to his home; and, at

6   his home, showing them nude photos of Scouts and pornographic photos of men

7   and women, and bathing them;

8   3)    Inform the Scouting community that Brock was taking photographs of

9   nude Scouts; taking Scouts to his home; and, at his home, showing them nude

10   photos of Scouts and pornographic photos of men and women, and bathing them;

11   4)    Warn the Scouting community about Brock's inappropriate sexual

12   behavior;

13   5)    Investigate the reports that Brock was taking photographs of nude Scouts;

14   taking Scouts to his home; and, at his home, showing them nude photos of Scouts

15   and pornographic photos of men and women, and bathing them; and

16   6)    Report to local law enforcement that Brock was taking photographs of

17   nude Scouts; taking Scouts to his home; and, at his home, showing them nude

18   photos of Scouts and pornographic photos of men and women, and bathing them;

19   b)    By failing to warn the Scouting community, including Plaintiff and his mother,

20   about the risk of child sexual abuse by adult Scout leaders occurring under the same

21   circumstances that prior child sexual abuse of Scouts occurred, as described in the reports in the

22   IV Files described in paragraph 13;

23   c)    By failing to train the Scouting community, including Plaintiff and his mother,

24   and paid Scouters in how to recognize, report, and prevent, or otherwise avoid becoming victims

25   of, child sexual abuse by adult Scout leaders occurring under the same circumstances that prior

26

Page 8   **COMPLAINT**

**DUMAS LAW GROUP, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 952-6789

Verified Correct Copy of Original 3/19/2018.

1   child sexual abuse of Scouts occurred, as described in the reports in the IV Files described in

2   paragraph 13;

3        d)    By failing to disclose to the Scouting community, including Plaintiff and his

4   mother, the existence of secret IV Perversion files that tracked adult Scout leaders accused of

5   sexually abusing Scouts under the same circumstances that led to Brock's sexual abuse of

6   Plaintiff, as described in the reports in the IV Files described in paragraph 13;

7        e)    By representing to the Scouting community, including Plaintiff and his mother,

8   that adult Scout volunteers were to be trusted and obeyed and that Scouting was a safe activity,

9   despite knowing that child sexual abuse by adult Scout leaders had occurred under the same

10   circumstances that led to Brock's sexual abuse of Plaintiff, as described in the reports in the IV

11   Files described in paragraph 13;

12        f)    By failing to implement and enforce the following common-sense child abuse

13   prevention policies, in response to the reports in the IV Files of adult Scout leaders engaging in

14   similar type of behavior that Defendants knew Brock had engaged in that led to his abuse of

15   Plaintiff, as described in paragraph 13:

16            1)    Policies requiring BSA to notify the Scouting community, including

17                Plaintiff and his mother, when adult Scout volunteers had been accused of child

18                sexual abuse, or removed from Scouting and put in an IV File for sexual abuse of

19                Scouts that occurred under the same circumstances that led to Brock's sexual

20                abuse of Plaintiffs;

21            2)    Policies requiring "Two-Deep Leadership," or more than one adult Scout

22                volunteer to be present at Scouting activities;

23            3)    Policies prohibiting Scouts from spending the night or otherwise visiting

24                at adult Scout volunteers' homes without parental supervision;

25            4)    Policies prohibiting Scouts and adult Scout volunteers from "skinny

26

**DUMAS LAW GROUP, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 952-6789

Verified Correct Copy of Original 3/19/2018

1     dipping" or otherwise being nude at any time during Scouting activities; and

2         5)     Policies prohibiting adult Scout volunteers from taking photographs of

3     nude Scouts.

4                                21.

5        As a direct and foreseeable result of Defendants' negligence described in paragraph 20,

6     Plaintiff suffered the injuries and incurred the damages described in paragraph 16. Defendants

7     therefore knowingly allowed, permitted, and/or encouraged child abuse.

8

9                 **SECOND CLAIM FOR RELIEF — Fraud**

10                  *General Fraud Allegations*

11                                22.

12        Plaintiff realleges and incorporates by reference paragraphs 1 through 21.

13                                23.

14        Defendants created a special, confidential, or fiduciary relationship with Plaintiff by

15     inviting him to participate in Scouting and by acting *in loco parentis* to Plaintiff during Scouting

16     activities such as camping and hiking trips. Defendants also undertook responsibility for the

17     safety of Scouts and delegated that responsibility to Scout volunteers acting under Defendants'

18     control.

19                                24.

20        Prior to and during Plaintiff's abuse, Defendants actively concealed their knowledge that

21     molesters had been joining Scouting for decades to gain access to and sexually abuse boys, such

22     as Plaintiff. When Defendant BSA added a volunteer to the IV File list for sexually abusing

23     boys, Defendant BSA routinely instructed the Scout Executives and other local employees and

24     volunteers to keep secret the reason the volunteer had been dismissed and the existence of the IV

25

26

Page 10   **COMPLAINT**

**DUMAS LAW GROUP, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 952-6789

Verified Correct Copy of Original 3/19/2018.

1   Perversion file system.  Many times, Defendant BSA then deleted, or instructed local employees

2   or volunteers to delete, the volunteer's name from unit applications and rosters.

3                                          25.

4          Prior to and during Plaintiff's abuse, Defendants additionally actively concealed their

5   knowledge of sexual abuse in Scouting because BSA had a policy of limiting the use of the IV

6   File system to a limited number of employees at the BSA national office and certain employees,

7   such as Scout Executives, at the local councils.  Defendants had no policies requiring or

8   encouraging its employees to disclose the existence or functioning of the IV File system to the

9   Scouting community and the general public, thereby limiting the use of the IV File system to

10   report allegations of wrongdoing by adult Scout volunteers, such as Brock.

11                                         26.

12          Prior to and during Plaintiff's abuse, Defendants engaged in a decades-long public

13   relations campaign to represent to the government, the public, and the Scouting community,

14   including Plaintiff and his family, that Scouting was a safe and morally upright program that was

15   physically, emotionally, and spiritually beneficial for boys.  Defendants additionally represented

16   that the adult Scout volunteers, including Brock, who were their agents, were appropriate and

17   trustworthy mentors and leaders for young boys.

18                                         27.

19          Defendants knew the representations about Scouting and Brock described in paragraph

20   26 were false, or made the misrepresentations with reckless disregard for the truth.

21                                         28.

22          Prior to and during Plaintiff's abuse, Defendants conveyed the misrepresentation that

23   adult Scout volunteers, including Brock, were appropriate and trustworthy mentors and leaders

24   by selecting, approving, and retaining certain men as adult Scout volunteers.  Defendants further

25   conveyed the misrepresentation that Scouting was a safe and morally upright program for boys

26

Page 11  **COMPLAINT**

**DUMAS LAW GROUP, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 952-6789

Verified Correct Copy of Original 3/19/2018.

1   by failing to enact or enforce common sense child abuse policies (as described in paragraph

2   19(f)), acknowledge the existence of child sexual abuse in Scouting, or otherwise amend the

3   Scouting program to reduce the prevalence of child sexual abuse in Scouting.

4                                           29.

5          Prior to and during Plaintiff's abuse, Defendants also conveyed the aforementioned

6   misrepresentations through explicit language, such as in advertisements, news articles and other

7   media spots, BSA-published publications, and annual reports to Congress.  As examples,

8   Defendants made specific statements in various editions of the *Boy Scout Handbook* — the

9   handbook that every Scout, including Plaintiff, uses as a guide to his Scouting experience.  The

10  Scout Oath was and remains: "On my honor I will do my best to do my duty to God and my

11  country and to obey the Scout law; To help other people at all times; To keep myself physically

12  strong, mentally awake, and morally straight."  The Scout law then describes the characteristics a

13  Scout should have: "[a] Scout is trustworthy, loyal, helpful, friendly, courteous, kind, obedient,

14  cheerful, thrifty, brave, clean, and reverent."  This oath is recited by all Scouts, including adult

15  Scout volunteers, at every troop meeting and other Scouting events.  These were ideals that both

16  Scouts and Scout leaders were expected to follow.  In the 1965–1972 *Boy Scout Handbook*, the

17  Scoutmaster is referred to as "a wonderful man" who goes on hikes and goes camping with the

18  Troop, and who "is the friend to whom you can always turn for advice."  Defendant BSA, *Boy

19  Scout Handbook*, at 94 (7th ed., 3rd printing, 1967).  This partial list of explicit

20  misrepresentations is not exhaustive.

21                                          30.

22         Prior to and during Plaintiff's abuse, Defendants also conveyed the aforementioned

23  misrepresentations through silence because Defendants never made any warnings to the Scouting

24  community, including Plaintiff, his mother, and his brothers, and to the general public that adult

25  Scout volunteers were not always safe and trustworthy, that they might make sexual demands or

26

Page 12   **COMPLAINT**

Verified Correct Copy of Original 3/19/2018.

1    advances, or that significant numbers of them had abused boys in the past.  This partial list of

2    omissions is not exclusive.

3                                                31.

4           Defendants made the aforementioned misrepresentations with the intent of inducing

5    Plaintiff (and other children similarly situated), Plaintiff's mother (and other parents and

6    guardians similarly situated), Plaintiff's brothers, and the public to rely on Defendants'

7    misrepresentations so that they would continue to trust Scouting and adult Scout volunteers, and

8    continue to participate in Scouting.  Defendants also made the misrepresentations with the intent

9    of shielding Scouting from scrutiny to ensure that children continued to join, to benefit

10   Defendants' financial position and reputation.

11                                               32.

12          Defendants' knowledge of the dangers and prevalence of child molesters in Scouting and

13   specific knowledge of Brock's sexual proclivities and inappropriate behavior constituted a

14   material fact.  Had Plaintiff and his mother been aware of such dangers, Plaintiff would not have

15   entered into a relationship, or would not have continued a relationship, with Defendants and

16   Scouting, or would have taken steps to protect himself from being molested by Brock while in

17   Scouting.

18                                               33.

19          Plaintiff and his mother justifiably and reasonably relied on Defendants'

20   misrepresentations by allowing Plaintiff to join Scouting, remain in Scouting, and engage in a

21   trust relationship with Brock.  Their reliance was justified because Plaintiff and his mother could

22   not conduct an investigation of Defendants' claims that Scout volunteers were safe and

23   trustworthy, given that the records that would disprove the fraud — *e.g.* Defendant BSA's IV

24   files — were not available to the public until decades later; and Plaintiff and his mother did not

25

26

Page 13   **COMPLAINT**

**DUMAS LAW GROUP, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 952-6789

Verified Correct Copy of Original 3/19/2018.

1   know of Defendants' knowledge of Brock's sexual proclivities prior to Plaintiff's abuse, or that,

2   following Plaintiff's abuse, that Defendant BSA had removed Brock from Scouting.

### COUNT I — FRAUD BY ACTIVE CONCEALMENT

34.

5   Plaintiff realleges and incorporates by reference paragraphs 1 through 33.

35.

7   As alleged in paragraphs 24 and 25, Defendants committed fraud by active concealment.

36.

9   As a result and consequence of Defendants' fraud by active concealment, Plaintiff

10   suffered the injuries and incurred the damages described in paragraph 16.

### COUNT II — FRAUD BY CONDUCT AND LANGUAGE

37.

13   Plaintiff realleges and incorporates by reference paragraphs 1 through 36.

38.

15   As alleged in paragraphs 28 and 29, Defendants committed fraud by conduct and explicit

16   language.

39.

18   As a result and consequence of Defendants' fraud by conduct and explicit language,

19   Plaintiff suffered the injuries and incurred the damages described in paragraph 16.

### COUNT III — FRAUD BY NONDISCLOSURE

40.

22   Plaintiff realleges and incorporates by reference paragraphs 1 through 39.

41.

24   As alleged in paragraphs 5 and 23, Defendants had a duty to disclose their knowledge of

25   the sexual abuse history in Scouting and Brock's sexual proclivities to Plaintiff.

26

Page 14   **COMPLAINT**

**DUMAS LAW GROUP, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 952-6789

Verified Correct Copy of Original 3/19/2018.

42.

As alleged in paragraph 30, Defendants committed fraud through nondisclosure.

43.

As a result and consequence of Defendants' fraud through nondisclosure, Plaintiff suffered the injuries and incurred the damages described in paragraph 16.

**THIRD CLAIM FOR RELIEF — Sexual Battery of a Child**

44.

Plaintiff realleges and incorporates by reference paragraphs 1 through 43.

45.

While acting through his agency duties for Defendants, Brock repeatedly sexually abused Plaintiff, as described in paragraphs 10 and 11.

46.

As a result and consequence of Brock's sexual abuse, Plaintiff suffered the injuries and incurred the damages described in paragraph 16.

**WHEREFORE,** Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.     If successful on any of Plaintiff's claims for relief against both Defendants, noneconomic damages for Plaintiff in the amount of $9,000,000, the exact amount to be determined by the jury at the time of trial;

2.     For Plaintiff's disbursements and incurred costs; and

3.     For any other relief this Court deems just and equitable.

DATED this 19th day of March, 2018.

/s/ Gilion C. Dumas
Gilion C. Dumas, OSB No. 922932
gilion@dumaslawgroup.com

**DUMAS LAW GROUP, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 952-6789

Page 15  **COMPLAINT**

Verified Correct Copy of Original 3/19/2018.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Ashley L. Vaughn, OSB No. 114691
ashley@dumaslawgroup.com
**DUMAS LAW GROUP, LLC**

James L. Dumas, OSB No. 771671
jdumas@lindsayhart.com
**LINDSAY HART, LLP**
1300 SW Fifth Ave., Ste. 3400
Portland, OR 97201
Phone: (503) 226-7677

Trial Attorneys:
Gilion C. Dumas and James L. Dumas

*Of Attorneys for Plaintiff*

Page 16  **COMPLAINT**

**EXHIBIT B**

FILED
18 JAN 25 AM 10:06
CIRCUIT COURT
FOR MULTNOMAH COUNTY

Verified Correct Copy of Original 1/25/2018

1

2

3

4

5

6            IN THE CIRCUIT COURT OF THE STATE OF OREGON

7                FOR MULTNOMAH COUNTY          **18CV03080**

| | |
|---|---|
| 8   JULIE DOE, an adult proceeding under a<br>pseudonym, as Guardian Ad Litem for<br>9   TRAVIS DOE, a minor proceeding under a<br>pseudonym, | )   Case No. _____<br>)<br>)   **COMPLAINT**<br>) |
| 10 | )   (Sexual Battery of a Child/*Respondeat*<br>)   *Superior*; Intentional Infliction of Emotional |
| Plaintiff, | )   Distress/*Respondeat Superior*, Negligence,<br>11 | )   Fraud) |
| 11        v. | ) |
| 12   BOY SCOUTS OF AMERICA, a | )   **JURY TRIAL DEMANDED** |
| 13   Congressionally Chartered Corporation,<br>authorized to do business in Oregon; and | )   *Not Subject to Mandatory Arbitration* |
| 14   CASCADE PACIFIC COUNCIL, BOY<br>SCOUTS OF AMERICA, an Oregon Non- | )   Prayer: $8,000,000.00 |
| 15   Profit Corporation, | ) |
| 16        Defendants. | ) |

17

18                        **(Common Allegations)**

19                                1.

20        Plaintiff Travis Doe is a minor born in the year ███ proceeding in this case under a

21   pseudonym. At all times relevant to the acts alleged in this complaint, Plaintiff was an

22   unemancipated minor who was invited to participate in meetings, events, and activities promoted

23   or sponsored by Defendants or agents of the Defendants.

24                                2.

25        Defendant Boy Scouts of America ("Defendant BSA") is a congressionally chartered

26   corporation authorized to do business in Oregon. Defendant Cascade Pacific Council, Boy Scouts

**CREW JANCI LLP**
1650 NW Naito Parkway, Suite 125
Portland, OR 97209
T: 503.306.0224
F: 503.467.4940
www.crewjanci.com

Verified Correct Copy of Original 1/25/2018.

1  of America ("Defendant CPC") is an Oregon non-profit corporation. Defendant BSA and

2  Defendant CPC will be referred to collectively as "Defendants." At all times relevant to this

3  Complaint, Defendants invited participation of boys, including Plaintiff, into their Scouting

4  program and selected adults to serve as Scout Leaders.  Defendants operate, direct, supervise, and

5  otherwise control the Scouting programs and Scouting units in Western Oregon, including the

6  Boy Scout unit in which Plaintiff was involved.  Through its various units and programs,

7  Defendants maintain offices or conduct regular and sustained business in Multnomah County.

8                                                          3.

9          From at least 1935, Defendants knew that Scout Leader positions were being used by

10  predatory child molesters to victimize children, and that Defendants had an institution-wide or

11  systemic child sexual abuse problem. Based on more than ten thousand internal reports contained

12  in Defendants' "ineligible volunteer files" ("IV Files") created prior to Plaintiff's participation in

13  Scouting, Defendants understood: (a) the recidivistic nature of child sexual abuse by Scout

14  Leaders; (b) how Scout Leaders used their positions of trust to groom victims and accomplish the

15  abuse of scouts; and (c) the common indications that abuse was occurring. Based on this

16  knowledge, prior to the selection of Douglas Young ("Young") as a Scout Leader in Portland,

17  Defendants became aware that Scout Leaders, including Douglas Young, were in fact sexually

18  abusing boys. Specifically, on information and belief, (a) Defendants learned that Young had

19  previously engaged in common grooming patterns known to Defendants based on previous

20  reports of sexual abuse; and (b) Defendants learned that Young had previously been accused of

21  child sexual abuse.

22                                                          4.

23          Despite the knowledge set out in paragraph 3, Defendants selected Young as a Scout

24  Leader in Oregon. At all times relevant to this Complaint, Defendants selected or accepted

25  Young for the position of Scoutmaster, or a similar capacity, for the Boy Scout Troop to which

26  Plaintiff belonged (herinafter "Scout Leader"). As Scout Leader, Young's role was to educate,

**CREW JANCI LLP**
1650 NW Naito Parkway, Suite 125
Portland, OR 97209
T: 503.306.0224
F: 503.467.4940
www.crewjanci.com

Page 2          COMPLAINT

Verified Correct Copy of Original 1/25/2018.

1  mentor, befriend, counsel, and train young boys like Plaintiff in morality, patriotism, and various

2  life skills. As a Scout Leader, Young was in a position of trust, confidence, and authority over

3  minors involved in Defendants' programs, including Plaintiff.

4                                            5.

5        Defendants authorized and empowered Young to perform all the duties of a Scout Leader,

6  including the power to provide instruction, counseling, moral guidance, physical supervision of

7  boys participating in Scouting, the power to enforce the rules governing the boys' participation in

8  Scouting, as well as other duties. Defendants retained the right to control the means and methods

9  used by Scout Leaders like Young in fulfilling these duties for Defendants. Defendants taught

10  and instructed boys, including Plaintiff, to have respect for and obey persons in positions of

11  authority, including Scout Leaders like Young. Defendants knew that as part of his duties as a

12  Scout Leader, Young would be in a position of trust, confidence, and authority over the boys

13  involved, including Plaintiff. At all times relevant to this Complaint, Defendants authorized or

14  ratified the conduct of Young in performing the duties of a Scout Leader.

15                                           6.

16        While performing the duties as a Scout Leader, and for the purpose of furthering his

17  duties required in that role, Young befriended Plaintiff; gained the trust and confidence of

18  Plaintiff and his family as an instructor, guide, mentor, counselor, and authority figure; and

19  gained the permission, acquiescence, and support of Plaintiff's families to spend substantial

20  periods of time alone with Plaintiff. As a result, Plaintiff was conditioned to trust Young, to

21  comply with his directions, and to respect Young as a person of authority in moral and ethical

22  matters. This course of conduct is referred to in this Complaint as "Grooming." Alternatively, or

23  in conjunction with the Grooming activity, Young acted as a Scout Leader toward Plaintiff,

24  supervised Plaintiff during Scouting events, trips, and outings, and exercised authority *in loco*

25  *parentis* over Plaintiff during Scouting events.

26  ///

CREW JANCI LLP
1650 NW Naito Parkway, Suite 125
Portland, OR 97209
T: 503.306.0224
F: 503.467.4940
www.crewjanci.com

7.

Using his authority and position of trust as a Scout Leader, and through the Grooming process, Young induced and directed Plaintiff to engage in various sexual acts with Young. Young's Grooming and/or Young's authorized activities as a Scout Leader led to and resulted in the sexual abuse of Plaintiff, discussed below.  Young's Grooming actions and/or his actions as a Scout Leader to Plaintiff were:

a.      Committed in direct connection and for the purpose of fulfilling his employment and
        agency with Defendants;

b.      Committed within the time and space limits of his agency as a Scout Leader;

c.      Done initially and at least in part from a desire to serve the interests of Defendants;

d.      Done directly in the performance of his duties as a Scout Leader;

e.      Consisted generally of actions of a kind and nature which Young was required to perform
        as a Scout Leader; and

f.      Done at the direction of, and pursuant to, the power vested in him by Defendants.

Defendants, through their agents, had a right to control Young's Grooming of children in Scouting as a Scout Leader and/or Young's interactions with those children as a Scout Leader. Alternatively, or in conjunction with the Grooming process, Young's authorized actions as a Scout Leader led to and/or resulted in the sexual abuse of Plaintiff.

8.

Young, as an adult, engaged in intentional conduct resulting in physical injury, mental injury, sexual abuse, and sexual exploitation of Plaintiff. Specifically, Young sexually abused and molested Plaintiff Travis Doe on multiple occasions in 2017, while Plaintiff was a twelve-year-old boy.

9.

On information and belief, prior to the last incident of Plaintiff's abuse, Defendants learned that Young engaged in common grooming patterns known to Defendants based on

CREW JANCI LLP
1650 NW Naito Parkway, Suite 125
Portland, OR 97209
T: 503.306.0224
F: 503.467.4940
www.crewjanci.com

Verified Correct Copy of Original 1/25/2018.

Verified Correct Copy of Original 1/25/2018.

1   previous reports of sexual abuse.

2                                          10.

3        On information and belief, prior to the last incident of Plaintiff's abuse, Defendants also

4   learned of reports that Young had been accused of sexually abusing children in Oregon and that

5   Young had been questioned multiple times by law enforcement and other civil authorities

6   regarding allegations of child sexual abuse during the years prior to Plaintiff's abuse.

7                                          11.

8        As described in paragraphs 3 through 10, above, prior to the last incident of Young's

9   sexual abuse of Plaintiff in 2017, Defendants knew: (a) the nature, common circumstances, and

10   indicators of sexual abuse in Scouting (based on thousands of prior reports of sexual abuse

11   contained in Defendants' "ineligible volunteer files"); (b) that Young had been accused of

12   sexually abusing children in Oregon; (c) that, while working in Plaintiff's troop, Young engaged

13   in common grooming behavior known to Defendants.  Nonetheless, Defendants allowed Young

14   to continue to serve in his position as Scout Leader and remain involved with the Scouting

15   program. Defendants' conduct in relation to Young was consistent with an internal policy

16   implemented by Defendants called "probation," whereby Defendants knowingly allowed and

17   permitted known predators to continue as Scout Leaders working with children in Defendants'

18   care.

19                                          12.

20        As a result of Young's sexual abuse, molestation, and breach of authority, trust, and

21   position as Scout Leader, Plaintiff has suffered and/or will suffer in the future: severe and

22   debilitating mental and emotional injury, including mental and emotional pain and suffering,

23   anxiety, shame, humiliation, emotional trauma, and permanent psychological damage. All of the

24   aforementioned injuries have caused and will cause Plaintiff to incur non-economic damages in

25   the approximate amount of $6,000,000.00, the exact amount to be proven at trial.

26   ///

CREW JANCI LLP
1650 NW Naito Parkway, Suite 125
Portland, OR 97209
T: 503.306.0224
F: 503.467.4940
www.crewjanci.com

Page 5        COMPLAINT

13.

As an additional result and consequence of Young's sexual abuse, molestation, and breach of authority, trust, and position as Scout Leader, Plaintiff incurred and/or will incur in the future, costs for counseling and psychiatric, psychological, and medical treatment all to his economic damages in the approximate amount of $2,000,000.00, the exact amount of which will be proven at the time of trial.

## FIRST CLAIM FOR RELIEF

### Against all Defendants

### (Sexual Battery of a Child/*Respondeat Superior*)

14.

Plaintiff realleges and incorporates by reference paragraphs 1 through 13, above.

15.

While acting in the course and scope of his agency for Defendants, Young induced and directed Plaintiff to engage in various sexual acts with Young, as described in paragraph 8, above. The sexual molestation and abuse constituted harmful and offensive touching of Plaintiff, to which Plaintiff did not and could not consent.

16.

As a result and consequence of Young's sexual abuse and breach of authority, trust, and position as a Scout Leader to Plaintiff, Plaintiff has incurred economic and non-economic damages, as detailed in paragraphs 12 and 13, above.

17.

In molesting Plaintiff, Young acted with malice or a reckless and outrageous indifference to a highly unreasonable risk of harm and with a conscious indifference to the health, safety, and welfare of Plaintiff. Punitive damages against an agent are attributable to a principal when acts committed within the course and scope of agency lead to or result in a tort. Pursuant to ORS 31.725, Plaintiff hereby provides notice of his intent to move to add allegations of punitive

CREW JANCI LLP
1650 NW Naito Parkway, Suite 125
Portland, OR 97209
T: 503.306.0224
F: 503.467.4940
www.crewjanci.com

Verified Correct Copy of Original 1/25/2018

Verified Correct Copy of Original 1/25/2018

1    damages against Defendant at any time after the filing of this Complaint.

2                    **SECOND CLAIM FOR RELIEF**

3                       **Against All Defendants**

4    **(Intentional Infliction of Emotional Distress/*Respondeat Superior*)**

5                              18.

