IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | Case No. 1:20-mc-00078-RGA |
| | **Re: D.I. 18** |

## DEBTORS' SECOND STATUS REPORT

Pursuant to this Court's oral order [D.I. 18] (the "Order"), Boy Scouts of America ("BSA") and Delaware BSA, LLC (together with the BSA, the "Debtors") hereby submit this second status report in the above-captioned case, and state the following:

1. On February 18, 2020, the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2. Also on February 18, 2020, the Debtors initiated an adversary proceeding (the "Adversary Proceeding"), Adv. Proc. Case No. 20-50527 (LSS), in the Bankruptcy Court by filing a *Verified Complaint for Injunctive Relief* [A.D.I. 1]

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

(the "Adversary Complaint").  In connection with the Adversary Complaint, the Debtors filed *The BSA's Motion for a Preliminary Injunction Pursuant to Sections 105(a) and 362 of the Bankruptcy Code* [A.D.I. 6] (the "Preliminary Injunction Motion"), seeking to enjoin certain pending abuse actions against the BSA and certain related parties.

3. On March 30, 2020, the Bankruptcy Court entered the *Consent Order Pursuant to 11 U.S.C. §§ 105(a) and 362 Granting the BSA's Motion for a Preliminary Injunction* [A.D.I. 54] (the "Consent Order") in the Adversary Proceeding.[2]  The Consent Order immediately stayed all Pending Abuse Actions and Further Abuse Actions up to and including May 18, 2020 (as has been extended from time to time, the "Termination Date").  Consent Order ¶¶ 3, 7.  Since March 30, 2020, the Bankruptcy Court has extended the Termination Date under the Consent Order several times.  *See* A.D.I. 72, 77, 116, 162, 185, 199.

4. While the Preliminary Injunction Motion was pending in the Adversary Proceeding, the Debtors filed in the United States District Court for the District of Delaware (this "Court") the *Debtors' Motion to Fix Venue for Claims Related to the Debtors' Bankruptcy Under 28 U.S.C. §§157(b)(5) and 1334(b)* [D.I. 2] and accompanying brief [D.I. 4] (together, the "Transfer Motion").  The

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Consent Order or the Plan (as defined herein), as applicable.

Transfer Motion sought to centralize the Pending Abuse Claims in this Court to facilitate negotiating and confirming a consensual plan of reorganization.

5. The Debtors also filed the *Debtors' Motion to Stay Briefing on Their Motion to Fix Venue for Claims Related to Bankruptcy Under 28 U.S.C. §§ 157(b)(6) and 1334(b)* [D.I. 8] (the "Stay Motion"), requesting, in part, that this Court stay all briefing related to the Transfer Motion to further allow parties to negotiate and formulate a consensual chapter 11 plan. This Court granted the relief requested in the Stay Motion. D.I. 16.

6. On December 13, 2021, this Court entered the Order, directing the Debtors to "file a status report with the Court six months from the date of this Order and every six months thereafter until the case is reopened." *See* D.I. 18. In accordance with the Order, the Debtors filed the first status report on June 13, 2022. D.I. 19.

7. On September 8, 2022, the Bankruptcy Court entered an order [Bankr. D.I. 10316] (the "Confirmation Order") approving the Debtors' plan of reorganization [Bankr. D.I. 10296] (the "Plan"). The Plan is the product of more than two years of continuous negotiations and mediation with every major constituency in the Debtors' chapter 11 cases. It contains a series of comprehensive settlements and compromises, which are the product of the Debtors' and certain stakeholders' good-faith efforts to resolve disputed issues in

3

the bankruptcy cases. These parties include (i) the Debtors' primary prepetition lender, JPMorgan Chase Bank, N.A., (ii) the Creditors' Committee, as the official committee appointed by the Bankruptcy Court to act as a fiduciary for unsecured creditors, (iii) an ad hoc committee of the Debtors' local councils, (iv) the Debtors' largest current and former chartered organizations, including the Church of Jesus Christ of Latter-Day Saints, the ad hoc committee of United Methodist entities, and the ad hoc committee of Roman Catholic entities, (v) multiple settling insurance companies, including the Century and Chubb Companies, Hartford, Zurich Insurers and Zurich Affiliated Insurers, and Clarendon, (vi) the Tort Claimants' Committee, the official committee of tort claimants appointed by the Bankruptcy Court to act as a fiduciary for all sexual abuse survivors, (vii) the Future Claimants' Representative, as the fiduciary appointed by the Bankruptcy Court to represent the interests of future sexual abuse claimants, (viii) the Coalition of Abused Scouts for Justice, an ad hoc committee of thousands of sexual abuse survivors, and (ix) certain state court counsel representing a supermajority of abuse survivors who collectively represent approximately 60,000 of the 82,000 sexual abuse claimants. The central creditor constituencies affected by the Plan—sexual abuse survivors and indirect abuse claimants—voted to approve the Plan by more than 85% and 82%, respectively, in addition to the other classes that voted to

accept the Plan. Thus, the Plan carries the overwhelming support of every major creditor group.