6    Plaintiff realleges and incorporates by reference paragraphs 1 through 17, above.

7                              19.

8         Young, while engaging in the Grooming process, knowingly and intentionally caused

9    severe emotional distress and physical injury to Plaintiff when Young sexually abused Plaintiff,

10   as described in paragraph 8, above.  In the alternative and/or in conjunction with the Grooming,

11   acts committed within the course and scope of Young's agency with Defendants led to and/or

12   resulted in Young knowingly and intentionally causing severe emotional distress and physical

13   injury to Plaintiff.  Plaintiff did in fact suffer severe emotional distress as a result of this sexual

14   abuse, and the sexual abuse of a child is beyond the bounds of all socially tolerable conduct.

15                             20.

16        As a result of Young's sexual abuse and breach of authority, trust, and position as a Scout

17   Leader to Plaintiff, Plaintiff has incurred economic and non-economic damages, as detailed in

18   paragraphs 12 and 13, above.

19                             21.

20        In molesting Plaintiff, Young acted with malice or a reckless and outrageous indifference

21   to a highly unreasonable risk of harm and with a conscious indifference to the health, safety, and

22   welfare of Plaintiff.  Punitive damages against an agent are attributable to a principal when acts

23   committed within the course and scope of agency lead to or result in a tort.  Pursuant to ORS

24   31.725, Plaintiff hereby provides notice of his intent to move to add allegations of punitive

25   damages against Defendant at any time after the filing of this Complaint.

26   ///

**CREW JANCI LLP**
1650 NW Naito Parkway, Suite 125
Portland, OR 97209
T: 503.306.0224
F: 503.467.4940
www.crewjanci.com

**THIRD CLAIM FOR RELIEF**

**Against All Defendants**

**(Negligence)**

22.

Plaintiff realleges and incorporates by reference paragraphs 1 through 21, above.

23.

Defendant established a special relationship with Plaintiff by inviting and encouraging Plaintiff to participate in Scouting activities with Scout Leader Young. That relationship created a duty on the part of Defendants to ensure that Scouting programs were made as reasonably safe as possible from known dangers. Alternatively or in conjunction with the above, Plaintiff had a special relationship with Defendants as a young child entrusted to the care and control of Defendants. The special relationship created a duty of care on the part of Defendants to ensure Plaintiff's safety while participating in Defendants' programs, events, or activities.

24.

Based on the knowledge set out in paragraphs 3 through 11 above, Defendants knew that children (including Plaintiff) were at risk of sexual abuse in Scouting, including the risk of sexual abuse by Young.

25.

Despite the knowledge set out in paragraphs 3 through 11 above, Defendants created a foreseeable risk of Scout Leaders abusing children involved in Scouting, inluding the risk of Young abusing Plaintiff, by failing to undertake reasonable child abuse prevention measures in one or more of the following ways:

a.   Defendants failed to screen or exclude Young from contact with children in Scouting;

b.   Defendants failed to reform or enforce an effective process for selecting, monitoring, and supervising Scout Leaders, including Young;

c.   Defendants knowingly allowed suspected child abusers to continue as Scout Leaders

CREW JANCI LLP
1650 NW Naito Parkway, Suite 125
Portland, OR 97209
T: 503.306.0224
F: 503.467.4940
www.crewjanci.com

Verified Correct Copy of Original 1/25/2018.

Verified Correct Copy of Original 1/25/2018.

1      working with children in Defendants' care;

2  d.   Defendants failed to train Scout Leaders, parents, and Scouts in how to recognize,

3      prevent, report, and respond to common warning signs indicating child abuse;

4  e.   Defendants failed to train Scout Leaders to report to law enforcement allegations of Scout

5      Leaders sexually abusing children;

6  f.   Defendants failed to warn and/or notify Plaintiff's parents and parents of similarly

7      situated children about the prior allegations of abuse against Young;

8  g.   Defendants failed to warn parents and Scouts of the risk of child sexual abuse inherent to

9      the Scouting program;

10  h.   Defendants failed to report Young to law enforcement; and

11  i.   Defendants failed to implement and/or enforce reasonable policies to prevent child

12      abuse–such as a "zero tolerance" rule regarding allegations of child abuse, or a rule

13      against any Scout Leader participating in activities alone with individual children in

14      Scouting (i.e., no "one-on-one").

15  These actions and inactions were a substantial contributing and causal factor to the abuse of

16  Plaintiff and his resulting injuries.

17                                    26.

18      Based on Defendants' aforementioned knowledge about Young, as well as more than ten

19  thousand previous reports of child sexual abuse in Scouting contained in their ineligible

20  volunteer files, Defendants knew with certainty that the failures to undertake reasonable child

21  abuse prevention measures (as set out in paragraph 25, above) would result in children being

22  sexually abused by Scout Leaders while participating in Defendants' Scouting program and

23  activities.  It was foreseeable to Defendant that Plaintiff and the similarly situated class of

24  children involved in Scouting were in danger of sexual abuse, including abuse by Young, and

25  that pedophile Scout Leaders (including Young) would likely molest additional children if

26  permitted to remain a Scout Leader. Defendants thereby created a foreseeable risk of harm to the

**CREW JANCI LLP**
1650 NW Naito Parkway, Suite 125
Portland, OR 97209
T: 503.306.0224
F: 503.467.4940
www.crewjanci.com

Verified Correct Copy of Original 1/25/2018.

1   safety of children in the care of Defendants, including Plaintiff.

2                                           27.

3         Plaintiff was a member of the class of individuals to be protected by reasonable abuse

4   prevention measures. Such measures would have protected Plaintiff from some or all of his

5   abuse. Alternatively, Defendants affirmatively created a dangerous condition by not excluding

6   known pedophiles from participation in Scouting, including not excluding Young after learning

7   of Young grooming and alleged sexual abuse of children as set forth in paragraphs 3 through 11

8   above.

9                                           28.

10        Plaintiff's interest in being free from sexual molestation is an interest of a kind that the

11  law protects against negligent invasion. Defendants' actions and inactions described in

12  paragraphs 22 through 26, above, were unreasonable in light of the risk posed to minor boys by

13  Scout Leaders, including Young. Defendants' actions and inactions described in paragraphs 22

14  through 26 were a direct and foreseeable cause of the molestation and damages suffered by

15  Plaintiff, as alleged in paragraphs 8, 12, and 13 above.

16                                          29.

17        In acting or failing to act as alleged in paragraphs 22 through 28, above, Defendants acted

18  with malice or reckless and outrageous indifference to a highly unreasonable risk of harm and

19  with a conscious indifference to the health, safety, and welfare of children in Scouting, including

20  Plaintiff. Plaintiff hereby provides notice of his intent to move to add allegations of punitive

21  damages against Defendants at any time after the filing of this Complaint.

22                            **FOURTH CLAIM FOR RELIEF**

23                               **Against ALL Defendants**

24                                        **(Fraud)**

25                                          30.

26        Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 29, above.

**CREW JANCI LLP**
1650 NW Naito Parkway, Suite 125
Portland, OR 97209
T: 503.306.0224
F: 503.467.4940
www.crewjanci.com

Verified Correct Copy of Original 1/25/2018

31.

At all times relevant to this Complaint, Defendants invited and encouraged Plaintiff to participate in the Scouting program that they administered and controlled, all the while promoting their program as being safe and beneficial for boys–physically, emotionally, and spiritually. This invitation created a special, fiduciary relationship (as described above), wherein Plaintiff and his parents relied upon Defendants' expertise and judgment in selecting morally upright men to lead, supervise, and instruct boys in Scouting programs, including within Plaintiff's Scout Troop.

32.

Despite the Defendants' knowledge set out in paragraphs 3 through 11, above, at all times relevant to this Complaint, Defendants misrepresented, failed to disclose, and/or actively concealed the danger of child molestation in Scouting (set forth in paragraphs 1 through 28). In the alternative or in conjunction with the above, Defendants affirmatively represented that its program and Scout Leaders (including Young) were safe and trustworthy (set forth in paragraphs 1 through 28). As such, these assertions, misrepresentations, non-disclosures, concealment, silence, and related conduct will be collectively referred to as "representations" throughout the remainder of this Complaint.

33.

Defendants' representations were false and misleading because:

a.   Defendants had a duty to disclose known threats to the health and safety of the minors involved with their organization;

b.   Defendants' invitation to Plaintiff to participate in Scouting upon payment of the fee required Defendants to disclose all matters material to entering into the transaction, and the danger that Plaintiff would be molested in Scouting would have been particularly material to Plaintiff's decision to enter into or remain in the transaction with Defendants; and

CREW JANCI LLP
1650 NW Naito Parkway, Suite 125
Portland, OR 97209
T: 503.306.0224
F: 503.467.4940
www.crewjanci.com

Verified Correct Copy of Original 1/25/2018

c.     Defendants actively concealed the danger of child molestation by Scout Leaders.

34.

Defendants' knowledge of and representations regarding the danger of child molestation in Scouting are material because, had Plaintiff known or been given prior warning of the substantial risks of abuse and danger within Scouting, such information would have influenced Plaintiff's conduct in relation to Scouting. Specifically, if he had been aware of these facts, Plaintiff would not have entered into or continued to be in a relationship with Defendants or their agents (including Young), would not have participated or remained in the Scouting program, and would have been on guard against abuse by Defendants' agents (including Young).

35.

Based on Defendants' knowledge set out in paragraph 3 through 11, above, Defendants knew that their conduct and representations regarding the safety of Scouting and Scout Leaders were false, misleading, unfounded, and/or were made with reckless disregard for the truth. Defendants knew that their conduct and representations created a false impression that obscured, covered up, and/or removed an opportunity that might have led Plaintiff or other similarly situated individuals to discover the type of material facts set forth in paragraphs 3 through 11, above.

36.

Defendants' conduct and representations were made with the intent of inducing Plaintiff (and other similarly situated children), Plaintiff's parents (and other similarly situated parents and guardians), and the community at large to rely on such representations and thereby continue to trust and be involved with Defendants, their agents (including Young), and the Scouting program.

37.

Plaintiff and his parents relied on Defendants' representations in allowing Plaintiff to engage in a trust relationship with Defendants and their agents. Plaintiff and his parents

CREW JANCI LLP
1650 NW Naito Parkway, Suite 125
Portland, OR 97209
T: 503.306.0224
F: 503.467.4940
www.crewjanci.com

Verified Correct Copy of Original 1/25/2018

1   reasonably relied on Defendants' representations, as well as Defendants' conduct in maintaining

2   the same policies and procedures for the Scouting program, and reasonably believed that

3   Scouting and Scout Leaders did not pose a known danger to children. The reliance of Plaintiff

4   and his parents was justified because they did not know, nor could they have known, of the

5   danger of child sexual abuse by Scout Leaders (including Young) or Defendants' knowledge of

6   such. Plaintiff and his parents relied to their detriment in allowing Plaintiff to participate in

7   Scouting and Plaintiff was harmed as a result of this reliance.

8                                                   38.

9        As a direct consequence of Defendants' fraud as described in paragraphs 30 through 37,

10  Plaintiff suffered the damages described in paragraphs 12 and 13, above.

11                                                  39.

12       In committing the aforementioned fraud, Defendants acted with malice or a reckless and

13  outrageous indifference to a highly unreasonable risk of harm and with a conscious indifference

14  to the health, safety, and welfare in children in Scouting, including Plaintiff. Plaintiff hereby

15  provides notice of his intent to move to add punitive damages against Defendants at any time

16  after the filing of this Complaint.

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

CREW JANCI LLP
1650 NW Naito Parkway, Suite 125
Portland, OR 97209
T: 503.306.0224
F: 503.467.4940
www.crewjanci.com

Verified Correct Copy of Original 1/25/2018.

1     **WHEREFORE**, Plaintiff prays for judgment against Defendant, as follows:

2  1.   Non-economic damages in the amount of $6,000,000.00, the exact amount to be

3     determined by the jury at the time of trial;

4  2.   Economic damages in the amount of $2,000,000.00, the exact amount to be determined

5     by the jury at the time of trial;

6  3.   For Plaintiff's costs and disbursements incurred; and

7  4.   For any other relief this Court deems just and equitable.

8  DATED this 25th day of January, 2018.

9                 **CREW JANCI LLP**

10

11        **Trial Attorney:**  Stephen F. Crew, OSB # 781715
12                 Peter B. Janci, OSB #074249
13                 CREW JANCI LLP
                    1650 NW Naito Parkway, Suite 125
14                 Portland, OR 97209
                    Tel: 503-306-0224
15                 steve@crewjanci.com
                    peter@crewjanci.com
16                  *Attorneys for Plaintiffs*

17

18

19

20

21

22

23

24

25

26

**CREW JANCI LLP**
1650 NW Naito Parkway, Suite 125
Portland, OR 97209
T: 503.306.0224
F: 503.467.4940
www.crewjanci.com

Page 14    COMPLAINT

**EXHIBIT C**

JAVERBAUM WURGAFT HICKS KAHN WIKSTROM & SININS, P.C.
505 Morris Avenue
Springfield, NJ 07081
(973) 379-4200
Attorney I.D. No. Eric G. Kahn (021031993)
*Attorneys for Plaintiff*

| | | |
|---|---|---|
| Plaintiff | : | SUPERIOR COURT OF NEW JESEY |
| | : | LAW DIVISION: SUSSEX COUNTY |
| ▇▇▇▇▇▇▇▇▇ | : | DOCKET NO. |
| | : | |
| vs. | : | |
| | : | |
| Defendants | : | CIVIL ACTION |
| | : | |
| BOY SCOUTS OF AMERICA, a | : | |
| Congressionally Chartered Corporation, | : | |
| PATRIOTS' PATH COUNCIL, INC. BOY | : | |
| SCOUTS OF AMERICA, SUSSEX DISTRICT | : | COMPLAINT, DEMAND FOR |
| BOY SCOUTS OF AMERICA d/b/a Stillwater | : | TRIAL BY JURY, DESIGNATION |
| Boy Scouts of America and/or Group 83 | : | OF TRIAL COUNSEL, |
| Stillwater, and XYZ CORPORATION 1-100 | : | CERTIFICATION |
| (fictitious name pursuant to R.4:26-4) | : | |

Plaintiff, ▇▇▇▇▇▇▇▇, residing at 914 West End Drive, Newton, State of New Jersey,

by way of Complaint against the Defendants, says:

## FIRST COUNT

1.     At all times material to the within cause of action, Defendant Boy Scouts of

America (hereinafter "BSA") was a congressionally chartered corporation authorized to do

business in New Jersey with its principal place of business located at 1325 West Walnut Hill Lane,

Irving, Texas.

2.     At all times material to the within cause of action, Defendant Patriots' Path Council,

Inc. Boy Scouts of America (hereinafter "Patriots' Path") was a non-profit corporation organized

under the laws of the State of New Jersey with its principal place of business at 1 Saddle Road, Cedar Knolls, New Jersey.

3.      At all times material to the within cause of action, Defendant Sussex District Boy Scouts of America, alternatively known as Stillwater Boy Scouts of America and/or Group 83 Stillwater (hereinafter "Sussex District"), was a non-profit corporation organized under the laws of the State of New Jersey.

4.      At all times material to the within cause of action, Defendant XYZ Corporation 1-100 (fictitious name pursuant to R. 4:26-4, hereinafter "XYZ") were counsels or agencies of the Boy Scouts of America, either dissolved or presently active.  Defendants BSA, Patriots' Path and Sussex District will be referred collectively as "Defendants".

5.      At all times material to the within cause of action, Defendants invited participation of boys in their scouting programs and selected adults to serve as Scout Leaders, Scout Masters or other agents of the Defendants having control over the activities of children participating in programs administered or sponsored by and jointly owned and/or operated by the Defendants.

6.      BSA encourages parents to enroll their children in scouting programs through local BSA counsels including Patriots' Path and Sussex District, and encourages parents to entrust their children's health and safety to the Defendants.

7.      Defendants market the wholesomeness and safety of their programs to the American public. Yet, the BSA has concealed from scouts and their parents, its knowledge that pedophiles have been infiltrating the BSA in large numbers for many years.  BSA also misrepresented to scouts and their parents that scouts were safe in scouting programs when, in fact, scouts were at an unreasonably heightened risk of sexual abuse by adult Scout Leaders, Masters or other volunteers/agents.

2

8.    At all relevant times, Patriots' Path and Sussex District were agents of the BSA and subject to BSA's authority and control.

9.    Prior to 1972, Defendants knew that Scout Leaders, Scout Masters or other positions in its scouting programs were being used by predatory child molesters to victimize children and that Defendants had an institution-wide child sexual abuse problem.

10.    In light of this knowledge, BSA implemented a system to identify Scout Leaders, Scout Masters or other adult participants in scouting programs who would be considered ineligible to hold positions due to allegations of sexual abuse. This system became known as the "Ineligible Volunteer File" ("IVF"), and has more recently been referred to as the Perversion Files ("PF").

11.    In or about the period 1972 to 1978, Plaintiff, Clark Fredericks, was a cub scout and/or boy scout enrolled in the Stillwater Boy Scouts. A family member was also a scout under Pegg as Scoutmaster. During this time, Plaintiff was repeatedly sexually abused by Scoutmaster Dennis Pegg while he and/or family members were participating in scouting programs, including camp outs, and at a time when Plaintiff was ages 7 to 12 years.

12.    As a result of Pegg's repeated history of sexually abusing scouts, both before and after his abuse of Plaintiff, he should have been deemed ineligible to hold a position with Defendant.

13.    During the time Pegg sexually abused Plaintiff from 1972 to 1978, Defendants selected and accepted him in their programs and permitted him to educate, mentor, befriend, counsel and train young boys like Plaintiff in morality, patriotism and various life skills.

14.    During the time Pegg sexually abused Plaintiff he was in a position of trust, confidence and authority over minors involved in Defendants' programs, including Plaintiff. Pegg came to this position by virtue of being recommended for Defendants, when Plaintiff's brother

was a scout. Based on this position and association, Pegg gained access to Plaintiff and begin grooming him for sexual abuse.

15.   At all times relevant to the within litigation, Defendants retained the right to control the actions and conduct of Pegg in performing his duties with Defendants.

16.   At all times relevant to the within litigation, Plaintiff was conditioned to trust Pegg, to comply with his directions and to respect him as a person of authority in moral and ethical matters.

17.   At all times material to the with cause of action, Pegg supervised Plaintiff on scouting trips, outings, camp outs and other activities and exercised authority in loco parentis over Plaintiff while Plaintiff participated in the scouting programs organized, supervised and operated by Defendants.

18.   Using his authority and position of trust, Pegg induced and directed Plaintiff to engage in various sexual acts that resulted in sexual abuse of Plaintiff.

19.   The sexual abuse of Plaintiff by Pegg was committed in direct connection with his position and agency with Defendants, was done while serving the interests of Defendants, and was done at the direction of, and pursuant to, the power vested in him by Defendants.

20.   As a result of Pegg's breach of authority, trust and position with Defendants and his sexual abuse of Plaintiff while an agent, servant or representative of Defendants, Plaintiff has suffered and will continue to suffer severe and debilitating physical, mental and emotional injuries, emotional trauma, permanent psychological damage, he has and will in the future incur costs for counseling, psychiatric and psychological treatment, he has lost quality of life, he has been unable to attend to his ordinary employment or affairs, and he has otherwise been damaged.

21.     At all times material to the within cause of action and at all times while Pegg engaged in sexual abuse of Plaintiff, Defendants were responsible for his actions under the law governing principal/agency relationships or under the doctrine of respondeat superior.

WHEREFORE, Plaintiff, ███████, demands Judgment against Defendants jointly, severally or in the alternative, in the amount of his damages, together with interest and costs of suit.

## SECOND COUNT

1.     Plaintiff repeats and realleges all of the allegations of the First Count of the Complaint as though set forth herein more fully at length.

2.     Defendants created a "special relationship" with Plaintiff by inviting and encouraging him to participate in scouting activities and programs sponsored and operated by Defendants. This special relationship created a duty on the part of the Defendants to ensure that these programs were reasonably safe from known dangers.

3.     Plaintiff also had a "special relationship" with Defendants as a young child entrusted to the care and control of the Defendants. This special relationship created a duty of care on the part of the Defendants to ensure Plaintiff's safety while participating in Defendants programs, events or activities. Defendants breached their duty to protect Plaintiff and breach their duties arising out of their special relationship with Plaintiff.

4.     As a direct and proximate result of the breach of duty by Defendants, as aforesaid, Plaintiff suffered the incident and attendant injuries hereinbefore described.

WHEREFORE, Plaintiff, ███████, demands Judgment against Defendants jointly, severally or in the alternative, in the amount of his damages, together with interest and costs of suit.

## THIRD COUNT

1.      Plaintiff repeats and realleges all of the allegations of the First and Second Counts of the Complaint as though set forth herein more fully at length.

2.      At all times material to the within cause of action and during the times when Pegg sexually abused Plaintiff at scouting programs, outings or activities, as aforesaid, Pegg was in the course or scope of his agency relationship with Defendants.

3.      Defendants failed to exercise ordinary and reasonable care in supervising Pegg as their agent, representative or servant, and Defendants further failed to prevent the foreseeable misconduct of Pegg, including the sexual abuse of Plaintiff.

4.      As a direct and proximate result of Defendants' negligent, conduct or negligent supervision of Pegg, Plaintiff suffered the incident and attendant injuries herein before described.

WHEREFORE, Plaintiff, Clark Fredericks, demands Judgment against Defendants jointly, severally or in the alternative, in the amount of his damages, together with interest and costs of suit.

## FOURTH COUNT

1.      Plaintiff repeats and realleges all of the allegations of the First through Third Counts of the Complaint as though set forth herein more fully at length.

2.      Defendants became aware, or should have become aware of problems indicating that Pegg was unfit to continue in his role as an adult Scout Leader, Scout Master or other volunteer, that Pegg had dangerous sexual propensities toward boys, that Pegg had violated his position of trust and that Pegg otherwise should have been removed from scouting programs, and that his membership in Defendants should have been rescinded. Yet, Defendants failed to take any action to remedy the problem to discharge or remove Pegg from scouting programs, to

6

investigate allegations of sexual abuse by Pegg prior to the time he sexually abused Plaintiff and otherwise failed to prevent Pegg from having the opportunity to harm Plaintiff.

3.      As a direct and proximate result of Defendants' negligent retention of Pegg, Plaintiff suffered the incident and attendant injuries herein before described.

WHEREFORE, Plaintiff, ▮▮▮▮▮▮ demands Judgment against Defendants, jointly, severally or in the alternative, in the amount of his damages, together with interest and costs of suit.

## FIFTH COUNT

1.      Plaintiff repeats and realleges all of the allegations of the First through Fourth Counts of the Complaint as though set forth herein more fully at length.

2.      Defendants had a duty to disclose known threats to the health and safety of minors involved in their scouting programs in light of the information known to the Defendants prior to 1972 which indicated that adult pedophiles used the scouting programs to accomplish sexual abuse of boys and in light of the information it obtained through IVF and PFs.

3.      Defendants had a duty to disclose the known threat to the Plaintiff based upon the prior, actual knowledge.

4.      Defendants fraudulently misrepresented and failed to disclose and/or actively concealed the dangers of sexual abuse of boys by Scout Masters, Scout Leaders or other adults participating in the program, including Pegg.

5.      Defendants made these fraudulent misrepresentations with the intent of inducing Plaintiff and other children similarly situated, Plaintiff's parents and other parents similarly situated, to rely on their fraudulent misrepresentations and thereby continue to trust Defendants to enroll Plaintiff and other children in its scouting programs.

7

6.    Defendants obtained a substantial economic benefit from this reliance upon their fraudulent misrepresentation.

7.    Plaintiff's and his parents' reliance on the fraudulent misrepresentations resulted in Plaintiff engaging in a trust relationship with the Defendants and their agent, Pegg. This reliance was justified because they did not know nor could they have reasonably known, that Defendants were aware of significant, dangerous sexual abuse by Scout Leaders, Scout Masters or other adults participating in the program, including Pegg.

8.    Plaintiff and his parents acted to their detriment in allowing Plaintiff to participate in the scouting programs supervised and operated by Defendants. Plaintiff would not have entered into a relationship with Defendants and with Pegg, Defendants' agent, had he or his parents been made aware of facts fraudulently misrepresented or secreted by Defendants.

9.    As a proximate result of fraudulent acts of Defendants, as aforesaid, Plaintiff suffered the incident and attendant injuries hereinbefore described.

WHEREFORE, Plaintiff, ███████████ demands Judgment against Defendants, jointly, severally or in the alternative, in the amount of his damages, together with punitive damages, with interest and costs of suit.

## SIXTH COUNT

1.    Plaintiff repeats and realleges all of the allegations of the First through Fifth Counts of the Complaint as though set forth herein more fully at length.

2.    Defendants created a reasonably foreseeable risk of abuse of Plaintiff and other children involved in the scouting programs it supervised and/or operated by failing to undertake reasonable child abuse prevention measures in the following particular ways:

-    in failing to screen or exclude Pegg from contact with children in Defendants' scouting programs;

- by failing to change their processes and systems for selecting, monitoring and supervising their agents, including Pegg;

- by knowingly allowing pedophiles to continue in Defendants scouting programs;

- by failing to train Scout Leaders, Scout Masters and other adult volunteers in its programs to prevent, exclude or report adults suspected of child sexual abuse during the course of scouting activities and programs;

- in failing to warn or notify Plaintiff and/or his parents about Pegg's history of sexual abuse during the course of scouting programs;

- by failing to report Pegg to law enforcement; and

- by failing to implement and/or enforce a zero tolerance policy involving allegations of child abuse.