8. Pursuant to paragraph 29 of the Confirmation Order and Article X.D of the Plan:

> All injunctions and stays arising under or entered during the Chapter 11 Cases, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date shall remain in full force and effect until the latest to occur of, as applicable: the Effective Date, the Release Date (as defined in the applicable Insurance Settlement Agreement or other settlement agreement), and the Limited Protected Party Injunction Date (which Limited Protected Party Injunction Date shall be no later than one (1) year following the Effective Date except as provided in the Settlement Trust Agreement). To the extent not otherwise in place, pending the occurrence of the Release Date (as defined in the applicable Insurance Settlement Agreement), the United Methodist Release Effective Date (as defined in the United Methodist Settlement Agreement), or other release date set forth in any other settlement agreement, any Claim that would be released or subject to the Channeling Injunction upon the occurrence of conditions set forth herein and in any applicable settlement agreement (including the occurrence of the Release Date or similar defined term (as defined in the applicable settlement agreement) shall be stayed and enjoined pending satisfaction of such conditions (the "<u>Post-Confirmation Interim Injunction</u>"). To the extent not otherwise in place, until the occurrence of the Limited Protected Party Injunction Date, any Claim against a Participating Chartered Organization shall be stayed and enjoined pending satisfaction of such conditions. The Post-Confirmation Interim Injunction shall permit the filing, but not the prosecution, of the Abuse Claims. The injunctions and stays referenced in

this Article X.D include the preliminary injunction imposed by the *Consent Order Pursuant to 11 US.C. § 105(a) and 362 Granting the BSA's Motion for a Preliminary Injunction entered by the Bankruptcy Court on March 30, 2020* (Adv. Pro. No. 20-50527, Docket No. 54). Solely with respect to the United Methodist Entities, the Post-Confirmation Interim Injunction shall remain in full force and effect until the earliest to occur of the United Methodist Release Effective Date or the United Methodist Release Termination Date (as those terms are defined in the United Methodist Settlement Agreement).

9. Because the Confirmation Date has occurred, the Post-Confirmation Interim Injunction is in effect.  As a result, the Termination Date has been extended until the latest to occur of, as applicable: the Effective Date, the Release Date (as defined in the applicable Insurance Settlement Agreement or other settlement agreement), and the Limited Protected Party Injunction Date with respect to Abuse Claims against Participating Chartered Organizations (which Limited Protected Party Injunction Date shall be no later than one (1) year following the Effective Date except as provided in the Settlement Trust Agreement), as set forth above.

10. As a result of the Bankruptcy Court's entry of the Confirmation Order, the Plan has been confirmed, but has not yet gone effective.  The Debtors are required to obtain affirmation of the Confirmation Order from the District Court on appeal prior to the occurrence of the Effective Date of the Plan unless the required parties waive this requirement under the Plan.  There are eighteen appeals

of the Confirmation Order before the Court. On October 17, 2022, the Court consolidated seventeen of the eighteen appeals and approved a coordinated briefing schedule pursuant to a stipulation among the appellants and appellees. *See National Union Fire Insurance Co. of Pittsburgh, PA, v. Boy Scouts of America*, Case No. 22-01237 (RGA) (D. Del. Oct. 17, 2022) [D.I. 22]. The appeal commenced by a *pro se* claimant was not consolidated with the other appeals of the Confirmation Order. *See* Case No. 22-01121. Briefing in the appeals of the Confirmation Order remains pending.

11. The Debtors will submit a further status report on or before the next deadline, as necessary. Counsel is available at the convenience of the Court to answer any questions.

*[Remainder of Page Intentionally Left Blank]*

Dated: December 13, 2022
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Tori L. Remington*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
Tori L. Remington (No. 6901)
1201 North Market Street, 16th Floor
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Email: dabbott@morrisnichols.com
  aremming@morrisnichols.com
  ptopper@morrisnichols.com
  tremington@morrisnichols.com

– and –

**WHITE & CASE LLP**
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.lauria@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
  mlinder@whitecase.com
  laura.baccash@whitecase.com
  blair.warner@whitecase.com

ATTORNEYS FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that, on December 13, 2022, I electronically filed the foregoing document with the Clerk of the Court via CM/ECF. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished via CM/ECF.

December 13, 2022

/s/ *Tori L. Remington*
Tori L. Remington (No. 6901)