3. Defendants knew or should have known that by failing to perform the actions hereinbefore described, and by failing to undertake reasonable child abuse prevention measures, children would be sexual abused by Scout Leaders, Scout Masters or other persons participating in Defendants' scouting programs and activities, including the sexual abuse by Buttel.

4. Plaintiff was a member of the class of individuals to be protected by reasonable child abuse prevention measures. Such measures would have protected Plaintiff from the abuse he suffered.

5. Given the Defendants' knowledge of the history of sexual abuse in its scouting programs, as well as Defendants' actual knowledge of Pegg's prior abuse in scouting programs, Defendant's conduct knowingly allowed, permitted or encouraged child abuse.

6. Plaintiff's interest in being free from sexual abuse is an interest of the kind which the law protects against negligent invasion by Defendants.

9

7.    Defendants acted with malice, reckless or outrageous indifference to the highly unreasonable risk of harm and with conscious indifference to the health, safety and welfare of children in scouting, including Plaintiff.

8.    As a direct and proximate result of the actions or inactions of Defendants, as aforesaid, Plaintiff suffered the incident and attendant injuries hereinbefore described.

WHEREFORE, Plaintiff, ██████████ demands Judgment against Defendants, jointly, severally or in the alternative, in the amount of his damages, together with punitive damages, with interest and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a Trial by jury as to all issues.

## NOTICE OF TRIAL COUNSEL

Please take notice that Eric G. Kahn, Esq. is hereby designated as Trial Counsel in the above captioned matter for the firm of Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, pursuant to Rule 4:25 et. seq.

## CERTIFICATION AS TO REDACTION OF REQUIRED PERSONAL IDENTIFIERS

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38 7(b).

10

## CERTIFICATION

Pursuant to the requirements of Rule 4:5 1 (NOTICE OF OTHER ACTIONS), I, the undersigned, do hereby certify to the best of my knowledge, information and belief, that except as hereinafter indicated, the subject matter of the controversy referred to in the within pleading is not the subject of any other Cause of Action, pending in any other Court, or of a pending Arbitration Proceeding, nor is any other Cause of Action or Arbitration Proceeding contemplated;

1. OTHER ACTIONS PENDING.............................YES _____    NO _X___

   A. If YES   Parties to other Pending Actions.

   B. In my opinion, the following parties should be
      joined in the within pending Cause of Action.

2. OTHER ACTIONS CONTEMPLATED?........................ YES _____    NO _X___

   A. If YES   Parties contemplated to be joined, in
      other Causes of Action.

3. ARBITRATION PROCEEDINGS PENDING?................... YES _____   NO _X___

   A. If YES   Parties to Arbitration Proceedings.

   B. In my opinion, the following parties should be
      joined in the pending Arbitration Proceedings.

4. OTHER ARBITRATION PROCEEDINGS CONTEMPLATED?..... YES ____   NO _X___

   A. If YES   Parties contemplated to be joined to
      Arbitration Proceedings.

In the event that during the pendency of the within Cause of Action, I shall become aware of any change as to any facts stated herein, I shall file an amended certification and serve a copy thereof on all other parties (or their attorneys) who have appeared in said Cause of Action.

                    JAVERBAUM WURGAFT HICKS KAHN
                    WIKSTROM & SININS, P.A.
                    Attorneys for Plaintiffs

        by: _____
                Eric G. Kahn

DATED: January 13, 2020

# EXHIBIT D

STARK & STARK, A Professional Corporation
Mailing Address: PO Box 5315, Princeton, NJ 08543
Office Location: 993 Lenox Drive, Lawrenceville, NJ 08648
(609) 896-9060
**Michael G. Donahue, III, Esq., Attorney ID#: 04577-1994**
**Attorneys for Plaintiffs,** ▮▮▮▮▮▮

| | |
|---|---|
| ▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>Plaintiffs,<br><br>vs.<br><br>BOY SCOUTS OF AMERICA; ESSEX COUNTY COUNCIL OF THE BOYS SCOUTS OF AMERICA; NORTHERN NEW JERSEY COUNCIL OF THE BOY SCOUTS OF AMERICA; BOY SCOUT TROOP #64; XYZ ENTITIES 1-100 (fictitious designations); and JOHN DOES 1-200 (fictitious designations),<br><br>Defendant(s). | SUPERIOR COURT OF NEW JERSEY<br>ESSEX COUNTY LAW DIVISION<br><br>Docket No.<br><br>**CIVIL ACTION**<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiffs, ▮▮▮▮▮▮ by way of Complaint say:

## BACKGROUND AND THE PARTIES

1.      Defendant, Boy Scouts of America (hereinafter "BSA"), is a corporation

with its principal offices located at 1325 W. Walnut Hill Lane, Irving Texas. Defendant,

BSA, is authorized to do business in New Jersey and in fact sponsors scout troops in New

Jersey.

STARK & STARK
ATTORNEYS AT LAW

1

4839-8948-9072, v. 1

2.      From 1954 to 1979, including times relevant times to this action, Defendant, BSA, was a New Jersey corporation whose headquarters and principal office were located in Middlesex County, New Jersey.

3.      At all relevant times, Defendant, BSA, authorized Councils and other local organizations to charter, sponsor, and operate Boy Scout Troops, Cub Scout Troops, and other types of Troops throughout New Jersey, including the Troop referenced herein.

4.      Defendant, BSA, the Councils, and the local organizations would collectively select the leaders and volunteers of each Boy Scout Troop and Cub Scout Troop in New Jersey, including the leaders and volunteers of the Troop referenced herein.

5.      However, Defendant, BSA, retained and exercised the ultimate authority to decide who could be a leader or volunteer of any Boy Scout Troop or Cub Scout Troop, including the leaders and volunteers of the Troop referenced herein.

6.      Defendant, BSA, also had the right to control the means and manner of the staffing, operation, and oversight of any Boy Scout Troop, Cub Scout Troop, or other type of Troop, including the Troop referenced herein.

7.      Defendant, BSA, made available its name, programming, and endorsement, to the leaders, volunteers, and members of every Boy Scout Troop, Cub Scout Troop, or other Troop affiliated with Defendant, BSA, in the United States, including New Jersey, in exchange for an annual membership fee, including the leaders, volunteers, and members of the Troop referenced herein.

8.      In exchange for the opportunity to participate in Defendant, BSA's, programming and activities, the child members of every Boy Scout Troop, Cub Scout

STARK & STARK
ATTORNEYS AT LAW

2

Troop, and other Troop affiliated with Defendant, BSA, in the United States, including those in New Jersey, would pay Defendant, BSA, an annual membership fee, including Plaintiff herein when he was a child member.

9. Defendant, BSA, markets the wholesomeness and safety of its programs to the American public.

10. Defendant, BSA, has concealed from the public its knowledge that pedophiles have been infiltrating Defendant, BSA, in large numbers for decades.

11. Defendant, BSA, caused, created, permitted, and concealed an environment which allowed repeated and ongoing sexual abuse of young scouts by its scoutmasters, representatives, volunteers, leaders and/or employees.

12. Defendant, BSA, misrepresented to scouts and their parents that scouts were safe in scouting programs when scouts were actually at an unreasonably heightened risk of sexual abuse by scoutmasters, representatives, volunteers, leaders and/or employees.

13. At all relevant times, Defendant, BSA, knew its scouting programs were being used by predatory child molesters to victimize children.

14. Thad Alton ("Alton") is an individual citizen who was an agent, servant, scout master, representative, volunteer, or scout leader of Defendant, BSA. At all times relevant, Alton acted in the course and scope of his employment or authority as an agent, servant, scoutmaster, leader, volunteer and/or employee of Defendant, BSA.

15. At all times relevant to this action, Defendant, BOY SCOUT TROOP #64 (hereinafter "TROOP #64"), was a Troop organized, operated and/or sponsored by, or

otherwise affiliated with, Defendant, BSA, of which Alton was an agent, servant, scoutmaster, leader, volunteer and/or employee.

16.     At all times material to the within cause of action, Defendant, ESSEX COUNTY COUNCIL OF THE BOY SCOUTS OF AMERICA (hereinafter "ECC"), was an entity organized under the laws of the State of New Jersey with its principal place of business at 36 Park Place, Newark, New Jersey.

17.     Defendant, ECC, was a Council organized, operated and/or sponsored by, or otherwise affiliated with, Defendant, BSA, of which Alton was an agent, servant, scoutmaster, leader, volunteer and/or employee.

18.     Defendant, NORTHERN NEW JERSEY COUNCIL OF THE BOY SCOUTS OF AMERICA (hereinafter "NNJC"), is an entity organized under the laws of the State of New Jersey with its principle place of business at 25 Ramapo Valley Road, Oakland, New Jersey.

19.     Defendant, NNJC, was formed January 1, 1999 as a result of the consolidation of the ECC with other County Councils and is a Council organized, operated and/or sponsored by, or otherwise affiliated with, Defendant, BSA, of which Alton was an agent, servant, scoutmaster, leader, volunteer and/or employee.

20.     Defendant, NNJC, is a successor Council of Defendant, ECC.

21.     Defendants, XYZ ENTITIES 1-50 (fictitious designations), whose identities are presently unknown, are Councils, Units, Troops and/or other entities affiliated with the BSA, who are currently active and/or were previously active.

22.     Defendants, XYZ ENTITIES 51-75 (fictitious designations), whose identities are presently unknown, are intended to identify as Defendants entities, corporations, or

STARK & STARK
ATTORNEYS AT LAW

4

organizations to the extent that Defendant, BSA, was a different entity, corporation, or organization which existed at any relevant time.

23.     Defendants, XYZ ENTITIES 76-100 (fictitious designations), whose identities are presently unknown, are intended to identify as Defendants entities, corporations, or organizations to the extent that Defendant, BSA, is a successor to a different entity, corporation, or organization which existed at any relevant time.

24.     Defendants, JOHN DOES 1-100 (fictitious designations), whose identities are presently unknown, were employed and/or retained in various positions by or on behalf of the Defendants, BSA, ECC, NNJC, TROOP #64, and/or XYZ ENTITIES 1-100 (fictitious designations). At all such times, Defendants, JOHN DOES 1-100 (fictitious designations), were responsible for the retention, training, supervision, oversight, monitoring and control on behalf of the Defendant, BSA, of Alton. At all times relevant, Defendants, JOHN DOES 1-100 (fictitious designations), acted in the course and scope of their employment or authority as agents, servants, scoutmasters, representatives, volunteers, leaders and/or employees of Defendants, BSA, ECC, NNJC, TROOP #64, and/or XYZ ENTITIES 1-100 (fictitious designations).

25.     Defendants, JOHN DOES 101-200 (fictitious designations), whose identities are presently unknown, were employed, volunteered and/or retained in various positions on behalf of Defendants, BSA, ECC, NNJC, TROOP #64, and/or XYZ ENTITIES 1-100 (fictitious designations), during relevant times. During such times, Defendants, JOHN DOES 101-200 (fictitious designations), became aware, or should have known, of Alton's abuse of young scouts. At all times relevant, Defendants, JOHN DOES 101-200 (fictitious designations), acted in the course and scope of their employment or authority as

STARK & STARK
ATTORNEYS AT LAW

5

agents, servants, scoutmasters, representatives, volunteers, leaders and/or employees of Defendant, BSA.

26.    While an agent, servant, scout master, representative, volunteer, or scout leader for Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), Alton sexually abused and assaulted young male scouts.

27.    Plaintiff, ■ is an adult individual who resides in the County of Essex and State of New Jersey.

28.    ■ is used as a pseudonym for Plaintiff to preserve privacy in a matter of a sensitive and highly personal nature because identification of Plaintiff poses a risk of mental harm, harassment, ridicule, and/or personal embarrassment, and because the case involves information of the utmost intimacy.

29.    Plaintiff, ■ was a scout of Defendants, BSA, ECC, NNJC, and Troop #64 between the years of 1976 and 1979.

30.    While a child under the care and supervision of Defendants, BSA, ECC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), Plaintiff, ■ was sexually and otherwise abused and assaulted by Alton.

## NATURE OF THE ACTION

31.    From 1976 through 1979, Plaintiff, ■ was a cub and/or boy scout of Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and was under the age of 18.

STARK & STARK
ATTORNEYS AT LAW

6

32.     Alton groomed Plaintiff, ███ by making him feel included, trusted, and otherwise special.

33.     Alton's grooming of Plaintiff, ███ constituted emotional and psychological abuse which rendered Plaintiff, ███ more susceptible and likely to fall prey to sexual abuse.

34.     Alton began to prey upon and abuse Plaintiff, ███

35.     Alton coerced Plaintiff, ███ to engage in sexual acts with Alton.

36.     Alton coerced Plaintiff, ███, to engage in sexual acts with other young boys in Alton's presence.

37.     Alton committed acts of sexual, physical, psychological, and emotional abuse against Plaintiff, ███ while serving as an agent, servant, scout master, representative, volunteer, scout leader and/or employee of Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations).

38.     Alton coerced Plaintiff, ███ to keep the abuse a secret through manipulating Plaintiff, ███ and otherwise engaging in continued emotional and psychological abuse.

39.     Alton also threatened and/or otherwise placed Plaintiff, ███ under duress to keep the abuse a secret.

40.     Alton's sexual abuse had devastating and severe adverse effects on Plaintiff, ███ mental state

41.     Upon information and belief, Alton engaged in sexual, physical, psychological, and emotional abuse of numerous other young male scouts Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations).

STARK & STARK
ATTORNEYS AT LAW

7

42.     Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), knew or should have known of the potential or likelihood of abuse of its young male scouts, including Plaintiff, ▮ by Alton or others, before Plaintiff, ▮ was sexually abused by Alton

43.     Upon information and belief, Alton demonstrated unusual conduct and behavior with regard to young male scouts while serving as an agent, servant, scout master, representative, volunteer, scout leader and/or employee of Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations).

44.     Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), knew or should have known of the abuse of its young male scouts, including Plaintiff, ▮ by Alton or others.

45.     Upon information and belief, while Alton served as an agent, servant, scout master, representative, volunteer, scout leader and/or employee of Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), did not take any actions regarding Alton's behavior or otherwise protect the young male scouts, including Plaintiff, ▮ from Alton.

46.     Alton was charged in 1979 by the Essex County Prosecutor with three counts of Private Lewdness and three counts of Impairing Morals of a Minor for incidents involving three twelve (12) year old male children.

STARK & STARK
ATTORNEYS AT LAW

8

## COUNT ONE

47.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth previously with the same force and effect as if more fully set forth herein at length.

48.     Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), had a duty to use due care to ensure the safety, health, and well-being of their scouts, including Plaintiff, ███ and to refrain from acting negligently, and/or in wanton and willful disregard of the rights of Plaintiff, ███ in the teaching, supervision, and/or caring for the children in their care and also to refrain from sexual and other abuse occurring to the children in their care and to refrain from allowing others to sexually or otherwise abuse the children in their care.

49.     Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), had a further duty to protect the children entrusted to their care from foreseeable dangers, and/or harm whether those dangers arose from the careless, negligent, reckless, and/or intentional acts of Alton or the careless, negligent, reckless, and/or intentional acts of others.

50.     Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), had a further duty to operate their scout troops in a reasonably safe and careful manner, without negligence, carelessness, and/or recklessness.

51.     Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), breached their duty to Plaintiff, ███ by negligently, and/or in wanton and willful disregard of the rights of Plaintiff, ███ sexually abusing the Plaintiff, ███ by allowing and/or permitting Plaintiff, ███ to be

STARK & STARK
ATTORNEYS AT LAW

9

sexually abused; by failing to act to prevent sexually abuse and protect Plaintiff, ▮ from sexual abuse; by concealing and/or otherwise failing to disclose the sexual abuse committed by Alton; and/or by otherwise failing to take reasonable precautions for the safety, health, and well-being of Plaintiff, ▮

52. Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), knew or should have known that by negligently, and/or in wanton and willful disregard of the rights of Plaintiff, ▮ sexually abuse of the Plaintiff, ▮ by allowing and/or permitting Plaintiff, ▮ to be sexually abused; by failing to act to prevent sexual abuse and protect Plaintiff, ▮ from sexual abuse; and/or by concealing and/or otherwise failing to disclose the sexual abuse committed by Alton; and by otherwise failing to take reasonable precautions for the safety, health, and well-being of Plaintiff, ▮ that Plaintiff, ▮ would be caused injuries, harm, suffering, and other losses.

53. Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), further breached their duty to Plaintiff, ▮ by negligently, and/or in wanton and willful disregard of the rights of Plaintiff, ▮ failing to protect Plaintiff, ▮ from foreseeable dangers and harm and by negligently, and/or in wanton and willful disregard of the rights of Plaintiff, ▮ operating their scout troops by failing to properly instruct and/or supervise and/or care for their students and/or failing to warn their students and protect their students from foreseeable dangers.

54. As a proximate cause and reasonably foreseeable result of the aforesaid conduct; actions; failure to act; sexual abuse; sexual assault; assault and/or battery; and/or other active and passive actions by Defendants, BSA, ECC, NNJC, TROOP #64, XYZ

STARK & STARK
ATTORNEYS AT LAW

10

4839-8948-9072, v. 1

ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations); various actions and failures to act by Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), to warn and/or protect and/or care for and/or supervise its scouts and scout leaders; and/or various actions and failures to act of Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), by concealing and/or otherwise failing to disclose the sexual abuse committed by Alton; and/or various other actions and failures to act by Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), by otherwise failing to take reasonable precautions for the safety, health, and well-being of Plaintiff, ▮▮▮ Plaintiff, ▮▮▮ sustained severe and permanent physical and psychological injuries, emotional distress, emotional trauma, diminished childhood, disability, loss of life's enjoyments, has suffered and will continue to suffer great pain and torment and suffering, has been and will be caused to spend great and diverse sums of money for medical aid and treatment, and has been and will be prevented from attending to his usual occupation, activities, and business, and has been caused and will be caused other extensive harms and losses.

WHEREFORE, Plaintiff, ▮▮▮ demands judgment against Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), jointly and severally for compensatory damages, punitive damages, interest, costs of suit and attorney's fees.

STARK & STARK
ATTORNEYS AT LAW

11

## COUNT TWO

55.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in previously and in Count One with the same force and effect as if more fully set forth herein at length.

56.     Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), breached their duty to Plaintiff, ▉ by acting in a grossly negligent manner through failing to exhibit slight care or diligence and in an extreme departure from what was reasonably required under the circumstances and by acting with indifference to Plaintiff, ▉ and others, by failing to exercise even scant care or by exhibiting thoughtless disregard of the consequences that may follow from their acts or omissions, and/or by recklessly acting or failing to act, and/or with malice and/or wanton and willful disregard of the rights of Plaintiff, ▉ by sexually abusing the Plaintiff, R.L.; by allowing and/or permitting Plaintiff, ▉ to be sexually abuse; by failing to act to prevent sexual abuse and protect Plaintiff, ▉ from sexual abuse; by concealing and/or otherwise failing to disclose the sexual abuse committed by Alton; and/or and by otherwise failing to take reasonable precautions for the safety, health, and well-being of Plaintiff, ▉

57.     Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), knew or should have known that by acting in a grossly negligent manner through failing to exhibit slight care or diligence and in an extreme departure from what was reasonably required under the circumstances and by acting with indifference to Plaintiff, ▉ and others, by failing to exercise even scant care or by exhibiting thoughtless disregard of the consequences that may follow from their acts or omissions, and/or by recklessly acting or failing to act, and/or with

malice and/or wanton and willful disregard of the rights of Plaintiff, ▮ by sexually abusing

the Plaintiff, ▮; by allowing and/or permitting Plaintiff, ▮ to be sexually abused; by failing

to act to prevent sexual abuse and protect Plaintiff, ▮ from sexual abuse; by concealing and/or

otherwise failing to disclose the sexual abuse committed by Alton; and/or by otherwise

failing to take reasonable precautions for the safety, health, and well-being of Plaintiff, ▮

that Plaintiff, ▮, would be caused injuries, harm, suffering, and other losses.

58.    Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious

designations), and/or JOHN DOES 1-200 (fictitious designations), further breached their duty

to Plaintiff, ▮ by acting in a grossly negligent manner through failing to exhibit slight

care or diligence and in an extreme departure from what was reasonably required under the

circumstances and by acting with indifference to Plaintiff, ▮ and others, by failing to

exercise even scant care or by exhibiting thoughtless disregard of the consequences that may

follow from their acts or omissions, and/or by recklessly acting or failing to act, and/or with

malice and/or wanton and willful disregard of the rights of Plaintiff, ▮ in failing to protect

Plaintiff, ▮ from foreseeable dangers and harm, in operating their scout troops, in failing

to instruct and/or supervise and/or care for their scouts and scout leaders and/or failing to warn

them and protect them from foreseeable dangers.

59.    As a proximate cause and reasonably foreseeable result of the aforesaid

conduct; actions; failure to act; sexual abuse; sexual assault; assault and/or battery; and/or

other active and passive actions by Defendants, BSA, ECC, NNJC, TROOP #64, XYZ

ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious

designations); various actions and failures to act by Defendants, BSA, ECC, NNJC,

TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200

STARK & STARK
ATTORNEYS AT LAW

13

(fictitious designations), to warn and/or protect and/or care for and/or supervise its scouts and scout leaders; and/or various actions and failures to act of Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), by concealing and/or otherwise failing to disclose the sexual, physical, and/or emotional abuse committed by Alton; and various other actions and failures to act by Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), by otherwise failing to take reasonable precautions for the safety, health, and well-being of Plaintiff, ███ Plaintiff, ███ sustained severe and permanent physical and psychological injuries, emotional distress, emotional trauma, diminished childhood, disability, loss of life's enjoyments, has suffered and will continue to suffer great pain and torment and suffering, has been and will be caused to spend great and diverse sums of money for medical aid and treatment, and has been and will be prevented from attending to his usual occupation, activities, and business, and has been caused and will be caused other extensive harms and losses.

WHEREFORE, Plaintiff, ███ demands judgment against Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), jointly and severally for compensatory damages, punitive damages, interest, costs of suit and attorney's fees.

## COUNT THREE

60.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth previously and in Count One and Count Two with the same force and effect as if more fully set forth herein at length.

STARK & STARK
ATTORNEYS AT LAW

14

4839-8948-9072, v. 1

61. The conduct set forth in the within Complaint was extreme and/or outrageous and/or intentionally intended to produce emotional distress and/or recklessly in deliberate disregard of a high degree of probability that emotional distress would follow.

62. As a proximate cause and reasonably foreseeable result of the aforesaid sexual abuse and Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), knowingly permitting and/or acquiescing in the same conduct by others, Plaintiff, ███ sustained severe and permanent psychological injuries, emotional distress, emotional trauma, diminished childhood, disability, loss of life's enjoyments, has suffered and will continue to suffer great pain and torment and suffering, has been and will be caused to spend great and diverse sums of money for medical aid and treatment, and has been and will be prevented from attending to his usual occupation, activities and business, and has been caused and will be caused other extensive harms and losses.

WHEREFORE, Plaintiff, ███ demands judgment against Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), jointly and severally for compensatory damages, punitive damages, interest, costs of suit and attorney's fees.

## COUNT FOUR

63. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth previously and in Counts One, Two, and Three with the same force and effect as if more fully set forth herein at length.

64. At all relevant times herein Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious

STARK & STARK
ATTORNEYS AT LAW

15

designations), and their agents, and/or servants and/or employees, had a duty to hire, and/or retain agents, employees, servants, volunteers, scout leaders, scout masters, and/or administrators who were fit and competent to do their jobs as well as not dangerous and not otherwise a threat to the scouts Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), were obligated to educate, care, and protect..

65.    At all relevant times herein, Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and their agents, and/or servants and/or employees, had a further duty properly train and/or to supervise its agents, employees, servants, volunteers, scout leaders, scout masters, and/or administrators.

66.    At all relevant times herein, Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and their agents, and/or servants and/or employees, breached their duties to Plaintiff, ▆ and negligently, and/or in wanton and willful disregard of the rights of Plaintiff, ▆ hired, retained, and/or permitted to voluteer dangerous, unfit, and incompetent agents, employees, servants, volunteers, scout leaders, scout masters, and/or administrators including, but not limited to, Alton.

67.    At all relevant times herein, Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and their agents, and/or servants and/or employees, further breached their duties to Plaintiff ▆ and negligently, and/or in wanton and willful disregard of the rights of Plaintiff, ▆ failed to properly train and/or supervise their employees, servants,

STARK & STARK
ATTORNEYS AT LAW

16

volunteers, scout leaders, scout masters, and/or administrators including, but not limited to, Alton.

68.     Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and their agents, and/or servants and/or employees, knew or should have known of the dangerousness, incompetence, and/or unfitness of Alton, and knew or should have known that by hiring and/or retaining dangerous, unfit, and/or incompetent servants, volunteers, scout leaders, scout masters, and/or administrators and/or other employees and/or by failing to properly train and/or supervise them, that harm would befall the Plaintiff, ▮

69.     Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and their agents, and/or servants and/or employees, knew or should have known of the dangerousness, incompetence, and/or unfitness of Alton, yet concealed that fact from Plaintiff, ▮ Plaintiff, ▮ parents, and persons such as Plaintiff, ▮

70.     Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and their agents, and/or servants and/or employees, had a duty to warn Plaintiff, ▮ of the dangerousness, incompetence and/or unfitness and/or lack of training and/or supervision of Alton, but failed to do so.

71.     As a proximate cause and reasonably foreseeable result of the aforesaid negligent, and/or wanton and willful disregard of the rights of Plaintiff, ▮ Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), conduct in the hiring and/or retention and/or training and/or

STARK & STARK
ATTORNEYS AT LAW

17

supervision of their employees, servants, volunteers, scout leaders, scout masters and/or administrators and/or of their failure to warn of the same, and their fraudulent concealment of same, Plaintiff, ▮▮▮ sustained severe and permanent physical and psychological injuries, emotional distress, emotional trauma, diminished childhood, disability, loss of life's enjoyments, has suffered and will continue to suffer great pain and torment and suffering, has been and will be caused to spend great and diverse sums of money for medical aid and treatment, and has been and will be prevented from attending to his usual occupation, activities, and business, and has been caused and will be caused other extensive harms and losses.

WHEREFORE, Plaintiff, ▮▮▮ demands judgment against Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and their agents, and/or servants and/or employees, for compensatory damages, punitive damages, interest, costs of suit and attorney's fees.

## COUNT FIVE

72.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth previously and in Counts One, Two, Three, and Four with the same force and effect as if more fully set forth herein at length.

73.     At all relevant times herein, Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and their agents, and/or servants and/or employees, breached its duty to Plaintiff, ▮▮▮ in a grossly negligently manner through failing to exhibit slight care or diligence and in an extreme departure from what was reasonably required under the

STARK & STARK
ATTORNEYS AT LAW

18

4839-8948-9072, v. 1

circumstances and by acting with indifference to Plaintiff, ▮ and others by failing to exercise even scant care or by exhibiting thoughtless disregard of the consequences that may follow from their acts or omissions, and/or by other conduct demonstrating recklessness, and/or with malice and/or wanton and willful disregard of the rights of Plaintiff, ▮ hired and/or retained dangerous, unfit, and incompetent agents, employees, servants, volunteers, scout leaders, scout masters, and/or administrators including, but not limited to, Alton.

74.    At all relevant times herein, Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and their agents, and/or servants and/or employees, further breached their duties to Plaintiff, ▮ in a grossly negligently by through failing to exhibit slight care or diligence and in an extreme departure from what was reasonably required under the circumstances and by acting with indifference to Plaintiff, ▮ and others by failing to exercise even scant care or by exhibiting thoughtless disregard of the consequences that may follow from their acts or omissions, and/or by other conduct demonstrating recklessness, and/or with malice and/or wanton and willful disregard of the rights of Plaintiff, ▮ failed to properly train and/or supervise their employees, servants, volunteers, scout leaders, scout masters, and/or administrators including, but not limited to Alton.

75.    Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and their agents, and/or servants and/or employees, knew or should have known of the dangerousness, incompetence, and/or unfitness of Alton and knew or should have known that by hiring and/or retaining dangerous, unfit, and/or incompetent employees, servants, volunteers, scout leaders, scout

STARK & STARK
ATTORNEYS AT LAW

19

4839-8948-9072, v. 1

masters, and/or administrators and/or by failing to properly train and/or supervise them, that harm would befall the Plaintiff, █████.

76.     Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and their agents, and/or servants and/or employees, knew or should have known of the dangerousness, incompetence, and/or unfitness of Alton, yet concealed that fact from Plaintiff, ████ and persons such as Plaintiff, █████.

77.     Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and their agents, and/or servants and/or employees, had a duty to warn Plaintiff, ████ of the dangerousness, incompetence, and/or unfitness and/or lack of training and/or supervision of Alton, but failed to do so.

78.     As a proximate cause and reasonably foreseeable result of the aforesaid grossly negligent and/or reckless conduct, with malice and/or wanton and willful disregard of the rights of Plaintiff, ████ Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), conduct in the hiring and/or retention and/or training and/or supervision of their employees, servants, volunteers, scout leaders, scout masters, and/or administrators including Alton, and/or of their failure to warn of the same, and their fraudulent concealment of same, Plaintiff, ████ sustained severe and permanent physical and psychological injuries, emotional distress, emotional trauma, diminished childhood, disability, loss of life's enjoyments, has suffered and will continue to suffer great pain and torment and suffering, has been and will be caused to spend great and diverse sums of money for medical aid and treatment,

STARK & STARK
ATTORNEYS AT LAW

20

and has been and will be prevented from attending to his usual occupation, activities, and business, and has been caused and will be caused other extensive harms and losses.

WHEREFORE, Plaintiff, ▮▮▮ demands judgment against Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and their agents, and/or servants and/or employees, for compensatory damages, punitive damages, interest, costs of suit and attorney's fees.

## COUNT SIX

79. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth previously and in Counts One, Two, Three, Four, and Five with the same force and effect as if more fully set forth herein at length.

80. At all relevant times herein, Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and their agents, and/or servants and/or employees, breached its duty to Plaintiff, ▮▮▮ and intentionally, and/or with malice and/or in wanton and willful disregard of the rights of Plaintiff, ▮▮▮ hired and/or retained dangerous, unfit and incompetent agents, employees, servants, volunteers, scout leaders, scout masters, and/or administrators including, but not limited to, Defendant, ALTON.

81. At all relevant times herein, Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and their agents, and/or servants and/or employees, further breached their duties to Plaintiff ▮▮▮ and intentionally, and/or with malice and/or in wanton and willful disregard of the rights of Plaintiff, ▮▮▮ failed to properly train and/or supervise their employees, servants, volunteers, scout leaders, scout masters, and/or administrators including, but not limited to, Alton.

STARK & STARK
ATTORNEYS AT LAW

21

82.     Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and their agents, and/or servants and/or employees, knew or should have known of the dangerousness, incompetence, and/or unfitness of Alton, and knew or should have known that by hiring and/or retaining dangerous, unfit, and/or incompetent employees, servants, volunteers, scout leaders, scout masters, and/or administrators and/or by failing to properly train and/or supervise them, that harm would befall the Plaintiff, ██

83.     Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and their agents, and/or servants and/or employees, knew or should have known of the dangerousness, incompetence, and/or unfitness of Alton, yet concealed that fact from Plaintiff, ██ and persons such as Plaintiff, ██

84.     Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and their agents, and/or servants and/or employees, had a duty to warn Plaintiff, ██ of the dangerousness, incompetence, and/or unfitness and/or lack of training and/or supervision of Alton, but failed to do so.

85.     As a proximate cause and reasonably foreseeable result of the aforesaid intentional, and/or malicious and /or wanton and willful disregard of the rights of Plaintiff, ██ Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), conduct in the hiring and/or retention and/or training and/or supervision of their administrators and/or employees and/or of their failure to warn of the same, and their fraudulent concealment of same, Plaintiff, ██ sustained severe

STARK & STARK
ATTORNEYS AT LAW

22

and permanent physical and psychological injuries, emotional distress, emotional trauma, diminished childhood, disability, loss of life's enjoyments, has suffered and will continue to suffer great pain and torment and suffering, has been and will be caused to spend great and diverse sums of money for medical aid and treatment, and has been and will be prevented from attending to his usual occupation, activities, and business, and has been caused and will be caused other extensive harms and losses.

WHEREFORE, Plaintiff, ▮▮▮ demands judgment against Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and their agents, and/or servants and/or employees, for compensatory damages, punitive damages, interest, costs of suit and attorney's fees.

## COUNT SEVEN

86.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth previously and in Counts One, Two, Three, Four, Five, and Six with the same force and effect as if more fully set forth herein at length.

87.     At all relevant times, Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and their administrators, volunteers, scout leaders, and members of various Troops, including Alton, stood *in loco parentis* within the household as to Plaintiff, ▮▮▮

88.     The conduct set forth in the within Complaint constitutes violations of New Jersey's Child Sexual Abuse Act, N.J.S.A. 2A:61B-l, some or all in malicious and/or wanton and willful disregard of the rights of Plaintiff, ▮▮▮ by Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations).

STARK & STARK
ATTORNEYS AT LAW

23

89. As a proximate cause and reasonably foreseeable result of the aforesaid conduct and violations, Plaintiff, ███ sustained severe and permanent physical and psychological injuries, emotional distress, emotional trauma, diminished childhood, disability, loss of life's enjoyments, has suffered and will continue to suffer great pain and torment and suffering, has been and will be caused to spend great and diverse sums of money for medical aid and treatment, and has been and will be prevented from attending to his usual occupation, activities, and business, and has been caused and will be caused other extensive harms and losses.

WHEREFORE, Plaintiff, ███ demands judgment against Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), jointly and severally, for all damages available pursuant to N.J.S.A. 2A:61B-1 including actual damages, compensatory damages, punitive damages, interest, costs of suit and attorney's fees.

## COUNT EIGHT

90. Plaintiff, ███, is the wife of Plaintiff, ███

91. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Counts One, Two, Three, Four, Five, Six, and Seven with the same force and effect as if more fully set forth herein at length.

92. As a proximate cause and reasonably foreseeable result of the aforesaid conduct and violations by Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), and/or their conduct with malice and/or wanton and willful disregard, Plaintiff, ███ has been caused and

will be caused to lose the services of dear husband and has been caused and will be caused to suffer loss of consortium.

WHEREFORE, Plaintiff, ███ demands Judgment for damages generally against the Defendants, BSA, ECC, NNJC, TROOP #64, XYZ ENTITIES 1-100 (fictitious designations), and/or JOHN DOES 1-200 (fictitious designations), individually, jointly, severally, or in the alternative, together with interest and costs of suit.

STARK & STARK
A Professional Corporation
Attorneys for Plaintiffs

By: _____
MICHAEL G. DONAHUE

Dated: January 3, 2020

## JURY DEMAND

Plaintiffs, ███ hereby demand a trial by jury as to all issues.

## CERTIFICATION OF OTHER ACTIONS/PARTIES

Pursuant to the provisions of Rule 4:5-1, the undersigned attorney certifies that this matter is not the subject of any other action pending in any court or arbitration proceeding, nor is any other action or arbitration proceeding contemplated, and all known necessary parties have been joined in this action.

## CERTIFICATION OF COMPLIANCE WITH RULE 1:38-7(c)(1)

Pursuant to Rule 1:38-7(b), all confidential identifiers of the parties to this action have or will be redacted from all documents or pleadings submitted to the court.

STARK & STARK
ATTORNEYS AT LAW

25

4839-8948-9072, v. 1

## DESIGNATION OF TRIAL COUNSEL

Pursuant to the provisions of Rule 4:25-4 the Court is advised that MICHAEL G.

DONAHUE, III, ESQ. is hereby designated as trial counsel.

STARK & STARK
A Professional Corporation
Attorneys for Plaintiffs

By:_____
    MICHAEL G. DONAHUE

Dated:  January 3, 2020

STARK & STARK
ATTORNEYS AT LAW

26

STARK & STARK, A Professional Corporation
Mailing Address: PO Box 5315, Princeton, NJ 08543
Office Location: 993 Lenox Drive, Lawrenceville, NJ 08648
(609) 896-9060
**Michael G. Donahue, III, Esq., Attorney ID#: 04577-1994**
**Attorneys for Plaintiffs,** ▮▮▮▮▮▮

|  |  |
|---|---|
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>Plaintiffs,<br><br>vs.<br><br>BOY SCOUTS OF AMERICA; ESSEX<br>COUNTY COUNCIL OF THE BOYS<br>SCOUTS OF AMERICA; NORTHERN<br>NEW JERSEY COUNCIL OF THE BOY<br>SCOUTS OF AMERICA; BOY SCOUT<br>TROOP #64; XYZ ENTITIES 1-100<br>(fictitious designations); and JOHN DOES<br>1-200 (fictitious designations),<br><br>Defendant(s). | SUPERIOR COURT OF NEW JERSEY<br>ESSEX COUNTY LAW DIVISION<br><br>Docket No.<br><br>**CIVIL ACTION**<br><br>**DEMAND FOR DISCOVERY OF<br>INSURANCE COVERAGE** |

TO:    BOY SCOUTS OF AMERICA
        ESSEX COUNTY COUNCIL OF THE BOYS SCOUTS OF AMERICA
        NORTHERN NEW JERSEY COUNCIL OF THE BOY SCOUTS OF AMERICA
        BOY SCOUT TROOP #64

Pursuant to R. 4:10-2(b) demand is hereby made that you disclose to the undersigned whether

there are any insurance agreements or policies under which any person or firm carrying on an

insurance business may be liable to satisfy part or all of a judgment which may be entered in this

action or to indemnify or reimburse for payments made to satisfy the judgment.

YES ( )        NO ( )

If the answer is "yes" attach a copy of each or in the alternative state, under oath or certification

(a) number (b) name and address of insurer or issuer (c) inception of expiration dates (d) names

and addresses of all persons insured thereunder (e) personal injury limits (f) property damage

1

4839-8948-9072, v. 1

limits (g) medical payment limits (h) name and address of person who has custody and

possession thereof (i) where and when each policy or agreement can be inspected and copied.

Dated: __1/3__, 2020

2

# EXHIBIT E

⚜ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
CLARKE COUNTY, GEORGIA

**SU19CV0378**
LISA LOTT
JUN 10, 2019 12:30 PM

Beverly Logan, Clerk
Athens - Clarke County, Georgia

## IN THE SUPERIOR COURT OF ATHENS-CLARKE COUNTY
## STATE OF GEORGIA

ROBERT DOE, individually and on )
behalf of the General Public of the )
State of Georgia, )
           )
        *Plaintiff,* )
           )     Civil Action File No. _____
v. )
           )    **JURY TRIAL DEMANDED**
BOY SCOUTS OF AMERICA, INC.; )
NORTHEAST GEORGIA COUNCIL, )
INC., GREEN ACRES BAPTIST CHURCH; )
BEECH HAVEN BAPTIST CHURCH; )
FIRST BAPTIST CHURCH OF ATHENS; )
BETTY BOLAND, AS THE )
ADMINISTRATOR OF THE ESTATE )
OF ERNEST BOLAND, and R. )
FLEMING WEAVER, JR. )
           )
        *Defendants.* )

## PLAINTIFF'S VERIFIED COMPLAINT

Plaintiff ROBERT DOE, by and through his counsel of record, hereby brings this

Verified Complaint for negligence, public nuisance, injunctive relief, injuries, and damages

sustained as a result of childhood sexual abuse, and injuries sustained as a result of racketeering

activity against Defendants Boy Scouts of America, Inc., Northeast Georgia Council, Inc., Green

Acres Baptist Church, Beech Haven Baptist Church, First Baptist Church of Athens, the Estate

of Ernest Boland and Fleming Weaver.

## INTRODUCTION

*"Our strongest obligation is to keep Georgia citizens safe, especially our children. This certainly
includes doing everything in our power to keep sexual predators away from our children."*

    - Governor Sonny Purdue's Message Signing H.B. 1059.

1

This case involves the pervasive and systematic cover-up by the Defendants to conceal the identities of Boy Scout leaders accused of sexually abusing Boy Scouts. It has been the public policy in the state of Georgia to affirmatively act to do something about child molestation and make information publicly available since at least the 1950s. However, instead of making information publicly available or reporting it to the appropriate authorities, Defendants kept silent while actively soliciting new Scouts when they knew without doubt that many Scout Leaders had been credibly accused of pedophilic/ephcbophilic tendencies.

By doing this, Defendants knowingly put the youth communities of Athens-Clarke County, the state of Georgia and others across the United States, at risk of sexual molestation. As a direct result of this active cover-up to keep the names of sexual predators secret, Plaintiff and countless other victims were molested by Scout Leader Ernest Boland. Additionally, Plaintiff was also molested by Boland's mentee, Fleming Weaver, who also served as a Scoutmaster. To make matters worse, many of these events occurred in public parks, public schools, and other spaces available to the public, including, for example, Rainey Mountain. At the time of filing this Complaint, Defendants continue to actively engage in a conspiracy to cover up the long-known history of abuse within the BSA in an effort to preserve reputations while profiting by increasing membership.

## PARTIES

1.

Plaintiff ROBERT DOE ("Robert Doe") is currently an adult male citizen and resident of Pahrump, Nevada, and was, at all times relevant to this Complaint during his involvement with

the Boy Scouts, a minor residing in the state of Georgia. Robert Doe submits himself to the

jurisdiction of this Court by filing this Complaint. The identity of Robert Doe is not pleaded in

this Complaint to protect Robert Doe's identified because he was a victim of sex crimes as a

minor. Robert Doe's identity will be disclosed to the Parties and the Court upon the entry of a

Protective Order.

2.

Boy Scouts of America, Inc. ("BSA" or the "Boy Scouts") is a congressionally chartered

organization with its principal place of business located in Irving, Texas.  BSA routinely

transacts business and maintains a registered agent in Georgia.  BSA may be served with the

Summons and a copy of this Complaint through its registered agent for service of process

Michele Eldridge, 1800 Circle 75 Pkwy SE, Atlanta, Cobb County, Georgia 30339. At all times

relevant to this complaint, BSA conducted business in Athens-Clarke County, and many of the

events giving rise to this Complaint occurred in Athens-Clarke County. BSA is responsible for

the actions of its volunteers, employees, agents and representatives acting on its behalf through

respondeat superior and/or agency.

3.

Northeast Georgia Council, Inc. ("NGC"), was and is a Georgia corporation with its

principal place of business in Jackson County, Georgia.  NGC may be served with the Summons

and a copy of this Complaint through its registered agent for service of process, Trip Selman,

148 Boy Scout Trail, Pendergrass, Georgia 30657. NGC is responsible for the actions of its

volunteers, employees, agents and representatives acting on its behalf through respondeat

superior and/or agency.

3

4.

Green Acres Baptist Church ("Green Acres") is a non-profit organization with its principal place of business in Athens, Georgia located at 2085 Barnett Shoals Road, Athens, Georgia 30605. Green Acres Baptist Church is registered to conduct business in Georgia. Defendant may be served through its registered agent Ray Argo at 1020 Longbranch Run, Watkinsville, GA 30677. Green Acres is responsible for the actions of its volunteers, employees, agents and representatives acting on its behalf through respondeat superior and/or agency.

5.

Beech Haven Baptist Church ("Beech Haven") is a non-profit organization with its principal place of business located at 2390 West Broad Street, Athens, Georgia 30606. Beech Haven Baptist Church is registered to conduct business in Georgia. Defendant may be served through its registered agent Thomas H. Rogers, Jr. at 440 College Ave. N., Athens, Georgia 30601. Beech Haven is responsible for the actions of its volunteers, employees, agents and representatives acting on its behalf through respondeat superior and/or agency.

6.

The First Baptist Church of Athens ("First Baptist") is a non-profit organization with its principal place of business located at 335 Pulaski Street, Athens, Georgia 30601. First Baptist is registered to conduct business in Georgia. Defendant may be served through its registered agent Dallas Cannady at 335 Pulaski Street, Athens, GA 30601. First Baptist is responsible for the actions of its volunteers, employees, agents and representatives acting on its behalf through respondeat superior and/or agency.

7.

Betty Boland, as the Administrator of The Estate of Ernest Boland ("the Estate") is an

Estate that has been probated in Athens-Clarke County and is a party to this action based on the

tortious acts performed by Ernest Boland in Athens-Clarke County and elsewhere.  The Estate

may be served through Betty Boland, who is the Executrix of the Estate and the widow of Ernest

Boland.  Betty Boland resides at 4325 Barnett Shoals Road, Athens, Georgia, 30605 and may be

served at the same.

8.

R. Fleming Weaver, Jr. ("Weaver") is a resident of Hall County. R. Fleming Weaver, Jr.

may be served at 3801 Village View Drive, Apt. 1432, Gainesville, GA.

## **JURISDICTION AND VENUE**

9.

Jurisdiction is proper because all Defendants are residents of Georgia or are subject to the

exercise of long-arm jurisdiction pursuant to O.C.G.A.  § 9-10-91.  Defendants have transacted

substantial business in Georgia, created and continue to maintain a public nuisance in Georgia,

and committed tortious acts and omissions in Georgia, including the tortious acts and omissions

giving rise to this Complaint.

10.

Venue is proper in this Court as one or more of the Defendants reside and maintain a

registered agent for service of process in Athens-Clarke County, Georgia and this suit is brought

against Defendants as joint tortfeasors.  Ga. Const. Art. I, § 2, ¶¶ III, IV & VI; O.C.G.A.  §§ 9-

10-31, 9-10-93, 14-2-510.

5

## STATUTES OF LIMITATIONS

### Public Nuisance

11.

Pursuant to Georgia law, "[t]he rule that the statute of limitations does not run in favor of a nuisance, only applies to public nuisances, and grows out of the impropriety of imputing laches to the public." *See Davis v. City of Forsyth*, 621 S.E.2d 495, 499 (Ga. Ct. App. 2005) (citing *Anneberg v. Kurtz*, 28 S.E.2d 769, 773 (Ga. 1944)); *see also Watkins v. Pepperton Cotton Mills*, 134 S.E. 69, 71 (Ga. 1926). Therefore, Plaintiff's public nuisance claims are timely brought before the court.

### Assault, Battery and Intentional Infliction of Emotional Distress

12.

Plaintiff's claims for childhood sexual abuse in the form of assault, battery and intentional infliction of emotional distress are timely brought before the court. Additionally, Plaintiff brings these claims based upon Plaintiff's discovery of Defendants' failure to report this abuse. These claims are timely brought before the court.

### RICO

13.

Pursuant to O.C.G.A. § 16-14-8, a plaintiff shall have five years to commence a civil lawsuit based upon the corrupt dealings of an organization.  Therefore, Plaintiff's claims are timely brought before the court.

**Other Claims**

14.

Plaintiff's remaining claims for Fraudulent Misrepresentation, Fraudulent Concealment, Failure to Provide Adequate Security, Failure to Train, Supervise & Monitor, Failure to Warn, Negligent Retention, Respondeat Superior, Breach of Fiduciary Duty are tolled due to Defendants' fraud involving moral turpitude which debars or deters plaintiffs from bringing a cause of action, and the statute will not begin to run until the plaintiff discovers the fraud. O.C.G.A. §§ 9-3-96; 9-3-98. Plaintiff's Fraudulent Misrepresentation and Fraudulent Concealment Claims are also new claims based upon the harm Plaintiff suffered when he learned of Defendants' concealment and prior knowledge of Boland's prior abuse of Boy Scouts.

**OPERATIVE FACTS**
**BSA and Its Operating Structure**

15.

Formed on February 8, 1910, BSA is one of the largest youth service organizations in the United States. BSA enrolls approximately 2.5 million children between the ages of 7 and 21 and more than 950,000 volunteers. BSA holds itself out as "one of the nation's largest and most prominent values-based youth development organizations, providing programs for young people that build character, trains them in the responsibilities of participating citizenship and develops personal fitness."

16.

BSA's self-proclaimed mission is to "prepare young people to make ethical and moral choices over their lifetimes by instilling in them the values of the Scout Oath and Scout Law."

7

17.

The Scout Oath states:

> On my honor I will do my best to do my duty to God and my country
> and to obey the Scout Law; to help other people at all times; to keep
> myself physically strong, mentally awake, and morally straight.

18.

The Scout Law states:

> A Scout is trustworthy, loyal, helpful, friendly, courteous, kind,
> obedient, cheerful, thrifty, brave, clean and reverent.

19.

One of BSA's primary activities includes camping.  BSA uses campsites throughout

Georgia including sites owned by BSA, charter organizations, and public land such as public

camping sites.

20.

In addition to using public property, BSA also employs a national multi-pronged

marketing strategy to actively recruit new members. This campaign not only targets the public at

large, but also specifically targets civic, faith-based and educational organizations as well. BSA

continuously solicits the public for new members and has its own blog titled "Scouting Wire"

which includes an entire section devoted exclusively to "Marketing & Membership."

21.

Since its inception, BSA aggressively marketed the wholesomeness and safety of its

programs to the American public and held itself out as a values-based youth development

organization that sought to build character, train children in the responsibilities of participating

8

citizenship and develop personal fitness. Implicit and explicit in these representations is the

guarantee that its chartered affiliates make best efforts to guarantee the safety of participating

children.

22.

Membership requires the payments of dues as well as the purchase of various uniforms,

badges and other equipment sold by BSA and BSA's income exceeds $780 million dollars a

year.

23.

By enrolling in BSA, parents and children committed to follow a system that encourages

parents to entrust BSA with their children's health and safety. BSA represents to the public, and

in particular parents, that BSA will help mold and foster their children into future leaders. BSA's

website assures parents that their children will be safe and looked after stating that "[s]couting is

like an extension of your family: it follows your values, it sees to the overall care and well-being

of your child, and it's always there for you."

24.

BSA uses a "pack and den" model for its troops. The leader of the pack/den is the

Scoutmaster. The Scoutmaster is in a unique position of trust and influence with his BSA troop.

According to a Troop Committee Guidebook, the Scoutmaster is described as the "adult leader

responsible for the image and program of the troop." The Scoutmaster's primary job duty is to

train and guide the scouts within his troop. This is a position of extreme trust and confidence.

25.

BSA's programs require children to engage in activities that exposed them to adult

volunteers who supervise children. Specifically, the Scouting programs and activities included over-night outings, like camping trips, in which children were routinely away from parents and supervised by agents of BSA. At the time, BSA did not require any interviews, checking of references or background examination before becoming a Scout Leader.

26.

BSA operates as a vertically-integrated top-down organization which controls the actions of the entities below it, those being: the local councils like NGC, charter organizations like Green Acres, Beech Haven and First Baptist Church of Athens and troops like the ones Plaintiffs were members of in Athens, Georgia.  BSA national establishes mandatory goals, standards, and rules for councils, charter organizations and troops to follow.  BSA national relies upon local councils, charter organizations and troops to implement these goals, standards, and rules.

27.

BSA chartered NGC in 1935. NGC provides Scouting programs in twenty-six counties in the northeast corner of Georgia, including Athens-Clarke County.

28.

Defendants BSA, NGC, Green Acres, Beech Haven and First Baptist jointly agreed to control and operate the scout troops where Plaintiff was a member in Athens, Georgia.

29.

Charter organizations, like churches and schools, receive charters from the BSA to sponsor scout troops.  Defendants BSA, NGC, Green Acres, Beech Haven and First Baptist jointly selected, approved, and/or retained adult volunteers to lead scout troops in positions such as Assistant Scoutmasters or Scoutmasters ("Scout Leaders").  Final approval for all adult troop

10

volunteers like Scoutmasters lies solely with Defendant BSA.  In the course of operating scout troops BSA has the ultimate authority to control the details of Scout Leaders' performance of their duties on behalf of Defendants.

## BSA's Knowledge of Child Molestation and Refusal to Take Action

30.

Beginning in or around 1920, Defendant BSA began tracking incidences of child molestation committed by adult volunteers within the organization. Specifically, BSA became aware that child predators had infiltrated the organization and were using their role as adult volunteers and leaders in the organization to gain access to children who they sexually abused. BSA created a file system then known as the "Red Flag" files—now the "Ineligible Volunteer Files"("IV Files")—to track a variety of transgressions by adult volunteers, including child sexual abuse.  IV Files that reflect child sexual abuse allegations against adult volunteers are categorized as "Perversion Files."  These files were intended for internal use only, and BSA mandated that these files be kept confidential and out of the public eye.

31.

On information and belief, the Perversion Files constitute a majority or plurality of the total IV Files.  Between 1920 and 1935, at least 1,000 child molesters—between 50-60 per year—were discovered, documented within the IV Files, and subsequently excluded from participating in the Boy Scouts. From 1935 onward, BSA continued to identify thousands of adult volunteers who were alleged to have sexually abused Scouts. From 1960 to 1985, between 25 - 96 IV Perversion files were created every year of which at least 1,365 files exist today. The IV Files do not record the number of children victimized by each volunteer.

11

32.

Many of the adult volunteers identified in the IV Perversion Files, including Boland and Weaver, were never removed from their positions by BSA. Rather, prior to 1955, BSA implemented an internal "probation program." Despite having this information, BSA failed to inform Scouts or their parents if an adult volunteer was placed on "probation" for alleged abuse or if they had been added to the IV Files. BSA continued its probation program for decades, allowing volunteers to remain in their positions despite the fact that these persons were known to be child predators.

33.

The current number of existing Perversion Files significantly underrepresents the total number of Scouts who have been molested through the course of their participation in the BSA. This is because the Files, while tracking individual molesters, fail to record the total number of victims attributed to each Scout Leader. This, combined with the known underreporting of instances of child molestation means that the total number of Scouts who have been affected by sexual abuse far outpaces even the BSA's internal estimates.

34.

The IV Files prove that BSA had knowledge of child molesters within its ranks. Rather than report these incidents to the authorities or parents of scouts, BSA protected the IV Files from publication and engaged in a national cover-up of the information contained within the Files.

35.

In the early 1970s, BSA destroyed thousands of IV Files. It is estimated that

approximately 6,000 files survived. Of the remaining files, only 1,900 are in the public domain. Because of BSA's actions, the total number of sexual abuse reports is also unknown.

36.

Rather than report these incidents to law enforcement or parents, BSA hid the IV Files from the public and concealed the information contained in the Files.

37.

In 1971 Defendant BSA circulated memoranda among its regional councils, one of which was Defendant NGC, detailing its policy of confidentiality regarding the IV Files. These internal practices made it impossible for the general public to be informed of accusations against current and former Scoutmasters and to take preventative measures to protect children in the future.

38.

Upon information and belief, in addition to destroying portions of the IV Files, BSA continues to prevent the publication of the IV and Perversion Files in litigation nationwide, perpetuating the threat that pedophilic/ephebophilic Scout Leaders pose to both Scouts and the general public.

39.

The effect of both the file purge and BSA's continued litigation efforts has resulted in a national cover-up of BSA's knowledge of reported child molesters, the threat they pose to the public, and BSA's refusal to address that threat by making that information public.

40.

Before Plaintiff's abuse that is the subject of this case, Defendants knew to a moral certainty that at least some significant number of Scouts, including Scouts such as Plaintiff,

13

would be molested each and every year if the procedures of BSA and NGC in regard to

identifying and reporting child molesters remained the same.

41.

Although the Court can and may take judicial notice of the widespread public

dissemination of BSA sexual abuse cases and stories, the actual and true extent of these cases

will never be known due to the intentional and ongoing nature of the organized cover-up of these

cases from the public.

42.

During and after the sexual abuse at issue in this case, Defendants' tortious conduct

continued. Additional and continued actions have been taken by Defendants to affirmatively

misrepresent to the general public that children are safe from the cover-up mentality that lies at

the core of the tortious conduct addressed in this suit.

43.

These offenses were not committed as an occasional practice, but were and continue to be

a part of a systematic and ongoing pattern of subterfuge and intimidation. This pattern and

practice continues to this day with the BSA and the NGC refusing to make public the

information from IV Files gathered after 1991. This refusal to give information to the public

constitutes ongoing tortious conduct on the part of Defendants and is a public nuisance.

44.

No one from BSA, NGC or Green Acres, First Baptist or Beech Haven ever reported

these allegations to the authorities, the public or even scouts' parents.

14

45.

These actions by Defendants are also directly contrary to Georgia law. In 1950, the

Georgia Legislature enacted O.C.G.A. § 16-6-4, a criminal child molestation statute.  In a 2006

amendment, the General Assembly found that sexual offenders who prey on children present an

***extreme threat to the public safety,*** and "in order to protect the public, it is necessary that the

sexual offenders be registered and that members of the community and the ***public be notified of***

***a sexual offender's presence.*** *Id.* (emphasis added). CRIMES AND OFFENSES; CRIMINAL

PROCEDURE; LAW ENFORCEMENT OFFICERS AND AGENCIES; PENAL

INSTITUTIONS—SEXUAL OFFENDER REGISTRATION AND RESIDENCY, 2006 Georgia

Laws Act 571 (H.B. 1059).

46.

In 1965, the Georgia legislature enacted O.C.G.A § 19-7-5, the so-called "Mandatory

Reporter Law" underscoring the public policy that the public has a right to know.  By 1981, this

statute was revised to provide that any physician, psychologist, health care worker, hospital or

medical personnel, nursing personnel, social work personnel, school guidance counselor,

licensed osteopathic physician, intern, resident, dentist, podiatrist, public health nurse, social

worker, teacher, school administrator, child care personnel or law enforcement personnel having

cause to believe that a child under the age of eighteen has had physical injury or injuries inflicted

upon him other than by accidental means by a parent or caretaker, or has been neglected or

exploited by a parent or caretaker, or has been sexually assaulted or exploited, shall report or

cause reports to be made. *Mays v. State*, 295 Ga. 388 (2014).

47.

Additionally, in 2015, the Georgia legislature enacted the Childhood Sexual Abuse Statute known as the "Hidden Predator Act" which created a new statute of limitations to bring suit against sexual molesters. O.C.G.A. § 9-3-33.1. The Hidden Predator Act includes a provision for liability of an entity "if the person was a volunteer or employee of an entity that owed a duty of care to the plaintiff, or the person and the plaintiff were engaged in some activity over which such entity had control." O.C.G.A. § 9-3-33.1(c)(2).

### Troop Leader Ernest Boland and Fleming Weaver in Athens, Georgia

48.

At all times material to this Complaint, Defendants BSA and NGC operated and otherwise controlled various Boy Scout Troops including Athens, Georgia-based Troops 22, 2, and 3, chartered organizations, and Camp Rainey Mountain located in Clayton, Georgia.

49.

Ernest Boland was a registered Scoutmaster of BSA in Athens, Georgia during the years around 1950-1977 and led three different Troops during that time. Defendant BSA and its agent, Defendant NGC, had authority and controlled the activities of Boland and the scouts participating in his troops. At all times relevant to this Complaint, the Defendants accepted Boland as a Scout Leader for the Troops he led in Athens, Georgia. As a Scout Leader, Boland's role was to educate, mentor, befriend, and train young boys in morality, patriotism, various life skills, and the Scouting program.

50.

Fleming Weaver served as an Assistant Scoutmaster and was Boland's mentee. Weaver

16

became Scoutmaster of Troop 26 where he molested numerous other Scouts. Some of this abuse

was reported, including to Dr. Steven N. Brown, the Youth and Elderly Pastor of First Baptist

Church and Bobo Brown, who was a supervisor of the Boy Scouts and the NGC. After a secret

meeting, Weaver was removed as a Scoutmaster, but nothing regarding the allegations was ever

reported to the police or Scouts.  However, even after he left Troop 26, Weaver continued to

volunteer with BSA and NGC serving as a member of the Order of the Arrow, Scouting's

National Honor Society.

51.

At all times relevant to this Complaint, BSA authorized and empowered Boland and

Weaver to perform all duties of a Scout Leader including the authority and power to: provide

instruction, counseling, moral guidance, physical supervision of boys participating in Scout

programs and activities; enforce the rules governing the boys' participation; and undertake other

duties.  Defendant BSA knew that as a part of his duties as a Scout Leader, Boland and Weaver

would be in a position of trust, confidence, and authority over the boys involved, including

Plaintiff, and promoted the same to Scouts such as Plaintiff.   BSA retained the right to control

the means and methods used by Scout Leaders such as Boland and Weaver in fulfilling these

duties for BSA.

52.

Boland's first troop, Troop 22, was sponsored by a BSA charter organization, First

Baptist Church of Athens in Athens, Georgia. While leading Troop 22, Boland was accused of

sexually abusing minor Boy Scouts, including engaging in oral sex with Scouts, between 1951-

1963.  Boland ultimately left the Troop because of these accusations.  First Baptist never

17

reported these allegations to Plaintiff, law enforcement or the public.

53.

In Troop 22, Boland's Assistant Scout Leader was Fleming Weaver, who served as Boland's mentee. Victims of similar sexual abuse by Weaver have filed suit which is currently pending in Superior Court of Cobb County, Georgia.

54.

Boland's second troop, Troop 2, was sponsored by a BSA charter organization, Defendant Green Acres Baptist Church in Athens, Georgia. There, Boland was again accused of sexually abusing minor Boy Scouts. Boland also left the Green Acres Troop due to the sexual abuse accusations. Green Acres never reported these allegations to Plaintiff, law enforcement or the public.

55.

Boland's final troop, Troop 3, was sponsored by a BSA charter organization, Defendant Beech Haven Baptist Church. Troop 3 operated from 1975-1977. Boland was again accused of sexually abusing Scouts in this Troop, and again left the Troop due to these allegations. Beech Haven never reported these allegations to Plaintiff, law enforcement or the public.

56.

For each of these Troops, BSA, NGC and the respective churches jointly selected, controlled, supervised, approved and/or retained adult volunteers to lead Troops 22, 2 and 3 and Boland acted as an agent of all Defendants.

57.

Defendants, by and through information relayed to and by them, were aware of

18

accusations that Boland had sexually abused Scouts while leading the Troop sponsored by Green Acres, Beech Haven Baptist Church and First Baptist Church of Athens.  However, Defendants undertook no actions to protect minor Scouts from Boland's sexual predations or provide information to the appropriate authorities or the general public.

58.

Defendant Beech Haven Baptist Church was aware of accusations against Boland including the fact that he had a secret apartment for the purpose of carrying out acts of sexual abuse against various minors, including Scouts.  However, Beech Haven undertook no actions to protect minor Scouts from Boland's sexual predations or provide information to the general public.

59.

As early as 1955, Defendants were aware of accusations of sexual misconduct perpetrated by Boland against Scouts in his Troops.

60.

Despite having knowledge of accusations of abuse of Scouts, BSA continued to hold out Boland as a pillar of the BSA community and as someone whom parents and Scouts alike could trust. For example, amidst these allegations, Boland received the esteemed Silver Beaver Award which is given to Scouters who "have made an impact on the lives of youth through service given to the council."

61.

All Defendants failed to take action to report Boland to the proper authorities or to warn parents, their children and the general public of Boland's continued misconduct.

19

62.

Defendants fraudulently concealed their knowledge about Boland. For example, Boland's

IV file reveals that Boy Scouts Executive Ron Hegwood discussed Boland with Beech Haven's

pastor Rev. Dr. James Griffith in March 1977 including the fact that Boland had "male

companions" at his secret apartment and flew two scouts to Maryland where they stayed with

him overnight, but this information was never disclosed.

63.

The inaction of Defendants BSA and NGC regarding the accusations made against

Boland were emblematic of the larger, systemic institutional effort to deny, hide, and cover up

the problem of the sexual abuse of minor Scouts.

64.

Defendant NGC had notice prior to childhood sexual abuse of scouts and at least one

Scout leader in the Council aside from Ernest Boland had been accused of molesting scouts and

that Boland specifically had been accused of abusing scouts within the Athens, Georgia area.

**Special Harm to Robert Doe**

65.

Plaintiff Robert Doe first met Boland through a friend in his building, who introduced

him to Boland in or around 1974 when he was approximately 9 years old. Boland would take

groups of young boys, including Robert Doe and his friend, Mark Gilliland, camping on

overnight trips to northern Georgia, Tennessee and North Carolina.

66.

The next year, in or around 1975, Robert Doe joined Boy Scout Troop 3, which was led by Boland and sponsored by Defendant Beech Haven.

67.

Pursuant to carrying out BSA's goals, Boland befriended Robert Doe and gained the trust and confidence of Robert Doe and his family as an instructor, guide, mentor, counselor, and authority figure. While performing his duties as Scout leader and for the purpose of furthering his duties required in that role, Boland gained the permission, acquiescence, and support of Robert Doe's family to spend substantial periods of time alone with Robert Doe.

68.

As a direct result of Boland's actions, Robert Doe was conditioned to trust Boland, comply with his directions, and respect Boland as a person of authority within the BSA in, among other things, moral and ethical matters.

69.

Boland's sexual abuse of Plaintiff Robert Doe began during his first year as a Boy Scout in or around 1975. Specifically, Boland would come and pick up Plaintiff Robert Doe and take him to his home or take him to a building attached to Boland's Pest Control Service where he would sexually molest Robert Doe. Plaintiff Robert Doe was approximately 10-12 years old during this timeframe, and therefore unable to consent to Boland's sexual advances.

70.

Over the course of four years, Boland engaged in a pattern of sexual abuse with Robert Doe. What began as fondling escalated into masturbation. During these encounters, Boland told

21

Robert Doe over and over again that he wanted to have anal sex with him. Although Robert Doe does not recall ever having anal sex, he does recall having blood in his shorts after one sexual encounter, but cannot recall what Boland did to him.

71.

These instances of sexual abuse occurred approximately a dozen times over a three year period and involved into a pattern that Boland would pick him up and take him to McDonald's to get something to eat and then molest him. Robert Doe also recalls Boland bringing him to a motel in Athens near Macon Highway. The conduct became so brazen that Boland once came to Robert Doe's house and fondled him in front of one of Robert Doe's friends, robert became so uncomfortable that he left.

72.

In the summer of 1977, Plaintiff Robert Doe's father died and Robert Doe stopped scouting. In the fall of or winter of 1977, another scoutmaster, named Fleming Weaver came out to Robert Doe's house.

73.

Weaver feigned to console the family and told Robert Doe's mother that the Scouts were planning a trip to New Mexico, and that it would be good for Robert Doe to go on the trip. Weaver invited Robert Doe to spend the night as his apartment to learn more about the program. During the night, Robert Doe woke up to Weaver performing oral sex on him. The next morning, Weaver acted as if nothing ever happened and drove Robert Doe back to his house.

74.

The abuse Robert Doe suffered left him so psychologically damaged and stunned that he

was mentally incapable of speaking about the abuse or processing his experience for decades.

Likewise, as is the case with many child sexual abuse victims, he was so traumatized that he was

mentally incapable of investigating the abuse, or alternatively, the level of difficulty he

experienced in trying to do so was so profound that it exceeded what a reasonable victim of

abused would have been expected to attempt.

75.

As a result of the above-described conduct, as well as other incidents of child sexual

abuse by Boland and Weaver, Plaintiff Robert Doe has suffered for years, and continues to suffer

from, irreparable and ongoing harm, including extreme mental distress, humiliation, anguish, and

emotional and physical injuries, as well as economic losses, in amounts to be proven at trial.

76.

This recent discovery of the truth tore open old wounds, ripped apart old scars, and

traumatized Plaintiff all over again.  Further, new harm was done to these victims as the

realization of three horrible facts set in: 1) you were not the only one; 2) the responsible adults

knew about it and chose to hide it; and 3) the harm done to you that you have spent a lifetime

trying to overcome could have been avoided if the responsible adults had done something about

it.  It is hard for counsel representing these victims to even fathom how damaging this recent

discovery has been.  The old injuries are new again and even more harm has been heaped on

top.  Defendant's motion must be denied.

77.

In addition to this harm stemming directly from the sexual abuse, Robert Doe suffered

additional harm within the statutory period when he discovered that he was not Boland or

23

Weaver's only victim and that multiple scouts had been abused by Boland and Weaver over

multiple years. This damage was triggered by his learning that BSA, NGC, Green Acres, Beech

Haven and First Baptist knew what was going on with Boland and Weaver's troops and

deliberately chose to keep this information hidden from the public and appropriate authorities.

78.

Even more incredibly, Plaintiff discovered that these Defendants not only knew about

these allegations but actually investigated and, in many instances confirmed the allegations of

child abuse, and affirmatively chose not to act, thereby further damaging Plaintiff and the public.

**COUNT I: PUBLIC NUISANCE (COMMON LAW)**<br>*(Against All Defendants)*

79.

Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

80.

Defendants have conspired, continue to conspire, and actively engaged in efforts to: (1)

conceal from the general public the sexual assaults committed by their volunteers and agents,

including Ernest Boland and Fleming Weaver; (2) conceal from the general public the identities

of and pedophilic/ephebophilic tendencies of volunteers and other agents listed in the IV Files;

and (3) protect their agents from criminal prosecution for their sexual assaults against children.

81.

Despite the knowledge that to a moral certainty there have been and are to this day

predators operating within their organizations, BSA and NGC continue to hold themselves out as

organizations of integrity and safety to Scouts and their parents and actively solicit the general

24

public for new members.

82.

Notwithstanding the fact that Defendants have been aware of this danger for years, Defendants actively solicit the general public for new members, have used and continue to use public spaces for various scouting events including public parks, public schools, and other spaces available to the public, including but not limited to, Rainey Mountain. While some of these events are for Scouts only, many are open to the public, and are advertised in public forums and on the Internet. As a result, BSA and NGC actively endanger the general public by allowing sexual predators access to young boys on public land with no warning to the public in general.

83.

Defendants thereby knowingly and/or recklessly subject a considerable and increasing number of children from the public at large to the harm inherent in building and maintaining relationships of trust and confidence with child molesters.

84.

As recently as February of 2014, BSA and NGC published a list of "Campsites Approved by the Northeast Georgia Counsel Cub Scout Outdoor Committee for Cub Scout Pack overnighters." The list includes fourteen properties owned by the state of Georgia, two parks owned by the Army Corps of Engineers, one site owned by the Stone Mountain Memorial Association, two sites owned by Gwinnett County Parks, and one federally owned park. All of the listed parks are located in the state of Georgia and are accessible by the general public.

85.

The NGC recently hosted an "Advance-A-Rama" on February 18, 2017 at Central Gwinnett High School, a school owned by Gwinnett County Public Schools. The general public was invited to attend this event.

86.

NGC is currently advertising a "Scout Show" at the Gwinnett County Fairgrounds, a public space owned by the County of Gwinnett, where participants are invited to, "[j]oin thousands of Scouts, friends, family, and *the general public* for a unique display of Scouting tradition . . ." (emphasis added). The public at large has been invited to attend this event.

87.

Troops throughout BSA and NGC regularly publish calendars advertising the public locations where Scouts will be camping.  For example, Troop 433 in Marietta, Georgia published a calendar of scouting events, including seven events in total, all taking place on publicly owned land in the state of Georgia.

88.

The actions of Defendants BSA and NGC are directly responsible for bringing Scouts and Scout leaders into contact with the general public. Defendants' conduct, deception and concealment has knowingly and/or recklessly created or maintained a condition which unreasonably endangers the safety and health of a considerable number of persons, including but not limited to, children and other members of the general public. Defendants' failure to report or investigate multiple allegations of sexual assault and abuse of children has knowingly and/or recklessly endangered the safety and health of a considerable number of the general public by

allowing child molesters to avoid prosecution and remain living freely in unsuspecting communities. These child molesters, known to Defendants but not the general public, pose a threat of abuse to the general public as a whole.

89.

As adult volunteers, these molesters were and are allowed to build and maintain special relationships requiring the trust and vulnerability of children entrusted to the Defendants. These special relationships cause harm to any children who come into contact with child molesters in a formal capacity through Scouting. Formalized relationships with child molesters tend greatly to corrupt the manners and morals of children for a variety of reasons including, but not limited to, the perversion of a normal, healthy, and supportive mentorship relationship between adult and child into one whose purpose is horrifying and destructive of well-being. Beyond differences in the purpose of the relationship, the "grooming" techniques and strategies that child molesters ordinarily use to select and prepare their victims for abuse change the way each child experiences the relationship. Children who come into contact with child molesters in their formal capacity as adult volunteers thus learn an inherently harmful pattern of altered behavior that they carry over into other relationships, causing them confusion, shame, and guilt and making them more susceptible to further abuse.

90.

Formal relationships between Scouts and child molesters in their capacity as adult volunteers are also manifestly injurious to the children's health and safety.  It is self-evident that close, sustained proximity to child molesters directly harms their safety by enabling the

possibility of further, more extreme harm.  But these formal relationships also harm the mental

health of children participating in them insofar as unexplained differences the children feel

between these relationships and ordinary and healthy relationships cause them confusion, guilt,

and shame.  These harms and risks are all known to Defendants but not known to the general

public, who entrusts its children to Defendants.

91.

By virtue of children's participation in Scouting, children's families who themselves

directly come into contact with child predators with formal roles in Scouting are also harmed for

similar or the same reasons as participating children, including, but not limited to, injuries

sustained vicariously through participating children, the corruption of decency, manners, and

morals in their local communities, the emotional distress caused by knowledge that loved ones

could have been or were exposed to child predators, and the resulting erosion of trust in the Boy

Scouts of America, youth organizations, civic organizations, and civil society more broadly.

Therefore, this nuisance affects the entire Athens-Clarke County community.

92.

Defendant Green Acres has contributed to the public nuisance by actively concealing the

identities of Scout Leaders credibly accused as child molesters or failing to have them properly

investigated by authorities thus allowing these predators access to children actively solicited by

Green Acres to participate in church sponsored Scouting activities.

93.

In 2013, the Reverend Charles Parrish spoke to the Athens-Banner Herald and said that

28

there was a close positive relationship between [the Boy Scouts and Green Acres].  The Reverend also stated to the paper in the same article, regarding the Defendant's Scouting program, "At Green Acres we have developed the best children's and youth programs in Athens because we just love kids."

94.

The negligence and/or deception and concealment by Defendant Green Acres was and is injurious to public health and safety and Plaintiff specifically by corrupting the manners and morals of the public, including, but not limited to, residents in Athens-Clarke County and all other members of the general public who come into contact with the Green Acres community.  It was and continues to be harmful to public health and safety when the Defendant failed to warn, identify, and disclose the presence of current and/or former accused molesters to parents. Additionally, nondisclosure of the patterns of predators grooming and sexually assaulting children creates an impairment of the safety of children in the neighborhoods in Georgia where the Defendant Green Acres conducted, and continues to conduct, its business.

95.

Defendant Beech Haven has contributed to the public nuisance by actively concealing the identities of Scout Leaders credibly accused as child molesters or to have them properly investigated by authorities thus allowing these predators access to children actively solicited by Beech Haven to participate in church sponsored Scouting activities.

96.

Troop 3, the same troop that Plaintiff McArthur was a member of when his abuse took place, has operated continually at Defendant Beech Haven.

29

97.

The negligence and/or deception and concealment by Defendant Beech Haven was and is injurious to public health and safety and Plaintiff, specifically by corrupting the manners and morals of the public, including, but not limited to, residents in Athens-Clarke County and all other members of the general public who live in communities where Beech Haven is active.  It was and continues to be harmful to public health and safety when the Defendants fail to warn, identify, and disclose the presence of the current and/or former accused molesters to parents. Additionally, nondisclosure of the patterns of predators' grooming and sexually assaulting children creates an impairment of the safety of children in the neighborhoods in Georgia where the Defendant Beech Haven conducted, and continues to conduct, their business.

98.

Defendant First Baptist has contributed to the public nuisance by actively concealing the identities of Scout Leaders credibly accused as child molesters or to have them properly investigated by authorities thus allowing these predators access to children actively solicited by First Baptist to participate in church sponsored Scouting activities.

99.

Troop 22, the same Troop that another plaintiff, William Doe was a member of when his abuse took place, has operated continually since that time at First Baptist.  First Baptist proudly advertises its relationship with the Boy Scouts stating on its website that "it has sponsored a Scout troop, Troop 22, since the beginning of the scouting movement in 1910."

100.

The negligence and/or deception and concealment by Defendant First Baptist was and is

injurious to public health and safety and Plaintiffs, specifically by corrupting the manners and

morals of the public, including, but not limited to, residents in Athens-Clarke County and all

other members of the general public who come into contact with the First Baptist community.  It

was and continues to be harmful to public health and safety when the Defendant failed to warn,

identify, and disclose the presence of current and/or former accused molesters to parents,

specifically, that Boland was accused of sexually abusing and molesting scouts within Troop 22

and that he ultimately left that troop because of these allegations. Additionally, nondisclosure of

the patterns of predators grooming and sexually assaulting children creates an impairment of the

safety of children in the neighborhoods in Georgia where the Defendants conducted, and

continues to conduct, its business

101.

BSA, NGC and the Churches contributed to the public nuisance by actively concealing

the identity of Boland and Weaver as well as other accused and admitted child molesters within

the Boy Scouts' ranks.

102.

The Churches further contributed to the public nuisance by failing to report Boland or

Weaver to law enforcement and allowing him access to children who participated in Scouting

and church activities where Boland and Weaver were present.

103.

The Defendants have a duty to warn, identify, and disclose the presence of the current

and/or former credibly accused molesters to parents and have failed to warn the public of

patterns of grooming and sexual assault on children. These failures to act were and continue to

be harmful to public health and safety, corrupt the manners and morals of the people, and jeopardize children in the areas all over Georgia where the Defendants conduct their business.

104.

The Defendants' actions and omissions are a violation of a public right to participate in civil society, including civic organizations dedicated to the well-being and development of children, free from the influence and violence of child predators. As a result of Defendants' actions and omissions, the public at large cannot trust Defendants to warn families of the presence of credibly accused and admitted molesters, or to disclose their histories or pattern of conduct in grooming and assaulting children, all of which has created an impairment to the safety and welfare of children and the general public in the areas all over Georgia where Defendants conducted, and continue to conduct their business. Because the Boy Scouts of America is among the largest, most visible, and most trusted civic organizations in the United States, Defendants' systematic and deliberate failure to ensure the health, safety, morals and manners of millions of participating children is a breach of the public trust that rises to the level of a collective injury to the public at large.

105.

The negligence and/or deception and concealment by the Churches manifestly have and continue to injure public health and safety and corrupt the manners and morals of the people. More broadly, the non-disclosure of the patterns of predators who are grooming and sexually assaulting children or otherwise harming their emotional well-being jeopardizes children throughout the neighborhoods of Georgia where the Churches conduct business.

32

106.

It offends the public's morals in that the general public and Plaintiff cannot trust

Defendants to warn parents of the presence of current and/or former credibly accused molesters,

or to disclose their histories or pattern of conduct in grooming and sexually assaulting children,

all of which create an impairment to the safety and welfare of children and the general public in

the areas all over Georgia where Defendants conducted, and continue to conduct, their business.

107.

Defendants' failures to report allegations of sexual assault and abuse of children has

knowingly and/or recklessly damages the health, safety, and/or manners and morals of a

considerable number of children by allowing child molesters to avoid prosecution and remain

among the ranks of adult volunteers. The Georgia Legislature has found that sexual offenders

who prey on children present an "extreme threat to the public safety" and "in order to protect the

public, it is necessary that the sexual offenders be registered and that members of the community

and the public be notified of a sexual offender's presence." O.C.G.A. § 16-6-4.

108.

Furthermore, Defendants' failure to disclose to authorities the identities of individuals

suspected of being child predators was and is in violation of O.C.G.A. § 19-7-5, the mandatory

reporting law applying to all "child service organization personnel." This code section has been

in effect for decades and creates a legal duty under the criminal law for Defendants to disclose

the identities of such individuals in their respective organizations, if known, to authorities.

109.

For all the above reasons, Defendants' actions to maintain and conceal the presence of

33

child predators within their organizations constitute a public nuisance. The tortious actions and omissions of Defendants constitute a public nuisance and caused special damage to Plaintiff's health, including but not limited to, mental and emotional damage and physical pain and suffering. Because of the tortious actions of Defendants, Plaintiff has not been able to receive timely medical treatment to properly address the damages he suffered and continues to suffer as a result of the abuse.

110.

Defendants failed to act on their knowledge of prior crimes, and failed to act to correct, prevent, or warn of prior criminal activity of sexual abuse of Boy Scouts, and the dangerous environment created on the subject properties and events.  Defendants' failure to take appropriate action to remedy or reduce the danger to the public, including Plaintiff, and allowed the dangerous environment on the subject properties to continue to exist unabated, thereby creating a nuisance that continues to this day.

111.

The nuisance created by Defendants harmed all who came into contact with it by exposing the children of the Athens community to an unnecessary and avoidable risk of child molestation. This nuisance also harms the public by violating the public policy of the state of Georgia to protect its children and require the reporting of any allegations of childhood sexual abuse. Even though not every person is specifically harmed, Defendants still have created a public nuisance because of the exposure to the danger to all the public. The harm created by Defendants' concealment reaches into countless neighborhoods in Georgia because of the prevalence of Scouting and the uncertainty about what, if any, measures Defendants have taken

34

to ensure that particular troops are safe.  But even as measured by the prevalence of overnight trips alone, the harm reaches throughout Georgia.

112.

As a direct and proximate result of Defendants failing to appropriately address and reveal the sexual abuse of children within the Boy Scouts organization, and the public nuisance created thereby, Plaintiff and the general public have sustained and continue to sustain special damages. Specifically, Plaintiff and members of the general public coming into contact with child molesters acting as adult volunteers have experienced harm and, in some cases, sustained and continue to sustain special damages in the form of sex abuse and its effects.

113.

The harm includes: 1) ongoing harm to the general public by failing to notify them of the presence of child molesters in the community in violation of Georgia's public policy, 2) ongoing harm to the general public by failing to have child molesters investigated, arrested and removed from society, 3) ongoing harm to the general public by actively misleading them about the wholesomeness and safety of BSA's activities, 4) ongoing harm to the general public by actively allowing the public to be exposed to known and suspected child molesters, 5) special harm to Plaintiff as a result of being molested, and 6) special harm to Plaintiff when he discovered the fraudulent concealment of these facts which triggered him to relive everything he had been trying to put behind him.

114.

By reason of the foregoing, Plaintiff is entitled to recover damages from Defendants for past, present, and future medical expenses related to the damages he received because of the

35

Defendants' actions, specific amounts to be proven at trial.

115.

By reason of the foregoing, Plaintiff is entitled to recover damages from Defendants for

compensatory damages for past, current and future physical and mental suffering, pain,

emotional distress and harm, in such an amount as may be shown by the evidence and

determined by the enlightened conscience of the jury.

116.

Further, by reason of the foregoing, Plaintiff is entitled to injunctive relief pursuant to

O.C.G.A. § 9-5-1 and O.C.G.A. § 41-1-3 requiring Defendants to properly disclose to the general

public and appropriate authorities the identities of Scout Leaders credibly accused of molesting

Scouts, the identities of which are known to Defendants and not the general public.

## COUNT II: PUBLIC NUISANCE (O.C.G.A. § 41-1-1)
### *(Against All Defendants)*

117.

Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

118.

According to O.C.G.A. § 41-1-1, a public nuisance is one that "tends to the immediate

annoyance of the public in general, is manifestly injurious to the public health or safety, or tends

greatly to corrupt the manners and morals of the public." The negligence and/or deception and

concealment by Defendants was and is injurious to public health and safety and contributes to

the corruption of the manners and morals of the public, including, but not limited to, residents in

Athens-Clarke County and all other members of the general public who live in communities

where Defendants are active.  The corruption of the manners and morals of the public and injury to public health and safety stems directly from the fact that Defendants actively conceal the identities of Scout Leaders accused of sexual molestation and refuse to report these individuals to the proper authorities or even investigate the claims thereby exposing the general public to Scout Leaders they know for a fact are a danger to children.

119.

Defendants have conspired, continue to conspire, and actively engaged in efforts to: (1) conceal from the general public the sexual assaults committed by their volunteers and agents, including Boland and Weaver; (2) conceal from the general public the identities of and pedophilic/ephebophilic tendencies of volunteers and other agents listed in the IV Files; and (3) protect their agents from criminal prosecution for their sexual assaults against children.

120.

Despite the knowledge that to a moral certainty there have been and are to this day predators operating within their organizations, Defendants continue to hold themselves out as organizations of integrity and safety to Scouts and their parents and actively solicit the general public for new members.

121.

Notwithstanding the fact that Defendants have been aware of this danger for years, Defendants actively solicit the general public for new members, have used and continue to use public spaces for various scouting events including public parks, public schools, and other spaces available to the public, including but not limited to, Rainey Mountain. While some of these events are for Scouts only, many are open to the public, and are advertised in public forums and

37

on the Internet.  As a result, BSA and NGC actively endanger the general public by allowing

sexual predators access to young boys on public land with no warning to the public in general.

122.

Defendants thereby knowingly and/or recklessly subject a considerable and increasing

number of children from the public at large to the harm inherent in building and maintaining

relationships of trust and confidence with child molesters.

123.

As recently as February of 2014, BSA and NGC published a list of "Campsites Approved

by the Northeast Georgia Counsel Cub Scout Outdoor Committee for Cub Scout Pack

overnighters."  The list includes fourteen properties owned by the state of Georgia, two parks

owned by the Army Corps of Engineers, one site owned by the Stone Mountain Memorial

Association, two sites owned by Gwinnett County Parks, and one federally owned park.  All of

the listed parks are located in the state of Georgia and are accessible by the general public.

124.

The NGC recently hosted an "Advance-A-Rama" on February 18, 2017 at Central

Gwinnett High School, a school owned by Gwinnett County Public Schools. The general public

was invited to attend this event.

125.

NGC is also a "Scout Show" at the Gwinnett County Fairgrounds, a public space owned

by the County of Gwinnett, where participants are invited to, "[j]oin thousands of Scouts,

friends, family, and *the general public* for a unique display of Scouting tradition . . ." (emphasis

added). The public at large has been invited to attend this event.

126.

Troops throughout BSA and NGC regularly publish calendars advertising the public locations where Scouts will be camping. For example, Troop 433 in Marietta, Georgia published a calendar of scouting events, including seven events in total, all taking place on publicly owned land in the state of Georgia.

127.

The actions of Defendants BSA and NGC are directly responsible for bringing Scouts and Scout leaders into contact with the general public. Defendants' conduct, deception and concealment has knowingly and/or recklessly created or maintained a condition which unreasonably endangers the safety and health of a considerable number of persons, including but not limited to, children and other members of the general public. Defendants' failure to report or investigate multiple allegations of sexual assault and abuse of children has knowingly and/or recklessly endangered the safety and health of a considerable number of the general public by allowing child molesters to avoid prosecution and remain living freely in unsuspecting communities. These child molesters, known to Defendants but not the general public, pose a threat of abuse to the general public as a whole.

128.

As adult volunteers, these molesters were and are allowed to build and maintain special relationships requiring the trust and vulnerability of children entrusted to the Defendants. These special relationships cause harm to any children who come into contact with child molesters in a formal capacity through Scouting. Formalized relationships with child molesters tend greatly to corrupt the manners and morals of children for a variety of reasons including, but not limited to,

the perversion of a normal, healthy, and supportive mentorship relationship between adult and

child into one whose purpose is horrifying and destructive of well-being. Beyond differences in

the purpose of the relationship, the "grooming" techniques and strategies that child molesters

ordinarily use to select and prepare their victims for abuse change the way each child

experiences the relationship. Children who come into contact with child molesters in their formal

capacity as adult volunteers thus learn an inherently harmful pattern of altered behavior that they

carry over into other relationships, causing them confusion, shame, and guilt and making them

more susceptible to further abuse.

129.

Formal relationships between Scouts and child molesters in their capacity as adult

volunteers are also manifestly injurious to the children's health and safety.  It is self-evident that

close, sustained proximity to child molesters directly harms their safety by enabling the

possibility of further, more extreme harm.  But these formal relationships also harm the mental

health of children participating in them insofar as unexplained differences the children feel

between these relationships and ordinary and healthy relationships cause them confusion, guilt,

and shame.  These harms and risks are all known to Defendants but not known to the general

public, who entrusts its children to Defendants.

130.

By virtue of children's participation in Scouting, children's families who themselves

directly come into contact with child predators with formal roles in Scouting are also harmed for

similar or the same reasons as participating children, including, but not limited to, injuries

40

sustained vicariously through participating children, the corruption of decency, manners, and morals in their local communities, the emotional distress caused by knowledge that loved ones could have been or were exposed to child predators, and the resulting erosion of trust in the Boy Scouts of America, youth organizations, civic organizations, and civil society more broadly. Therefore, this nuisance affects the entire Athens-Clarke County community.

131.

Defendant Green Acres has contributed to the public nuisance by actively concealing the identities of Scout Leaders credibly accused as child molesters or to have them properly investigated by authorities thus allowing these predators access to children actively solicited by Green Acres to participate in church sponsored Scouting activities.

132.

Troop 2, the same Troop that another plaintiff, Dennis Doe was a member of when his abuse took place, has operated continually since that time at Defendant Green Acres Baptist Church. In 2013, the Reverend Charles Parrish spoke to the Athens-Banner Herald and said that there was a close positive relationship between [the Boy Scouts and Green Acres]. The Reverend also stated to the paper in the same article, regarding the Defendant's Scouting program, "[a]t Green Acres we have developed the best children's and youth programs in Athens because we just love kids."

133.

The negligence and/or deception and concealment by Defendant Green Acres was and is injurious to public health and safety and Plaintiff specifically by corrupting the manners and morals of the public, including, but not limited to, residents in Athens-Clarke County and all

41

other members of the general public who come into contact with the Green Acres community.  It was and continues to be harmful to public health and safety when the Defendant failed to warn, identify, and disclose the presence of current and/or former accused molesters to parents. Additionally, nondisclosure of the patterns of predators grooming and sexually assaulting children creates an impairment of the safety of children in the neighborhoods in Georgia where the Defendant Green Acres conducted, and continues to conduct, its business.

134.

Defendant Beech Haven has contributed to the public nuisance by actively concealing the identities of Scout Leaders credibly accused as child molesters or to have them properly investigated by authorities thus allowing these predators access to children actively solicited by Beech Haven to participate in church sponsored Scouting activities.

135.

The negligence and/or deception and concealment by the Defendant Beech Haven was and is injurious to public health and safety and Plaintiff specifically by corrupting the manners and morals of the public, including, but not limited to, residents in Athens-Clarke County and all other members of the general public who live in communities where Beech Haven is active.  It was and continues to be harmful to public health and safety when the Defendants fail to warn, identify, and disclose the presence of the current and/or former accused molesters to parents. Additionally, nondisclosure of the patterns of predators' grooming and sexually assaulting children creates an impairment of the safety of children in the neighborhoods in Georgia where the Defendant Beech Haven conducted, and continue to conduct, their business.

42

136.

Defendant First Baptist has contributed to the public nuisance by actively concealing the identities of Scout Leaders credibly accused as child molesters or to have them properly investigated by authorities thus allowing these predators access to children actively solicited by First Baptist to participate in church sponsored Scouting activities.

137.

Troop 22, the same Troop that another plaintiff, William Doe was a member of when his abuse took place, has operated continually since that time at First Baptist. First Baptist proudly advertises its relationship with the Boy Scouts stating on its website that "it has sponsored a Scout troop, Troop 22, since the beginning of the scouting movement in 1910.

138.

The negligence and/or deception and concealment by Defendant First Baptist was and is injurious to public health and safety and Plaintiff specifically by corrupting the manners and morals of the public, including, but not limited to, residents in Athens-Clarke County and all other members of the general public who come into contact with the First Baptist community. It was and continues to be harmful to public health and safety when the Defendant failed to warn, identify, and disclose the presence of current and/or former accused molesters to parents, specifically, that Boland was accused of sexually abusing and molesting scouts within Troop 22 and that he ultimately left that troop because of these allegations. Additionally, nondisclosure of the patterns of predators grooming and sexually assaulting children creates an impairment of the safety of children in the neighborhoods in Georgia where the Defendant First Baptist conducted, and continues to conduct, its business.

139.

BSA, NGC and the Churches contributed to the public nuisance by actively concealing the identity of Boland as well as other accused and admitted child molesters within the Boy Scouts' ranks.

140.

The Churches further contributed to the public nuisance by failing to report Boland to law enforcement and allowing him access to children who participated in Scouting and church activities where Boland was present.

141.

Defendants have a duty to warn, identify, and disclose the presence of the current and/or former credibly accused molesters to parents and have failed to warn the public of patterns of grooming and sexual assault on children. These failures to act were and continue to be harmful to public health and safety, corrupt the manners and morals of the people, and jeopardize children in the areas all over Georgia where the Defendants conduct their business.

142.

The Defendants' actions and omissions are a violation of a public right to participate in civil society, including civic organizations dedicated to the well-being and development of children, free from the influence and violence of child predators. As a result of Defendants' actions and omissions, the public at large cannot trust Defendants to warn families of the presence of credibly accused and admitted molesters, or to disclose their histories or pattern of conduct in grooming and assaulting children, all of which has created an impairment to the safety and welfare of children and the general public in the areas all over Georgia where Defendants conducted, and

continue to conduct their business. Because the Boy Scouts of America is among the largest, most visible, and most trusted civic organizations in the United States, Defendants' systematic and deliberate failure to ensure the health, safety, morals and manners of millions of participating children is a breach of the public trust that rises to the level of a collective injury to the public at large.

143.

The negligence and/or deception and concealment by the Churches manifestly have and continue to injure public health and safety and corrupt the manners and morals of the people. More broadly, the non-disclosure of the patterns of predators who are grooming and sexually assaulting children or otherwise harming their emotional well-being jeopardizes children throughout the neighborhoods of Georgia where the Churches conduct business.

144.

It offends the public's morals in that the general public and Plaintiff that he cannot trust Defendants to warn parents of the presence of current and/or former credibly accused molesters, or to disclose their histories and their pattern of conduct in grooming and sexually assaulting children, all of which create an impairment to the safety and welfare of children and the general public in the areas all over Georgia where Defendants conducted, and continue to conduct, their business.

145.

Defendants' failures to report allegations of sexual assault and abuse of children has knowingly and/or recklessly damages the health, safety, and/or manners and morals of a considerable number of children by allowing child molesters to avoid prosecution and remain

among the ranks of adult volunteers. The Georgia Legislature has found that sexual offenders who prey on children present an "extreme threat to the public safety" and "in order to protect the public, it is necessary that the sexual offenders be registered and that members of the community and the public be notified of a sexual offender's presence." O.C.G.A. § 16-6-4.

146.

Furthermore, Defendants' failure to disclose to authorities the identities of individuals suspected of being child predators was and is in violation of O.C.G.A. § 19-7-5, the mandatory reporting law applying to all "child service organization personnel." This code section has been in effect for decades and creates a legal duty under the criminal law for Defendants to disclose the identities of such individuals in their respective organizations, if known, to authorities.

147.

For all the above reasons, Defendants' actions to maintain and conceal the presence of child predators within their organizations constitute a public nuisance. The tortious actions and omissions of Defendants constitute a public nuisance and caused special damage to Plaintiff's health, including but not limited to, mental and emotional damages and physical pain and suffering. Because of the tortious actions of Defendants, Plaintiff has not been able to receive timely medical treatment to properly address the damages he suffered and continues to suffer as a result of the abuse.

148.

Defendants failed to act on their knowledge of prior crimes, and failed to act to correct, prevent, or warn of prior criminal activity of sexual abuse of Boy Scouts, and the dangerous

46

environment created on the subject properties and events. Defendants' failure to take appropriate action to remedy or reduce the danger to the public, including Plaintiff, and allowed the dangerous environment on the subject properties to continue to exist unabated, thereby creating a nuisance that continues to this day.

149.

The nuisance created by Defendants harmed all who came into contact with it by exposing the children of the Athens community to an unnecessary and avoidable risk of child molestation. This nuisance also harms the public by violating the public policy of the state of Georgia to protect its children and require the reporting of any allegations of childhood sexual abuse. Even though not every person is specifically harmed, Defendants still have created a public nuisance because of the exposure to the danger to all the public. The harm created by Defendants' concealment reaches into countless neighborhoods in Georgia because of the prevalence of Scouting and the uncertainty about what, if any, measures Defendants have taken to ensure that particular troops are safe. But even as measured by the prevalence of overnight trips alone, the harm reaches throughout Georgia.

150.

As a direct and proximate result of Defendants failing to appropriately address and reveal the sexual abuse of children within the Boy Scouts organization, and the public nuisance created thereby, Plaintiff and the general public have sustained and continue to sustain special damages. Specifically, Plaintiff and members of the general public coming into contact with child molesters acting as adult volunteers have experienced harm and, in some cases, sustained and continue to sustain special damages in the form of sex abuse and its effects.

47

151.

The harm includes: 1) ongoing harm to the general public by failing to notify them of the presence of child molesters in the community in violation of Georgia's public policy, 2) ongoing harm to the general public by failing to have child molesters investigated, arrested and removed from society, 3) ongoing harm to the general public by actively misleading them about the wholesomeness and safety of BSA's activities, 4) ongoing harm to the general public by actively allowing the public to be exposed to known and suspected child molesters, 5) special harm to Plaintiff as a result of being molested, and 6) special harm to Plaintiff when he discovered the fraudulent concealment of these facts which triggered him to relive everything he had been trying to put behind them.

152.

By reason of the foregoing, Plaintiff is entitled to recover damages from Defendants for past, present, and future medical expenses related to the damages he received because of the Defendants' actions, specific amounts to be proven at trial.

153.

The nuisance created by Defendants harmed all who came into contact with it by exposing the children of the Athens community to an unnecessary and avoidable risk of child molestation.

154.

By reason of the foregoing, Plaintiff is entitled to recover damages from Defendants for compensatory damages for past, current and future physical and mental suffering, pain, emotional distress and harm, in such an amount as may be shown by the evidence and

48

determined by the enlightened conscience of the jury.

155.

Further, by reason of the foregoing, Plaintiff is entitled to injunctive relief pursuant to

O.C.G.A. § 9-5-1 and O.C.G.A. § 41-1-3 requiring Defendants to properly disclose to the general

public and appropriate authorities the identities of Scout Leaders credibly accused of molesting

Scouts, the identities of which are known to Defendants and not the general public.

## COUNT III: ASSAULT
### *(Against the Estate of Ernest Boland and Weaver)*

156.

Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

157.

On numerous occasions, Boland intended to cause, did cause, and engaged in illegal

sexual conduct and contact with Plaintiff. Weaver intended to cause, did cause, and engaged in

illegal sexual conduct and contact with Plaintiff.

158.

On the occasions referenced in paragraphs above, Boland and Weaver intended to cause

and did cause Plaintiff to suffer apprehension of an immediate harmful sexual contact.

159.

These illegal and unwanted sexual acts perpetrated against Plaintiff by Boland and

Weaver constitute child molestation or aggravated child molestation under the laws of the state

of Georgia.

49

160.

The illegal and unwanted sexual acts perpetrated against Plaintiff by Boland and Weaver constitute childhood sexual abuse as that term is defined in O.C.G.A. § 9-3-33.1.

161.

As a result of the above-described conduct, Plaintiff has suffered and continues to suffer irreparable and ongoing harm, including but not limited to: extreme mental distress, humiliation, anguish, and emotional and physical injuries, as well as economic losses, in amounts to be proven at trial.

## COUNT IV: BATTERY
### *(Against the Estate of Ernest Boland and Weaver)*

162.

Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

163.

On numerous occasions, Boland subjected Plaintiff to unwanted and illegal sexual acts and Weaver subjected Plaintiff to an unwanted and illegal sexual act.

164.

These illegal and unwanted sexual acts perpetrated against Plaintiff constitute child molestation or aggravated child molestation under the laws of the state of Georgia.

165.

The illegal and unwanted sexual acts perpetrated against Plaintiff by Boland and Weaver constitute childhood sexual abuse as that term is defined in O.C.G.A. § 9-3-33.1.

166.

As a result of the above-described conduct, Plaintiff has suffered and continues to suffer irreparable and ongoing harm, including but not limited to: extreme mental distress, humiliation, anguish, and emotional and physical injuries, as well as economic losses, in amounts to be proven at trial.

## COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### *(Against the Estate of Ernest Boland and Weaver)*

167.

Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

168.

On numerous occasions, Defendant Boland and Weaver subjected Plaintiff to unwanted and illegal sexual acts, constituting extreme and outrageous conduct towards Plaintiff, with the intention to cause or with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress.

169.

These illegal and unwanted sexual acts perpetrated against Plaintiff constitute child molestation or aggravated child molestation under the laws of the state of Georgia.

170.

These illegal acts perpetrated against Plaintiff by Defendant Boland and Weaver constitute childhood sexual abuse as that term is defined in O.C.G.A. § 9-3-33.1.

171.

As a result of the above-described conduct, Plaintiff has suffered and continues to suffer

irreparable and ongoing harm, including but not limited to: extreme mental distress, humiliation, anguish, and emotional and physical injuries, as well as economic losses, in amounts to be proven at trial.

**COUNT VI:**
**GEORGIA RICO (RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS)**
*(Against All Defendants)*

172.

Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

173.

The Georgia RICO Act prohibits any person from engaging in certain enumerated activities through a pattern of racketeering or conspiracy. It also permits any person injured by reason of a party engaging in prohibited activities to bring a civil damages action. O.C.G.A. § 16-4-4.

174.

The relationship between Defendants BSA, NGC, Green Acres, First Baptist and Beech Haven, Boland and Weaver constitutes an "enterprise" under O.C.G.A. § 16-14-3(3). Defendants' enterprise has, and has had for all times relevant to this Complaint, a continuity of structure and a shared common purpose and scheme or pattern for protecting and hiding known sexual predators or those accused of being sexual predators.

175.

The Defendants and others whose names are unknown to Plaintiff at this time were employed by or were associated with BSA, NGC, Green Acres, First Baptist and Beech Haven as defined by O.C.G.A. § 16-14-4(b).

52

176.

Defendants BSA, NGC, Green Acres, First Baptist, Beech Haven, Boland and Weaver are jointly and severally liable to Plaintiff for this Racketeer Influenced and Corrupt Organizations ("RICO") cause of action, and Defendants BSA and NGC are each an agent of one another and a co-conspirator with the other relating to the acts alleged herein.

177.

Defendants BSA, NGC, Green Acres, First Baptist, Beech Haven, Boland and Weaver agreed to enter into a conspiracy to violate provisions of O.G.C.A. § 16-14-3(5)(A)(v). Specifically, Defendants caused Plaintiff's injuries resulting in the assault, battery, intentional infliction of emotional distress and cover-up and concealment of the abuse in violation of O.G.C.A. § 16-14-3(5)(A)(v).

178.

The actions of Defendants resulted in the assault, battery, and intentional infliction of emotional distress of Plaintiff in violation of O.C.G.A. § 16-14-3(5)(A)(v). Plaintiff was also injured by Defendants' concealment of the truth which caused significant direct harm to the Plaintiff when he discovered the truth: the reopening of old wounds and new harm caused by the fact that each Plaintiff learned they were not the only victims, it was known and no one did anything about it.

179.

These offenses were not committed as an occasional practice, rather they were part of a systematic and ongoing pattern of racketeering activity over a number of decades, concealed by a scheme of subterfuge and intimidation.

180.

Defendants continuously engaged in racketeering activity and conspired to keep secret the above-mentioned acts from any investigative body, from others interested in the well-being of Plaintiff, acted to conceal the injury and harm done to Plaintiff, so as to cover up accusations of and confirmed instances of child sexual abuse within the Boy Scout organization.

181.

Through this behavior Defendants engaged in racketeering activities as defined in O.C.G.A. § 16-14-3(2) and (5)(A) including, but not limited to, attempts to coerce or intimidate others and the actual commission of crimes chargeable by indictment under the following laws of this State including (v) assault and battery, and (xxii) false statements and concealment of facts.

182.

The Defendants also conspired to conceal Boland and Weaver's crimes and the danger he posed to Scouts as well as the prevalence of sexual abuse in Scouting generally through a pattern of deliberate fraudulent practices, including theft, perjury, and mail fraud so as to preserve and maximize profitability, preserve and protect their reputations in the community and avoid criminal and civil legal action.

183.

The conduct of Defendants was part of a systematic and ongoing pattern which has resulted in harm to Plaintiff, other victims of Boland and Weaver and thousands of other Scouts throughout the country.

184.

The procedural policies of Defendant BSA in handling the IV Files, their instructions to Defendant NGC as to following these policies, and both Defendants' continued compliance with said policies, show an interconnectedness between the instances of sexual abuse experienced by Plaintiff.

185.

Defendants BSA and NGC's refusal to release information contained in the IV Files continues to the present day. BSA and NGC also continue to engage in practices that put Scouts at risk of sexual abuse. Therefore, the RICO violations are within five years from the time that the prohibited conduct was performed. O.C.G.A. § 16-14-8.

186.

Since 1911 BSA has consistently published "Boy's Life" the official magazine of BSA. The magazine is mailed via the U.S. Postal Service to subscribers, and every issue of the magazine ever published is available in an online archive. In so doing, BSA utilized the United States mail to cover up accusations of and confirmed instances of child sexual abuse within the Boy Scout organization.

187.

Boy's Life has published several articles on child sexual abuse over the years including its issues in September 1986, April 1989, December 1989, April 1995, April 2002, and September 2012. In none of these articles does Boy's Life mention the possibility of a Scout being abused by a Scouting Leader or that BSA was aware of instances where Scout Leaders molested Scouts and maintained a list of the offenders.

188.

In December 1989, Boy's Life published an article written by then Chief Scout Executive Ben H. Love who stated, "Our programs, literature, videos, and registration process promote the best possible safeguards against child abuse. We can confidently say that the BSA continues to be the safest program for youth in America. And we will keep it that way." At no time did BSA reveal that it was aware of instances where Scout Leaders sexually abused children and actually maintained a list of the offenders.

189.

Each issue of Boy's Life serves to encourage Scouts and their parents to participate in Scouting activities and promotes BSA as a reputable and safe organization. BSA was aware that these statements were not true and it maintained secret files of suspected child molesters while it made these claims about being a safe organization. This constitutes racketeering activity by the Defendants which was part of a common and continuous pattern of fraudulent schemes, perpetrated for the same or similar purposes and constituting a "pattern of racketeering activity."

190.

Defendants used the mail to send solicitations to Plaintiff, and the class of similarly situated children of which they were members, which warranted either expressly or impliedly that Scouting was a safe activity with the purpose of inducing Plaintiff and other children to believe Scouting was a safe activity. The Defendants sent these solicitations fraudulently to induce Plaintiff and other children to participate physically in and contribute financially to Scouting organizations, while knowing that the Scouts would not be a safe organization because of the prevalence of child molesters, all contrary to law. The Defendants sent thousands or

millions of these solicitations to Scouts.

191.

Defendants fraudulently received money, property, and/or other things of value from Plaintiff, and the class of similarly situated children of which he was a member, by deceiving them as to the safety of their organizations and therefore inducing them to contribute such money, property, and/or other things of value, all contrary to law. The Defendants received thousands or millions of these contributions from Scouts continuously. This pattern continues to this day.

192.

Defendants BSA and NGC's refusal to release information contained in the Ineligible Volunteer Files continues to the present day. BSA and NGC also continue to engage in practices that put Scouts at risk of sexual abuse.

193.

Due to Defendants' RICO violations, Plaintiff and thousands like him were fraudulently induced to join the Boy Scouts and participate in activities known to be unsafe, particularly the overnight camping trips attended by Boland, which ultimately led to the sexual abuse of Plaintiff and countless other children.

194.

These fraudulent inducements directly caused Plaintiff's injuries because they were both the actual and proximate cause of his injury; that is, there was a direct nexus between fraudulent solicitations designed to conceal a specific risk of harm to Plaintiff and the occurrence of the

exact type of harm the risk of which Defendants had sought to conceal.

195.

Plaintiff was not aware, and reasonably could not have been aware, of the Defendants' RICO violations until now.

196.

Through its racketeering activities, the Defendants deceived and victimized Plaintiff, whereby Plaintiff was damaged.

197.

The unlawful and immoral acts of the Defendants, as described throughout this Complaint, are the proximate cause of severe damage to Plaintiff and the general public.

198.

Due to the acts of the Defendants and resulting damages, Plaintiff is entitled to judgment against Defendants in an amount to be determined by a jury.

## COUNTS VII and VIII
### FRAUDULENT MISREPRESENTATION AND FRAUDULENT CONCEALMENT
*(Against All Defendants)*

199.

Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

200.

Defendants' acts of concealment rise to the level of actionable fraud such that the statute of limitations for Plaintiff's claims was tolled until Plaintiff learned of the Defendants' fraudulent

misrepresentations and fraudulent concealment.

201.

Defendants BSA and NGC invited and encouraged Plaintiff to participate in the Scouting program jointly administered and controlled by them. Prior to Plaintiff's joining BSA, BSA and NGC made knowingly false representations to Plaintiff as to induce them to join the organization and pay dues, including, but not limited to, making knowingly false statements regarding the moral and ethical standards of the adult volunteers participating in Boy Scouts and the safety of Boy Scout events.

202.

Prior to Plaintiff joining BSA, BSA and NGC made knowingly false representations to Plaintiff so as to induce him to join the organization and pay dues, including, but not limited to, making knowingly false statements regarding the organizations' acceptance of the occurrence of child sexual abuse of Scouts and tolerance of volunteers who were known to be child predators, including, but not limited to, Boland and Weaver.

203.

Plaintiff and Defendants were in a special relationship such that Plaintiff justifiably relied on Defendants to safeguard Plaintiff and act as a reasonable parent would act under the same or similar circumstances. The duty of care created by this special relationship was elevated because of the BSA's own express commitment to developing the character and integrity of the children entrusted to its care and the BSA's highly visible role as one of the leading organizations for child character development in the United States.

204.

Defendants fraudulently misrepresented, failed to disclose and actively concealed the

prevalence of adult volunteers who were known to have sexually abused Scouts.

205.

Defendants fraudulently misrepresented, failed to disclose and actively concealed the

danger posed by Defendant Boland and Weaver specifically.

206.

Defendants fraudulently misrepresented, failed to disclose and actively concealed their

knowledge of the crimes committed by Boland and Weaver years before he abused Plaintiff.

207.

The Defendants knew or should have known that any child in Boland or Weaver's

presence was in danger.

208.

The Defendants knew that Boland and Weaver were continuing to participate in Scouting

after they knew of his crimes.

209.

Defendants conspired to fraudulently conceal the danger posed by Boland and Weaver

from Scouts, including Plaintiff, parents and the general community.

210.

Defendants fraudulently concealed Boland's crimes and the risk he posed to children by

falsely stating in a church bulletin that Boland was leaving Troop 3 to spend more time with his

family; failing to report that Boland had been accused of molestation while in Troop 22, failing

to disclose Boland's child molestation to law enforcement; failing to disclose Boland and Weaver's crimes to Scouts and parents and elevating Boland to leadership roles in the Boy Scouts, NGC and the Church.

211.

But for Defendants' acts of fraudulently concealing Boland and Weaver's crimes, the sexual assault on Plaintiff would not have occurred.

212.

Plaintiff relied on Defendants' misrepresentations regarding Boland and Weaver, Scouting and Scout Leaders, and the commitment of Defendants to making best efforts to keep children safe.

213.

The BSA and NGC represented to Plaintiff that Boland and Weaver, and adult volunteers generally were selected, controlled, approved and supervised by them.

214.

The BSA and NGC represented to Plaintiff that Boland and Weaver, and adult volunteers generally were trustworthy mentors and leaders and promoted these adult volunteers as safe, despite knowing that Boland and Weaver had been accused of child molestation.

215.

Defendants had a duty to disclose known threats to the health and safety of minors involved with their organization because Defendants had a special relationship of trust and confidence with Plaintiff and Defendants exercised *in loco parentis* responsibilities over Scouts, including Plaintiff.

61

216.

Boland and Weaver's criminal acts, as well as the prevalence of child sexual abuse of Scouts by adult volunteers generally, was vital and material information that Defendants had a duty to disclose to Plaintiff as this information was relevant to his membership with BSA.

217.

As a result of Defendants' elaborate scheme to actively conceal Boland and Weaver's crimes and the prevalence of child sexual abuse by adult volunteers, Plaintiff had no way to obtain this information independently. Defendants concealed Boland's conduct as part of an elaborate scheme which was part of the internal policy of BSA to hide the prevalence of child sexual abuse by adult volunteers. Accordingly, Plaintiff could not have obtained the information necessary to have protected themselves from Boland or Weaver by any reasonable diligence.

218.

Due to the Plaintiff's inability to independently discover the prevalence of child sexual abuse in Scouting as well as Boland and Weaver's past crimes, Defendants had a duty to disclose this information to Plaintiff.

219.

Defendants' knowledge of Boland and Weaver's crimes was a material fact because Plaintiff would not have joined BSA or spent time with Boland or Weaver if he would have known of Boland's crimes or had known the prevalence of child abuse in Scouting.

220.

The BSA and NGC made false representations to Plaintiff with reckless disregard for the truth, including, but not limited to numerous representations in various editions of the Boy Scout

Handbook and holding Boland and Weaver out as a safe and trustworthy Boy Scout Leader whose direction must be followed.

221.

The BSA and NGC's false representations were made with the intent of inducing Plaintiff to rely on these statements, continue to participate in Scouting and trust adult volunteers like Boland.

222.

Defendants fraudulently concealed Boland and Weaver's crimes to shield Defendants from scrutiny, liability, criminal prosecution and to ensure the continued financial and reputational benefits associated with Scouting.

223.

Plaintiff justifiably relied on the fraudulent misrepresentations made by Defendants.

224.

Plaintiff Robert Doe did not learn that BSA, NGC, Beech Haven, First Baptist and Green Acres knew that Boland had been accused of molesting Scouts and left each Troop due to these allegations until the original Plaintiffs filed their original lawsuit until late June 2019.

225.

As a result of Defendants' fraudulent concealment of the danger posed by Boland and Weaver and their fraudulent misrepresentations, Plaintiff was abused and suffered great pain of mind and body, shock, severe emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life. This damage does not arise only from Plaintiff's molestation by Boland and Weaver but by the fact

that Defendants BSA, NGC, Beech Haven, Green Acres and First Baptist concealed this fact the entire time they were Scouts and continue to try to conceal this fact today.

226.

The agents and volunteers of BSA and NGC knowingly made false representations to Plaintiff, including, but not limited to, the fact that they knew that Boland and Weaver had previously been accused of molesting Scouts and knew that he was a danger to children left under his supervision, including Plaintiff.

227.

Before and since the sexual abuse at issue in this case, Defendants' tortious conduct has continued. Defendants continue to affirmatively misrepresent to the public that they are acting to keep children safe despite continuing to conceal the identity of hundreds of child predators who may be continuing to abuse children today.

228.

The acts and omissions of adult volunteers were done in the course and scope of their relationship with BSA, NGC and the Churches; pursuant to the rules, regulations, and procedures promulgated by the Defendants and the authority delegated to them by the Defendants. Defendants knew or should have known that any scout left unsupervised in the presence of Boland was at risk of being abused whether Boland and Weaver intended to do so or not. Defendants knew or should have known that Boland and Weaver were sick and had uncontrollable sexual desires for boys. Defendants conspired to fraudulently conceal from scouts, parents, and the general public, of the dangers Boland and Weaver posed to Plaintiff and

64

other scouts.

## COUNT IX: FAILURE TO PROVIDE ADEQUATE SECURITY
*(As to BSA, NGC, Green Acres, Beech Haven and First Baptist)*

229.

Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

230.

Boland sexually abused Plaintiff in his role as a Scoutmaster.

231.

The Defendants had superior knowledge that Boland and Weaver had sexually abused

Scouts during Scouting events and posed a danger to Plaintiff.

232.

The Defendants had a duty of ordinary care to Plaintiff as invitees to disclose the known

danger posed by Boland of which Defendants had superior knowledge.

233.

The Defendants had a duty of care to adopt adequate security measures on the premises

of facilities where Scouting activities occurred so as to protect children under their care, custody,

and control from being sexually abused by Boland and Weaver.

234.

The Defendants failed to disclose the danger posed by Boland and Weaver and failed to

implement basic security measures to protect Plaintiff and other children from Boland and

Weaver.

235.

The Defendants knew or should have known that allowing Boland and Weaver access to Plaintiff would expose him to a foreseeable risk of sexual abuse.

236.

The Defendants knew or should have known that failing to adopt adequate security measures at Scouting events would expose Plaintiff to a foreseeable risk of sexual abuse by Defendant Boland and Weaver.

237.

As a direct and proximate cause of the Defendants' acts and omissions, Plaintiff was left unsupervised with Boland and Weaver where Plaintiff was sexually assaulted and sodomized.

## COUNT X: FAILURE TO TRAIN, SUPERVISE & MONITOR
### *(As to BSA, NGC, Green Acres, Beech Haven and First Baptist)*

238.

Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

239.

At all times relevant to this action, the Defendants owed a duty of reasonable care to protect children who attended Scouting events.

240.

The Defendants owed Plaintiff a duty of ordinary care to institute necessary policies, procedures, training, oversight, and monitoring of scouting activities so as to protect him from Boland and Weaver.

241.

At all times relevant to this action, the Defendants failed to properly train, monitor, audit, or supervise adult volunteers in order to protect Scouts from child predators, including Boland and Weaver. Likewise, the Defendants failed to provide adequate protocols and information regarding Boland and Weaver to Scouts, parents and other adult volunteers.

242.

As a direct and proximate cause of the Defendants failure to institute necessary policies, procedures, training, oversight, and monitoring of Scouting activities, Boland and Weaver gained access to Plaintiff and sexually assaulted him, entitling him to an award of economic, compensatory, and punitive damages as more fully set forth herein.

### COUNT XI: FAILURE TO WARN
*(As to BSA, NGC, Green Acres, Beech Haven and First Baptist)*

243.

Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

244.

Defendants owed a duty to exercise ordinary care in supervising Boland and a duty to provide adequate warning to Plaintiff after learning of Boland and Weaver's crimes.

245.

Defendants breached the duty owed to Plaintiff by failing to supervise Boland and Weaver's interactions with Plaintiff, and failing to warn Plaintiff, the Plaintiff's family, and others of Defendant Boland and Weaver's dangerous and exploitative propensities.

246.

As the direct and proximate result of Defendants' breach of their duty, Plaintiff suffered

damages for which he is entitled to recover as provided by law.

## COUNT XII: NEGLIGENT RETENTION
### *(As to BSA, NGC, Green Acres, Beech Haven and First Baptist)*

247.

Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

248.

Defendants owed Plaintiff a duty of ordinary care to ban Boland and Weaver from all

Scouting events and activities after learning of the danger they posed to Scouts.

249.

Defendants knew or should have known that Boland and Weaver posed a danger to

Plaintiff.

250.

Defendants had actual knowledge of the danger posed by Boland and Weaver since their

crimes had been reported to Defendants by Scouts, parents of Scouts and Boland and Weaver

themselves.

251.

Defendants breached their duty of ordinary care by failing to report Boland to authorities

and allowing him to continue to volunteer with BSA, NGC, and the affiliate churches. As the

direct and proximate result of Defendants' breach of their duties, Plaintiff suffered damages for

which he is entitled to recover as provided by law.

## COUNT XIII: RESPONDEAT SUPERIOR/VICARIOUS LIABILITY
### *(As to BSA, NGC, Green Acres, Beech Haven and First Baptist)*

252.

Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

253.

Boland's attendance at Boy Scout functions such as camping trips was in furtherance of his duties as a volunteer and agent of BSA and NGC.

254.

At all times relevant herein, Boland and Weaver were agents and volunteers of BSA and NGC and was acting within the course and scope of their role as agents and volunteers of the Defendant organizations and was supervised in this role by Defendants; therefore, Defendants are liable for Boland and Weaver's negligent acts under a theory of respondeat superior and/or agency.

255.

At all times relevant herein, Boland and Weaver were agents and volunteers of BSA, NGC and affiliated churches and was acting within the course and scope of his role as an agent and volunteer leader of Defendant organizations. Defendants acted through agency, joint venture and/or common enterprise when they exposed Plaintiff and other victims to the sexual abuse of Boland and Weaver and had the right to exercise mutual control over Plaintiff, making them jointly and severally liable for the acts alleged.

69

## COUNT XIV: BREACH OF FIDUCIARY DUTY
### (*Against All Defendants*)

256.

Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

257.

Defendants exercised a controlling influence over the will, conduct, and interest of Plaintiff, who was a minor during the 1950's through the 1970's such that the law required the utmost good faith from Defendants in safeguarding Plaintiff from known dangers.

258.

BSA, by and through its Handbook declarations, agents, employees and volunteers, represented BSA to be an organization consisting of safe and morally upstanding adult volunteers who abided by the Scout Law and safely supervised children during activities where the children's parents were not present, including overnight trips.

259.

Defendants, by and through their agents, employees and volunteers, failed to take remedial measures to protect Plaintiff from Boland and Weaver despite having superior knowledge of the danger posed to Plaintiff by Boland and Weaver.

260.

Defendants, by and through their agents, employees and volunteers, allowed Boland and Weaver to recruit Plaintiffs for membership in Order of the Arrow which required attendance at the camping trip where he was assaulted.

70

261.

Defendants had a special relationship of trust with Plaintiff and other students, and as such, owed a fiduciary duty to them for their health, safety and well-being.

262.

Defendants breached their fiduciary duties to Plaintiff and other students by failing to provide for their health, safety and well-being, exposing them to sexual predators, fostering an environment of inappropriate scout-scoutmaster emotional and physical contact, and concealing the know dangers on campus.

263.

Defendants, by and through their agents, employees and volunteers breached the fiduciary duty owed to Plaintiff. As the direct and proximate result of Defendants' breach of this fiduciary duty, Plaintiff suffered damages for which he is entitled to recover as provided by law.

## COUNT XV: PUNITIVE DAMAGES
### *(Against All Defendants)*

264.

Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

265.

Defendants' knowing and intentional conduct warrants punitive damages to be determined by the enlightened conscience of a jury.

266.

Defendants' actions demonstrate willful misconduct, malice, wantonness, and an entire want of care that raises the presumption of conscious indifference to the consequences of such

actions.

267.

Punitive damages should be imposed on the Defendants in an amount to be determined at trial.

## COUNT XVI:  ATTORNEY'S FEES AND EXPENSES OF LITIGATION
### *(Against All Defendants)*

268.

Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

269.

Defendants' actions constitute willful, intentional, and tortious conduct. Every intentional tort involves an element of bad faith that entitles a person to recover the expenses of litigation, including attorney's fees.

270.

The actions of Defendants and their agents and representatives have caused Plaintiff unnecessary trouble and expense.

271.

Plaintiff is entitled to recover his attorneys' fees and the expense of litigation from the Defendants pursuant to O.C.G.A § 13-6-11.

## COUNT XVII: INJUNCTIVE RELIEF
### *(Against All Defendants)*

272.

The foregoing paragraphs are re-alleged in their entirety as if specifically set forth herein.

72

273.

Because of the foregoing actions, Plaintiff has and continues to suffer irreparable harm and has no adequate remedy at law.

274.

Plaintiff prays for such injunctive relief as the Court may provide to remedy these violations.

WHEREFORE, Plaintiff respectfully prays that this Court:

a.    Grant Plaintiff a trial by jury as to all triable issues in the above styled case;

b.    Award Plaintiff his general and special damages on all Counts in an amount to be determined at trial;

c.    Award injunctive relief, requiring Defendants to fully disclose the identities of Scout Leaders accused of molesting Scouts;

d.    Award Plaintiff punitive damages;

e.    Award Plaintiff interest on any damages awarded;

f.    Award Plaintiff's attorneys' fees and costs associated with bringing this action; and

g.    Award Plaintiff such further relief as this Court deems proper.

Respectfully submitted this 10th day of June, 2019.

**PENN LAW**

/s/ Darren W. Penn

_____

DARREN W. PENN
Georgia Bar No. 571322
darren@pennlawgroup.com

73

ALEXANDRA "SACHI" COLE
Georgia Bar No. 696892
sachi@pennlawgroup.com
4200 Northside Parkway, NW
Building One, Suite 100
Atlanta, Georgia 30327
Phone/Fax: (404) 961-7655

PAUL MONES
13101 Washington Blvd.
Los Angeles, CA 90066
California Bar No. 128329
pamones@comcast.net
(Pro Hac Vice Forthcoming)

*Attorneys for Plaintiff*

## VERIFICATION

STATE OF Nevada

COUNTY OF NYC

PERSONALLY APPEARED before me, the undersigned Plaintiff, who, on oath states

that the within and foregoing Plaintiff's Verified Complaint for Injunctive Relief and Damages

is true and correct to the best of his knowledge and belief.

Robert Doe,

Sworn to and subscribed before me

this ___ day of Mar 2019.

_____
Notary Public

My commission expires April 6, 2022

SIMONE GUDMUNDSEN
Notary Public State of Nevada
No. 18-2206-14
My Appt. Exp. April 6, 2022

**EXHIBIT F**

FILED: NEW YORK COUNTY CLERK 08/23/2019 08:02 AM   INDEX NO. 950112/2019
NYSCEF DOC. NO. 1   RECEIVED NYSCEF: 08/23/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
▮G.,

                           Plaintiff,

            -against-

BOY SCOUTS OF AMERICA, and
GREATER NEW YORK COUNCILS,
BOY SCOUTS OF AMERICA,

                      Defendants.
-------------------------------------------------------------------X

Index No.
Date Purchased:

Plaintiff designates
NEW YORK
County as the place of trial.

The basis of the venue is
Defendants' place of
business.

**SUMMONS**

To the above named Defendant(s)

       YOU ARE HEREBY SUMMONED to answer the complaint in this action and to

serve a copy of your answer, or, if the complaint is not served with this summons, to serve a

notice of appearance, on the Plaintiff's Attorney within 20 days after the service of this

summons, exclusive of the day of service (or within 30 days after the service is complete if this

summons is not personally delivered to you within the State of New York); and in case of your

failure to appear or answer, judgment will be taken against you by default for the relief

demanded in the complaint.

Dated: New York, New York
      August 23, 2019

MICHAEL G. DOWD
600 Third Avenue, 15ᵗʰ Floor
New York, NY 10016
(212) 751-1640

SWEENEY, REICH & BOLZ, LLP
By: Gerard J. Sweeney, Esq.
1981 Marcus Avenue, Suite 200
Lake Success, NY 11042
(718) 459-9000
Attorneys for Plaintiff

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X

████,

                        Plaintiff,

          -against-

BOY SCOUTS OF AMERICA, and
GREATER NEW YORK COUNCILS,
BOY SCOUTS OF AMERICA,

                        Defendants.

-----------------------------------------------------------------X

Index No.
Date Filed:

**VERIFIED COMPLAINT**

       Plaintiff, ████, by his attorney, MICHAEL G. DOWD, complaining of Defendants,

hereby alleges the following:

## JURISDICTION

1.     This action is timely commenced pursuant to the New York State Child Victims

       Act, dated February 14, 2019 and CPLR § 214-g.

## AS AND FOR A FIRST CAUSE OF ACTION

## (NEGLIGENT SUPERVISION)

2.     The Plaintiff, ████ (hereinafter "Plaintiff") was born on ████████ He

       is a resident of the United Kingdom.

3.     At all times relevant, Plaintiff was an unemancipated minor who was invited to

       participate in meetings, events, and activities run and sponsored by Defendants

       BOY SCOUTS OF AMERICA and GREATER NEW YORK COUNCILS, BOY

       SCOUTS OF AMERICA.

4.     Upon information and belief, at all times mentioned herein, the BOY SCOUTS

       OF AMERICA (hereinafter "BSA") was and is a federally chartered corporation

1

Case 1:20-mc-00078-RGA Document 10 Filed 03/03/20 Page 156 of 174 PageID #: 758

authorized to do business in New York. Its principal headquarters are located in Irving, Texas, which is in Dallas County.

5. Upon information and belief, at all times mentioned herein, the GREATER NEW YORK COUNCILS of the Boy Scouts of America (hereinafter "NEW YORK COUNCIL") was and is a domestic nonprofit corporation organized under the laws of the state of New York. Its principal headquarters are located in New York, New York, which is in New York County.

6. Defendant BSA and Defendant NEW YORK COUNCIL will be referred to collectively as "Defendants."

7. Upon information and belief, Defendants jointly own and operate scouting programs which invite and seek out the participation of children. Defendants, through their agents and officials, have control over those activities involving children. Defendants have the power to appoint, supervise, monitor, restrict, and fire each person working with children within Defendants' scouting programs.

8. In 1916, Congress granted BSA a federal charter, now codified as 36 U.S.C. Ch. 309. Under that Charter, Congress granted BSA the exclusive right to BSA's name, emblems, badges, and descriptive words and markings.

9. Since 1910, BSA has derived millions of dollars a year licensing the rights to its name, emblems, scouting paraphernalia, and BSA-branded merchandise to affiliated scouting organizations throughout the United States and abroad (See 36 U.S.C. §80305). BSA has realized income from these assets by marketing them to parents and their children, including Plaintiff and his parents. In addition to its exclusive license, BSA enjoys numerous taxpayer subsidies, including: (1) free

access to national forest lands (16 U.S.C. § 539f); (2) free use of Defense Department equipment and facilities for BSA Jamborees (10 U.S.C. §2554); (3) free ground and air transportation, communications, emergency, and technical services from the National Guard (32 U.S.C. § 508); (4) free use of meeting facilities, transportation, and support services at United States military bases world-wide (10 U.S.C. §2606); (5) free firearms, ammunition, repairs, supplies, and marksmanship training equipment (36 U.S.C. §40731); (6) free military surplus (10 U.S.C. Ch. 943); and (7) Department of Agriculture grants (7 U.S.C. §7630).

10.   BSA's marketing includes encouraging parents to enroll their children in Defendants' scouting programs and activities.  Enrollment secures parents' and children's commitment to follow a system that encourages parents to entrust their children's health and safety to BSA.  This entrustment empowers BSA to secure each child's oath to uphold the "Scout Law," to adopt the "Scout" identity, and to adhere to a system that requires children to engage in activities that expose them to adults and others.  This system includes over-night outings, camping events, and trips away from parents.  The system is reward-based, obligating the child to purchase emblems, badges, and other scouting paraphernalia, which in turn creates profit for the organization.

11.   BSA implements scouting programs through local Boy Scouts of America councils to which it issues licenses to the Boy Scouts of America name, emblems, badges, markings and youth programs. BSA requires local councils and troops

3

FILED: NEW YORK COUNTY CLERK 08/23/2019 08:02 AM        INDEX NO. 950112/2019
NYSCEF DOC. NO. 1                                        RECEIVED NYSCEF: 08/23/2019

within a local council to strictly adhere to BSA's organizational charter and "Standards of Leadership" requirements.

12.  At all times relevant, Defendant NEW YORK COUNCIL and Troop 666 to which Plaintiff was a member of were the agents of the BSA and were subject to BSA's authority and control.

13.  BSA is one of the largest nonprofits in the United States, with income exceeding hundreds of millions per year.  BSA is the largest youth organization in the United States, serving more than 2.7 million youth members, ages ten to eighteen, with over one million adult volunteers.

14.  Shortly after its inception, Defendant BSA became aware that a significant number of its adult Boy Scout leaders ("Scout Leaders") were using their position of trust and authority as Scout Leaders to manipulate and sexually abuse youth participating in Defendant BSA's scouting programs.

15.  Since its inception, BSA aggressively marketed the wholesomeness and safety of its programs to the American public.  Simultaneously, BSA concealed from scouts and their parents BSA's certain knowledge that pedophiles had been infiltrating BSA in large numbers for many years.  BSA also misrepresented to scouts and their parents that scouts were safe in scouting programs, when, in fact, scouts were at an unreasonably heightened risk of sexual abuse by adult Scout Leaders.  BSA made said misrepresentations to Plaintiff and his parents.

16.  By the early 1920s, Defendant BSA implemented what it called the "Red Flag" system to identify Scout leaders whom Defendant BSA considered "ineligible" to hold positions as Scout Leaders.  This internal system eventually became known

4

as the "Ineligible Volunteer Files" (hereafter "I.V. Files"). Historically, the most common reason for a Scout Leader to be placed in the I.V. Files has been allegations of sexual abuse of minors. This subset of I.V. Files has been referred to by Defendants as the "Perversion Files."

17. By 1935, Defendant BSA had already identified and removed over one thousand adult men from their positions as Scout Leaders for sexually abusing boys involved in Defendant BSA's scouting programs.

18. Between 1935 and the events alleged herein in the 1989, Defendant BSA had already identified thousands of additional Scout Leaders who were believed to have or were alleged to have sexually abused minor boys in Defendant BSA's scouting programs. Not all of these adults were removed from their positions as Scout Leaders. Rather, at some point prior to 1955, Defendant BSA implemented a secret, internal "probation program." Under Defendant BSA's "probation program," a significant number of Scout Leaders believed to have sexually abused boys were allowed to continue on as Scout Leaders with access to minors. Neither scouts nor their parents were informed if a Scout Leader was on "probation," or that the reason for the probationary status was for sexually abusing minors. This probationary status evidenced the BSA's continued policy of denying or otherwise covering up the problem of sexual abuse within its ranks of Scout Leaders.

19. Defendant BSA went to significant lengths to keep the existence of their "Perversion File" system and the problem of sexual abuse by Scout Leaders a secret from scouts and the public. Local councils were instructed – and agreed –

not to keep Perversion File materials at their offices, but rather to send everything to BSA national and destroy any copies.

20. Through the Perversion files, decades prior to the abuse of Plaintiff, the BSA possessed a unique knowledge of both the profile of Scout Leaders who sexually abuse scouts as well the methods these sexual abusers used to successfully infiltrate scouting. The I.V. files highlight the vulnerabilities of Defendants' scouting programs and activities, including sexual abusers' patterns for grooming victims, and widely-found biographical and behavioral characteristics shared by sexual abusers that had entered or were attempting to enter scouting. For a century, BSA has known of distinctive characteristics of BSA's scouting programs that render scouts particularly prone to child sexual abuse by Scout Leaders.

21. By 1935, BSA had accumulated approximately hundreds of files on child molesters that had successfully infiltrated or attempted to infiltrate its programming. Between 1935 and the events alleged herein in the 1989, Defendant BSA received thousands of reports of Scout Leaders sexually abusing boys in their programs. These reports were continuous in frequency over time and were spread throughout the geographic bounds of the Defendant BSA's scouting programs.

22. In the 1970s, BSA recognized the potential liabilities represented by possessing and maintaining the I.V. files. Over the course of two years in the early 1970s, three BSA executives reviewed and permanently destroyed thousands of I.V. files. BSA executives kept no retention logs showing which or how many of the

6

files BSA destroyed. BSA made no contemporaneous record of its criteria in determining which files to destroy and which to save. Approximately 6,000 files survived BSA's file purge and are in BSA's possession. Approximately 1,900 of those files are now in the public domain. The exact number of sexual abuse reports received by BSA is unknown, in part because of the mid-1970s file purge. By 2005, BSA's secret cache of files (Perversion Files) on child molesters were in the thousands. These reports demonstrated to Defendant BSA that it had a continuous and systemic problem of adult volunteers sexually abusing boys participating in the Defendant's scouting programs.

23.     Defendants' knowledge of the danger of sexual abuse of boys in scouting included knowledge about how child abusing Scout Leaders accomplished their abuse. Prior to the abuse of Plaintiff by JERROLD SCHWARTZ (hereinafter "SCHWARTZ"), the Defendants knew or should have known that child molesting Scout Leaders groomed their victims to accomplish their abuse and understood how such grooming was accomplished (including using the scouting programs and activities to win the trust of victims, spending time alone with victim, and using mechanisms to lower victims' inhibitions and maintain victims' silence).

24.     The I.V. Files, created prior to the Plaintiff's participation in scouting, demonstrate that BSA had evidence (1) that scouting was continuously attracting pedophiles across time and geography and (2) of scouting's distinctive characteristics that make it attractive to pedophiles, including:

a.      Providing a sexual abuser access to boys alone and away from their parents in secluded settings like camp-outs and overnight hikes;

7

FILED: NEW YORK COUNTY CLERK 08/23/2019 08:02 AM
INDEX NO. 950112/2019
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 08/23/2019

b.    Providing opportunities for sexual abusers to abuse a scout by getting him into situations where they have to change clothing or spend the night with him;

c.    Providing sexual abusers an opportunity to volunteer to spend time with and have access to minor scouts;

d.    Conditioning and educating boys to the concept of strict obedience to the Scout Leader and a bonding mechanism that sexual abusers utilize;

e.    Promoting the idea of secret ceremonies, rituals, and loyalty oaths, all of which help facilitate a sexual abuser to keep his victims silent and compliant;

f.    Conducting no criminal background checks on volunteers;

g.    Not prohibiting adults from sleeping in tents with boys overnight;

h.    Not prohibiting adult leaders from spending time alone with individual scouts; and

i.    Not prohibiting adult leaders from having contact with scouts outside of authorized scouting activities.

j.    Not specifically prohibiting Scout Leaders from having scouts to their home to work on scout related projects like merit badges.

25.    The I.V. Files further demonstrate that, for decades BSA:

a.    Re-admitted sexual abusers who had previously been removed for child abuse "probation," thereby exposing unsuspecting children to sexual abuse;

b.    Had a practice of not reporting incidents of abuse to law enforcement;

8

c.      Had a pattern of accommodating sexual abusers, in which they would be permitted to resign from scouting and BSA would agree not to report the abuse to authorities;

d.      Failed to produce its I.V. Files to its review board and scout-safety consultants, who were endeavoring to develop and implement meaningful safeguards and barriers to pedophile infiltration;

e.      Refused to fingerprint, photograph, or perform background checks on its adult volunteers, allowing removed sexual abusers using an alias to sneak back into scouting through another troop;

f.      Refused to utilize widely-accepted organizational best practices that would establish reasonable barriers to intrusion by sexual abusers;

g.      Refused to educate local councils, staff, and troop leaders regarding the true risks posed by sexual abusers to scouts; and

h.      Refused to effectively monitor local councils and troops to ensure that appropriate safeguards were being used in the selection and retention of adult scout leaders.

26.     Prior to abuse alleged herein beginning in 1989, Defendant BSA also knew or should have known that its I.V. File system did not function to prohibit all known predators from participating in scouting, was otherwise flawed, and in many cases ineffective to address the sustained and systemic problem of sexual abuse within its programming.

27.     Despite their knowledge of the danger of sexual abuse of boys in scouting, at no time prior to 2010 when the BSA altered the warnings in its Scout Handbook, did

9

FILED: NEW YORK COUNTY CLERK 08/23/2019 08:02 AM
NYSCEF DOC. NO. 1

INDEX NO. 950112/2019
RECEIVED NYSCEF: 08/23/2019

Defendants specifically warn boys in their programs or their parents, about this known danger, nor implement reasonable and feasible child abuse prevention policies. Nor did BSA alert authorities to the nature and scope of this known danger. Instead, Defendants intentionally and actively concealed the continuous and systemic danger of sexual abuse of scouts in their programming. Defendants also actively promoted and represented to the public that their scouting programs were safe and wholesome, and their adult leaders were safe and trustworthy.

28.    At all times relevant to this Complaint, Defendants invited and otherwise encouraged the participation of minors, including Plaintiff, in their scouting programming and selected adults to serve in leadership positions.

29.    BSA has known for decades that scouting involved an unreasonably high risk of sexual abuse by adult leaders and volunteers. BSA made repeated false counterfactual claims that the number of child sexual abusers in its programming was insignificant, that scouts were reasonably safe from sexual abuse by adult leaders, and that BSA is not a magnet for sexual abusers, all of which BSA made (1) knowing that the claims were false or (2) with reckless disregard for the truth or falsity. The Plaintiff alleges that they trusted BSA and that they reasonably relied upon the BSA's representations that it presented a moral and safe place for minors.

30.    Sometime after Plaintiff joined scouts in approximately 1988, SCHWARTZ began a pattern of grooming Plaintiff for the purpose of sexually abusing him. This grooming included but was not limited to giving Plaintiff special attention, praise, and privileges during troop meetings, inviting Plaintiff to dinner with

10

members of the troop leadership, which were mainly adults, offering Plaintiff

gifts and trips, and driving Plaintiff home alone after meetings.

31.     SCHWARTZ's abuse of Plaintiff began in approximately 1989 and continued

through approximately 1992.  The abuse included, but was not limited to

SCHWARTZ kissing Plaintiff on the lips, SCHWARTZ fondling Plaintiff's

genitals, SCHWARTZ masturbating Plaintiff's genitals, forcing Plaintiff to orally

copulate SCHWARTZ, and SCHWARTZ attempting to anally penetrate Plaintiff.

The abuse occurred at SCHWARTZ's home, at Central Synagogue in New York,

New York before troop meetings, and on scouting related trips.  Plaintiff

estimates the abuse occurred on at least 100 occasions.

32.     Plaintiff participated in scouting from approximately 1988 through approximately

1992.

33.     Upon information and belief, Plaintiff was taught and otherwise informed by

Defendants by word and deed that he should obey, trust, and respect the

Defendants and SCHWARTZ.

34.     Upon information and belief, at all times mentioned herein, Defendants knew that

minors sexually abused in their programs would suffer psychological and

emotional injuries, as well as other damages.

35.     Upon information and belief, at all times mentioned herein, Defendants aided and

abetted the concealment of criminal conduct by failing and refusing to report

allegations of child sexual abuse to appropriate New York civil authorities.

36.     Upon information and belief, Defendants selected or accepted SCHWARTZ as a

Scout Leader, for the Plaintiff's Boy Scout Troop 666, located in NEW YORK

11

FILED: NEW YORK COUNTY CLERK 08/23/2019 08:02 AM    INDEX NO. 950112/2019

NYSCEF DOC. NO. 1                                                RECEIVED NYSCEF: 08/23/2019

COUNCIL.

37.    Plaintiff joined Boy Scout Troop 666 as a result of his parents calling Defendant NEW YORK COUNCIL and asking for a troop their son should join.  Defendant NEW YORK COUNCIL recommended Plaintiff join Troop 666.

38.    Defendants authorized and empowered SCHWARTZ to perform all duties of a Scout Leader within Troop 666, including the authority and power to do the following: to provide instruction, counseling, moral guidance, and physical supervision of boys participating in Boy Scout programs and activities; to enforce the rules governing the boys' participation; and to undertake other duties. Defendants knew that as part of his duties as a Scout Leader, SCHWARTZ would be in a position of trust, confidence, and authority over the boys involved in scout programs, including Plaintiff.

39.    As a Scout Leader, SCHWARTZ befriended Plaintiff; gained the trust and confidence of Plaintiff's family as a trusted authority figure, mentor and leader of boys; and gained the permission and support of Plaintiff and his parents to spend substantial periods of time alone with Plaintiff.  As a Scout Leader, SCHWARTZ also gained the directive of Plaintiff's parents to minor Plaintiff that he respects those in authority with Defendants.

40.    Thereafter, SCHWARTZ acted as a Scout Leader toward Plaintiff, supervised them during scouting outings and activities, and exercised authority *in loco parentis* over Plaintiff during scouting events.

41.    There was a special relationship between Plaintiff and Defendants giving rise to a duty by Defendants to protect Plaintiff from harm.

Case 1:20-mc-00078-RGA   Document 10   Filed 03/03/20   Page 167 of 174   PageID #: 769

42.     As a result of SCHWARTZ's authorized conduct as a Scout Leader, Plaintiff was
conditioned to trust SCHWARTZ, to comply with his directions, and to respect
SCHWARTZ as a person of authority, including in moral and ethical matters.

43.     Using the power, authority, and trust of his positions vested in him by Defendants,
and availing himself of Defendants' representations that the scout programs were
a moral and safe place for boys, SCHWARTZ subjected Plaintiff to various acts
of sexual abuse while Plaintiff was a minor (hereinafter "the sexual abuse").

44.     SCHWARTZ would invite Plaintiff to his home and would spend time alone with
Plaintiff before scout meetings and during scouting related trips.  By inviting the
minor Plaintiff to his home alone, SCHWARTZ was in violation of BSA's "two
deep" rule, which requires that at least two adults be present at all times during all
scouting events and all other activities related to the scouting programs.

45.     The methods used by SCHWARTZ to accomplish his sexual abuse of Plaintiff
was substantially similar to methods known to Defendants to have been used
previously by numerous other adult leaders to accomplish sexual abuse of other
minors.  These methods were known to the Defendants years prior to the sexual
abuse of Plaintiff.

46.     Upon information and belief, in about 1979, a Scout in Troop 666 alleged that
SCHWARTZ had molested him on a camping trip.  Upon returning home, the
Scout told his mother about the incident.  His mother than made a complaint
directly to SCHWARTZ's superiors in the Troop and to NEW YORK COUNCIL.
Upon information and belief, NEW YORK COUNCIL and Troop 666 ignored the
mother's complaint, telling her words to the effect that her son had imagined the

13

FILED: NEW YORK COUNTY CLERK 08/23/2019 08:02 AM   INDEX NO. 950112/2019

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 08/23/2019

abuse.  As a result of the complaint, neither the Defendant NEW YORK

COUNCIL nor the BSA undertook to investigate the matter nor remove

SCHWARTZ from scouting.  SCHWARTZ was allowed to continue in Troop 666

and at some point as described above, molested Plaintiff.

47.    The above-described complaint in 1979 constitutes notice of SCHWARTZ's

propensity to commit sexual abuse.  In fact, in 1979 the complaint also constitutes

actual notice that SCHWARTZ was a sexual abuser.

48.    In May, 2002, Scoutmaster SCHWARTZ pled guilty to sexually abusing another

scout in Plaintiff's troop for the period of September, 1996 through December,

1996.  SCHWARTZ was incarcerated in the New York State Department of

Corrections and released in 2008.  Upon information and belief, he is currently

registered as a Level One sex offender.

49.    In the 2001 civil case against the Defendants NEW YORK COUNCIL and BSA

that followed SCHWARTZ's arrest, the BSA maintained in their Motion for

Summary Judgment which was denied (2002 N.Y. Slip Op. 30667) that the

scout/plaintiff in that case, as a minor teenage boy, consented to the sexual

relationship with SCHWARTZ.  The BSA's position taken in that case involving

a scout similarly situated to Plaintiff, namely that the scout is to blame for his

sexual abuse is consistent with the BSA's long history cited *supra* concerning its

abject failure to protect children from sexual abuse perpetrated by its adult

leaders.

50.    Defendants knew or should have known the danger that sexual abusers presented

to scouts long before Plaintiff was abused by SCHWARTZ.  Despite this

14

knowledge, Defendants ignored the danger and permitted SCHWARTZ and other sexual abusers in scouting to prey upon minor scouts, including Plaintiff, by failing to warn them of the danger and failing to implement reasonable policies to prevent and identify child sexual abuse in scouting programs.

51.    Upon information and belief, Defendants had a duty to protect Plaintiff as a minor scout from SCHWARTZ's criminal sexual acts.

52.    Upon information and belief, Defendants failed to adequately and completely supervise SCHWARTZ and as a result of this failure and negligence, proximately caused Plaintiff to be sexually abused by SCHWARTZ.

53.    The aforementioned occurrences of sexual abuse were caused by the negligence, carelessness, recklessness, and the willful, wanton, reckless and grossly negligent conduct of Defendants and their agents, servants, and/or employees, in failing to properly and adequately supervise the conduct of SCHWARTZ as it related to Plaintiff.

54.    By reason of the foregoing, Plaintiff sustained physical and psychological injuries, including but not limited to, severe emotional distress, confusion, humiliation, fright, anxiety, a severe shock to his nervous system, and has been caused to suffer physical pain and mental anguish, emotional and psychological damages as a result thereof, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature; and that Plaintiff as a result has become and will continue to be obligated to expend sums of money for medical expenses for treatment of said maladies.

FILED: NEW YORK COUNTY CLERK 08/23/2019 08:02 AM

NYSCEF DOC. NO. 1

INDEX NO. 950112/2019

RECEIVED NYSCEF: 08/23/2019

55.   That by reason of the foregoing, Defendants are also liable to Plaintiff for punitive and exemplary damages.

56.   It is hereby alleged pursuant to CPLR 1603 that the foregoing cause of action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to, CPLR 1602(7) and 1602(11).

57.   That the amount of damages sought exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

## AS AND FOR A SECOND CAUSE OF ACTION

## (NEGLIGENT FAILURE TO WARN)

58.   Plaintiff repeats, reiterates, and realleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth at length herein.

59.   Upon information and belief, prior to and at all times herein mentioned, Defendants and their agents, servants, and employees, knew or should have known that SCHWARTZ violated Defendants' relevant rules, regulations and protocols prohibiting adult leaders like SCHWARTZ from sexually abusing and otherwise harming minor scouts, including Plaintiff.

60.   The Defendants and their agents, servants, and employees were negligent, careless and reckless and acted willfully, wantonly and were grossly negligent in failing to warn Plaintiff that the failure of SCHWARTZ to abide by Defendants' rules, regulations and protocols regarding prohibitions on employees being alone with minor scouts put Plaintiff at risk for being sexually abused by SCHWARTZ.

61.  By reason of the foregoing, Plaintiff sustained physical and psychological injuries, including but not limited to, severe emotional distress, confusion, humiliation, fright, anxiety, a severe shock to his nervous system, and has been caused to suffer physical pain and mental anguish, emotional and psychological damages as a result thereof, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature; and that Plaintiff as a result has become and will continue to be obligated to expend sums of money for medical expenses for treatment of said maladies.

62.  That by reason of the foregoing, Defendants are also liable to Plaintiff for punitive and exemplary damages.

63.  It is hereby alleged pursuant to CPLR 1603 that the foregoing cause of action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to, CPLR 1602(7) and 1602(11).

64.  That the amount of damages sought exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

## AS AND FOR A THIRD CAUSE OF ACTION

## (NEGLIGENT FAILURE TO PROVIDE A SAFE AND SECURE ENVIRONMENT)

65.  Plaintiff repeats, reiterates, and realleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth at length herein.

66.  The Defendants assumed a duty to protect the safety and welfare of Plaintiff as more fully set forth above, when Plaintiff participated in their scouting programs.

17

FILED: NEW YORK COUNTY CLERK 08/23/2019 08:02 AM INDEX NO. 950112/2019
NYSCEF DOC. NO. 1                                                      RECEIVED NYSCEF: 08/23/2019

This duty imposed upon said Defendants, the duty to provide a reasonably safe and secure environment for Plaintiff while he was participating in scouting programs.

67. When Plaintiff was in said Defendants' care, said Defendants failed to exercise the degree of care that a reasonably prudent parent would have exercised under similar circumstances.

68. Defendants and their agents and employees were negligent, careless and reckless and acted willfully, wantonly and were grossly negligent in failing to provide a safe and secure environment for Plaintiff while he participated as a minor in scouting programs and as such were sexually abused by SCHWARTZ.

69. By reason of the foregoing, Plaintiff sustained physical and psychological injuries, including but not limited to, severe emotional distress, confusion, humiliation, fright, anxiety, a severe shock to his nervous system, and has been caused to suffer physical pain and mental anguish, emotional and psychological damages as a result thereof, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature; and that Plaintiff as a result has become and will continue to be obligated to expend sums of money for medical expenses for treatment of said maladies.

70. That by reason of the foregoing, Defendants are also liable to Plaintiff for punitive and exemplary damages.

71. It is hereby alleged pursuant to CPLR 1603 that the foregoing cause of action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to, CPLR 1602(7)

18

FILED: NEW YORK COUNTY CLERK 08/23/2019 03:00 AM
Case 1:20-cv-00078-RA Document 08/23/2019 03:00 AM Page 173 of 174 PageID #: 775

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 08/23/2019

and 1602(11).

72.      That the amount of damages sought exceeds the jurisdictional limits of all lower

courts, which would otherwise have jurisdiction.

WHEREFORE, the Plaintiff demands judgment against the Defendants, together with

compensatory and punitive damages, and the interest, costs and disbursements pursuant to the

causes of action herein.

Dated: New York, New York
       August 23, 2019


MICHAEL G. DOWD
600 Third Avenue, 15th Floor
New York, NY 10016
(212) 751-1640

SWEENEY, REICH & BOLZ, LLP
By: Gerard J. Sweeney, Esq.
1981 Marcus Avenue, Suite 200
Lake Success, NY 11042
(718) 459-9000

Attorneys for Plaintiff

19

FILED: NEW YORK COUNTY CLERK 08/23/2019 08:02 AM INDEX NO. 950112/2019
NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 08/23/2019

## VERIFICATION BY ATTORNEY

MICHAEL G. DOWD, an attorney being duly admitted before the courts of the State of New York, hereby affirms the following under penalties of perjury:

That he is an attorney for the Plaintiff in the above-entitled action with offices located at 600 Third Ave, New York, New York; that he has read the foregoing VERIFIED COMPLAINT and knows the contents thereof; that the same is true to his knowledge, except as to the matters stated to be alleged upon information and belief, and that as to those matters he believes them to be true.

That the reason why this verification is made by deponent instead of Plaintiff is because Plaintiff is not within the County of New York where deponent has his office. Deponent further says that the grounds of his belief as to all matters in the VERIFIED COMPLAINT not stated to be upon his knowledge are based upon conversations with the Plaintiff and other writings relevant to this action.

Dated: New York, New York
August 23, 2019

MICHAEL G. DOWD
Attorney for Plaintiff
600 Third Avenue, 15th Floor
New York, NY 10016
(212) 751-1640

20